UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHUAN WANG,

                                    Plaintiff,

          -v-

SAMUEL J. PALMISANO, MARTIN
SCHROETER, MARK LOUGHRIDGE, J.
RANDALL MACDONALD, JOHN DOES 1–20,
and JANE DOES 1–20,

                                    Defendants.

Case No. 13-CV-2186 (KMK)

<u>OPINION AND ORDER</u>

<u>Appearances:</u>

Chuan Wang
Lexington, Mass.
*Pro se Plaintiff*

Timothy M. Pomarole, Esq.
Peabody & Arnold L.L.P.
Boston, Mass.
*Counsel for Defendants*

Catherine B. Kelleher, Esq.
Sedgwick L.L.P.
New York, N.Y.
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

       On April 1, 2013, pro se Plaintiff Chuan Wang ("Plaintiff") filed a Complaint against

Samuel J. Palmisano ("Palmisano"), Martin Schroeter ("Schroeter"), Mark Loughridge

("Loughridge"), and J. Randall MacDonald ("MacDonald") (collectively, "Defendants"), who

are, respectively, the President, Chief Executive Officer, and Chairman; the Treasurer; the Chief

Financial Officer; and a Senior Vice President of International Business Machines Corp.

("IBM").  (*See* Compl. ¶¶ 2–5 (Dkt. No. 1).)[1]  The Complaint alleges multiple claims under federal and Massachusetts state law related to Plaintiff's employment, termination, and subsequent reapplication efforts at IBM.[2]  Before the Court is Defendants' Motion To Dismiss all claims.  (*See* Notice of Mot. To Dismiss (Dkt. No. 16).)  For the following reasons, Defendants' Motion is granted.

## I.  Background

### A.  Factual History

The following facts are drawn from Plaintiff's Complaint and are taken as true for the purposes of resolving the instant Motion.  Plaintiff, a resident of Massachusetts, is a Chinese-American man and, at the time he filed his Complaint in April 2013, was 56 years old.  (*See* Compl. ¶ 12.)  In February 2008, Plaintiff received a job offer from IBM, a corporation headquartered in New York.  (*See id.* ¶ 6, 16.)  Artech Information Systems L.L.C. ("Artech"), a separate corporation that previously arranged Plaintiff's interview for the job, (*see id.* ¶ 15), informed Plaintiff of the offer, forwarded a proposed employment agreement, and explained to Plaintiff many of the offer's key terms, (*id.* ¶¶ 16, 18–19).  Specifically, Artech told Plaintiff that the offer was for a "full-time position with [a] term of one year or longer," and that he would work "exclusively for IBM."  (*Id.* ¶ 18.)  Artech also told Plaintiff that, because his job was "computer related[,]" he would be an "exempt employee" and therefore "not entitled to [an]

---

[1] Plaintiff also names as defendants, in the caption of the Complaint, John Does 1–20 and Jane Does 1–20.  However, the Complaint does not otherwise refer to these defendants.  In light of the issues raised in this Opinion, Plaintiff should be prepared to make specific allegations with regard to these defendants in future pleadings, or he may risk dismissal of all claims against them.

[2] Although Plaintiff did not name IBM as a Defendant in the caption of his Complaint, he did list it as a party to the case.  (*See* Compl. ¶ 6.)  If Plaintiff meant to name IBM as a Defendant, he may do so in an Amended Complaint.

overtime pay rate for overtime work he performed, if any." (*Id.* ¶ 19.)  Plaintiff alleges that he

"believed many terms in [the] Employment Agreement [were] unlawful and unfair, [and,]

therefore, unacceptable[,]" but he does not allege that he contested the terms or otherwise

notified Artech, IBM, or Defendants of his "belie[f.]" (*Id.* ¶ 17.)

From March 11, 2008 to March 28, 2008, Plaintiff "performed a full-time service under

the direction and control of IBM, and exclusively for IBM." (*Id.* ¶ 21.)  During this time,

Plaintiff worked for 14 days and performed "more than 112 hours" of work in total.  (*Id.* ¶¶ 21–

22.)[3]  However, in reliance on Artech's prior representations, Plaintiff "assumed [that] he was

only entitled to claim [to Artech and/or IBM that he worked] the maximum of 8 hours per day[.]"

(*Id.* ¶ 22.)

"On about March 28, 2008," Plaintiff's job "was terminated by the defendants." (*Id.*

¶ 23.)  Plaintiff alleges that his "termination was a result" of his "refus[al] to give up his rights

provided by [the] Massachusetts Wage Act and [the] Fair Labor Standards Act." (*Id.* ¶ 24.)

Subsequent to terminating Plaintiff, "Defendants, Artech, and/or IBM failed to pay [him]

for his services." (*Id.* ¶ 27.)  Moreover, Plaintiff alleges that he has "repeatedly" "made many

job applications" to IBM, and that he "directly mailed" the applications to Defendants "many

times." (*Id.* ¶¶ 30–31.)  Plaintiff also alleges that he "was interviewed by IBM about five times"

in connection with his job applications. (*Id.* ¶ 32.)  However, "IBM repeatedly rejected each and

every . . . application made by Plaintiff," a pattern of behavior that Plaintiff alleges has

---

[3] In other words, because working 8 hours per day for 14 days results in a total of 112 hours worked, and because Plaintiff alleges that he worked "more than 112 hours" over the course of 14 days, Plaintiff alleges, in effect, that he worked for an unspecified amount of overtime hours. (*See* Compl. ¶ 22.)

"continued for many years." (*Id.* ¶ 34.) Accordingly, "Plaintiff has been unemployed since he was discharged from IBM on about March 28, 2008." (*Id.* ¶ 25.)

 B.  Procedural History

 This case is the latest in a line of cases Plaintiff has initiated in both state and federal courts. First, on February 12, 2009, Plaintiff filed a complaint against IBM and Artech in Massachusetts state court. (*See id.* ¶ 36.)[4] The case was dismissed on jurisdictional grounds without prejudice. *See Wang v. Int'l Bus. Machs. Corp.*, 924 N.E.2d 334 (Mass. App. Ct. 2010) (unpublished table decision).[5]

 Second, Plaintiff filed another complaint in Massachusetts state court on November 25, 2009. (*See* Compl. ¶ 42; *see also* Mem. in Supp. of Mot. To Dismiss ("Defs.' Mem.") Ex. B (Dkt. No. 17) (docket details for Massachusetts Civil Docket MICV2009-04616).) The complaint alleged 11 claims arising out of the same events that form the basis of the instant Complaint. (*See* Defs.' Mem. Ex. A (Plaintiff's amended complaint in the second state-court case).) Moreover, in addition to naming IBM and Artech as defendants, Plaintiff also named as defendants Palmisano, Loughridge, and Ranjini Poddar ("Poddar"), the former two of whom are defendants in this case. (*See id.*)[6] On September 30, 2010, the state court granted a motion to

---

 [4] Based on the Parties' submissions, it is unclear what claims Plaintiff alleged in that complaint or what parties he sued.

 [5] As the Appeals Court explained in its decision, the lower court dismissed Plaintiff's complaint with prejudice, but Plaintiff argued on appeal that the dismissal should have been without prejudice. The Appeals Court agreed, and thus it vacated the judgment and ordered the lower court to enter a new judgment dismissing the complaint without prejudice. *Wang*, 924 N.E.2d 334, at *1.

 [6] Defendants submitted a number of pleadings and court documents in support of their Motion. The Court may take judicial notice of these documents "as a public record," particularly where Plaintiff does not "dispute the authenticity" of the documents. *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000); *see also Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425

dismiss the claims against Palmisano, Loughridge, and Poddar for lack of personal jurisdiction. (*See* Compl. ¶ 43; Defs.' Mem. Ex. B (docket details indicating dismissal of Palmisano, Loughridge, and Poddar on Sept. 30, 2010); Defs.' Mem. Ex. C at unnumbered 1 (clerk's notice of dismissal).)  Then, in an order entered on July 28, 2011, the state court granted summary judgment in favor of IBM and Artech on all claims.  (*See* Defs.' Mem. Ex. C at unnumbered 2– 11 (state court memorandum and decision on motion for summary judgment).)  Plaintiff appealed both the dismissal for lack of personal jurisdiction and the grant of summary judgment. On July 25, 2012, the Appeals Court of Massachusetts affirmed in part and reversed in part the lower court's order.  (*See* Defs.' Mem. Ex. D (appellate court memorandum and order); Mem. in Opp'n to Defs.' Mot. To Dismiss Compl. ("Pl.'s Mem.") Ex. E (Dkt. No. 21) (same).) Specifically, it affirmed the dismissal on personal-jurisdiction grounds, although it modified the judgment to specify that the dismissal was without prejudice.  (*See* Defs.' Mem. Ex. D at unnumbered 3.)  And it affirmed summary judgment on nine of the claims alleged against IBM and Artech.  (*See id.* at unnumbered 2–3.)  However, it reversed summary judgment on two of those claims, both of which related to Plaintiff's allegation that IBM and Artech discharged him in retaliation for assertion of his rights under Massachusetts' Wage Act.  (*See id.* at unnumbered 1–2.)  Plaintiff appealed that decision to the Supreme Judicial Court of Massachusetts, but that court denied the appeal without explanation.  *See Wang v. Int'l Bus. Machs. Corp.*, 464 Mass. 1107 (2013).

Third, on January 4, 2011, after the Massachusetts state court dismissed Palmisano, Loughridge, and Poddar for lack of personal jurisdiction but before it granted summary judgment

---

(2d Cir. 2008) ("[I]t is proper to take judicial notice of the *fact* that . . . prior lawsuits. . . contained certain information, without regard to the truth of their contents. . . .").

to IBM and Artech, Plaintiff filed another complaint, this time in the United States District Court for the District of Massachusetts. (*See* Compl. ¶ 44.)  In his second amended complaint in that action, Plaintiff alleged 19 claims arising out of his employment relationship with IBM and Artech, and in addition to naming Palmisano, Loughridge, and Poddar as defendants, he named Schroeter, MacDonald, Robert C. Weber, Jesse J. Greene, Jr., and CDI Corporation ("CDI"), the first two of which are defendants in this case. (*See* Defs.' Mem. Ex. E (Plaintiffs' second amended complaint in the first Massachusetts federal case).)  On December 9, 2011, the district court dismissed the complaint in its entirety pursuant to Rule 12(b)(6). *See Wang v. Schroeter*, No. 11-CV-10009, 2011 WL 6148579, at *6 (D. Mass. Dec. 9, 2011). (*See also* Defs. Mem. Ex. F.)  With regard to CDI, it held that the complaint failed to state a claim. *See Wang*, 2011 WL 6148579, at *1 n.1, *3.  And with regard to the individual defendants—including all of the defendants in this Action—the court held that it lacked personal jurisdiction over those parties. *See id.* at *5.  The court also denied Plaintiff's motion to file a third amended complaint, which complaint would have named IBM and Artech as defendants. *See id.* at *2, *6.  Plaintiff appealed, and, on December 10, 2012, the First Circuit entered a judgment affirming the district court's order in full. (*See* Defs.' Mem. Ex. G.)

Fourth, on January 9, 2013, Plaintiff filed another complaint, again in the United States District Court for the District of Massachusetts. (*See* Defs.' Mem. Ex. I (docket details for District of Massachusetts Case No. 13-CV-10043).)  In his amended complaint in that case, he alleged seven claims arising out of his employment relationship with IBM and Artech, but this time he named only IBM, Artech, and CDI as defendants. (*See* Defs.' Mem. Ex. H (Plaintiff's amended complaint in second Massachusetts federal case).)  The court ultimately entered two orders dismissing Plaintiff's claims, first against CDI on April 26, 2013, and second against IBM

and Artech on June 26, 2013, both based on the grounds of res judicata and failure to state a claim.  (*See* Letter from Timothy M. Pomarole to Court (June 9, 2014) (Dkt. No. 24) (attaching First Circuit Court of Appeals' judgment affirming the district court's two dismissal orders).) The First Circuit affirmed those orders on May 20, 2014.  (*See id.*)

Finally, on April 1, 2013, Plaintiff filed the instant Complaint against Palmisano, Schroeter, Loughridge, and MacDonald.  (*See* Compl.)  Plaintiff alleges 10 claims in the Complaint, including (1) failure to pay Plaintiff a minimum wage, in violation of Massachusetts' Wage Act ("Wage Act"), Mass. Gen. Laws ch. 149, § 148; (2) failure to pay Plaintiff a minimum wage, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206; (3) unlawful discharge of Plaintiff in retaliation for seeking rights under the Wage Act, in violation of Mass. Gen. Laws ch. 149, § 148A; (4) unlawful discharge of Plaintiff in retaliation for seeking rights under the FLSA, in violation of 29 U.S.C. § 215(a)(3); (5) unlawful refusal to hire Plaintiff in retaliation for seeking rights under the FLSA, in violation of 29 U.S.C. § 215(a)(3); (6) unlawful refusal to hire Plaintiff in retaliation for seeking rights under the Wage Act, in violation of Mass. Gen. Laws ch. 149, § 148A; (7) unlawful refusal to hire Plaintiff based on his age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1); (8) unlawful refusal to hire Plaintiff based on his age, in violation of Massachusetts state law, Mass. Gen. Laws ch. 151B, § 4(1B); (9) failure to pay Plaintiff an overtime wage, in violation of Mass. Gen. Laws ch. 151, § 1A; and (10) failure to pay Plaintiff an overtime wage, in violation of the FLSA, 29 U.S.C. § 207.

Pursuant to a Scheduling Order the Court entered after a conference held on October 24, 2013, (*see* Dkt. No. 15), Defendants filed their Motion To Dismiss and accompanying Memorandum of Law on November 4, 2013, (*see* Dkt. Nos. 16–17), Plaintiff filed an Affidavit

and a Memorandum of Law in opposition to Defendants' Motion on December 31, 2013, (*see* Dkt. Nos. 20–21), and Defendants filed their Reply Memorandum of Law on January 15, 2014, (*see* Dkt. No. 22).

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the 'grounds' of his [or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (citations omitted).  Instead, the Supreme Court has emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint[,]" *id.* at 563.  Plaintiffs must allege "only enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570. But if a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed."  *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))).

In considering Defendants' Motion To Dismiss, the Court is required to consider as true the factual allegations contained in the Complaint. *See Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) ("We review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." (internal quotation marks omitted)); *Gonzalez v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008) (same). Moreover, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted). In particular, the Court may take judicial notice of decisions and submissions filed in prior lawsuits. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts, . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").

Finally, because Plaintiff is proceeding pro se, the Court must construe his pleadings liberally and "interpret them to raise the strongest arguments that they suggest." *Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 347 (S.D.N.Y. 2009) (internal quotation marks omitted); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006). This admonition "applies with particular force when a plaintiff's civil rights are at issue." *Maisonet*, 640 F. Supp. 2d at 348; *see also McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004). But the liberal treatment afforded to pro se litigants does not exempt a pro se party "from compliance with relevant rules of procedural and substantive law." *Maisonet*, 640 F. Supp. 2d at 348 (internal quotation marks omitted).

B.  Analysis

Defendants move to dismiss the Complaint for a number of reasons, including that some of Plaintiff's claims are barred by the doctrine of collateral estoppel, (*see* Defs.' Mem. 7–9), that some of his claims are barred by the prohibition against claim splitting, (*see id.* at 9–10), that some of his claims fail to state a claim, (*see id.* at 11–15), and that all of his claims are untimely, (*see id.* at 15–16).  Because the Court agrees that most of Plaintiff's claims are untimely, and that those claims that may be timely nevertheless fail to state a claim, the Court declines to address other issues raised by Defendants' Motion.

1.  Claims That Accrued in March 2008

Most of Plaintiff's claims arise out of the work he completed for IBM and his subsequent termination, all of which occurred in March 2008.  (*See* Compl. ¶¶ 21–23.)  These include his wage claims (counts one, two, nine, and ten) and his retaliatory-discharge claims (counts three and four), each of which arises under the FLSA or a similar Massachusetts state-law provision.

a.  Applicable Limitations Periods and Accrual Dates

With regard to Plaintiff's federal-law claims, "[t]he FLSA provides a two-year statute of limitations on actions to enforce its provisions, 'except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.'" *Parada v. Banco Indus. De Venez., C.A.*, 753 F.3d 62, 70 (2d Cir. 2014) (quoting 29 U.S.C. § 255(a)).  This two-year period—or three-year period in the case of willful violations—applies to Plaintiff's FLSA minimum-wage claim, *see D'Arpa v. Runway Towing Corp.*, No. 12-CV-1120, 2013 WL 3010810, at *4 (E.D.N.Y. June 18, 2013), his FLSA overtime-wage claim, *see Keubel v. Black & Decker Inc.*, 643 F.3d 352, 366 (2d Cir. 2011), and his FLSA retaliatory-

discharge claim, *see Goodman v. Port Auth. of N.Y. & N.J.*, No. 10-CV-8352, 2013 WL 5313427, at *5 (S.D.N.Y. Sept. 20, 2013).

With regard to Plaintiff's state-law claims, all of which arise under Massachusetts law, the Court first must determine which limitations period applies.  "A federal court sitting in diversity applies the forum state's statute of limitations provisions, as well as any provisions that govern the tolling of the statute of limitations."  *Vincent v. Money Store*, 915 F. Supp. 2d 553, 562 (S.D.N.Y. 2013); *see also Schermerhorn v. Metro. Transp. Auth.*, 156 F.3d 351, 354 (2d Cir. 1998) ("[Plaintiffs'] claim . . . is governed by state law.  We therefore look to state-law tolling rules to determine whether the statute of limitations was tolled . . . .").  Under New York law, "when a nonresident plaintiff sues upon a cause of action that arose outside of New York, the court must apply the shorter limitations period, including all relevant tolling provision, of either: (1) New York; or (2) the state where the cause of action accrued."  *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 627 (2d Cir. 1998) (citing N.Y. C.P.L.R. § 202); *Muto v. CBS Corp.*, 668 F.3d 53, 57 (2d Cir. 2012) (same); *Landow v. Wachovia Sec., L.L.C.*, 966 F. Supp. 2d 106, 125 (E.D.N.Y. 2013) (same); *see also In re Coudert Bros. L.L.P.*, 673 F.3d 180, 190 (2d Cir. 2012) ("To mitigate against abusive statute-of-limitations shopping, some states have created mechanisms— binding on the local federal courts via [*Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487 (1941)]—that discriminate against claims accruing out of state.  New York's borrowing statute . . . guards against forum shopping by out-of-state plaintiffs by mandating use of the *shortest* statute of limitations available.").

Here, applying New York law, the Court finds that Plaintiff's state-law claims accrued in Massachusetts because that is where Plaintiff resided when he sustained his injuries, all of which were economic in nature.  *See Landesbank Baden-Württemberg v. RBS Holdings USA Inc.*, — F.

Supp. 2d —, 2014 WL 1388408, at *8 (S.D.N.Y. Apr. 9, 2014) ("New York law dictates that 'a cause of action accrues at the time and in the place of the injury.  When an alleged injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss.'" (citation omitted) (quoting *Global Fin. Corp. v. Triarc Corp.*, 715 N.E.2d 482, 485 (N.Y. 1999)); *see also Becnel v. Deutsche Bank, AG*, 507 F. App'x 71, 72 (2d Cir. 2013) ("For purposes of actions that allege only economic injury, the cause of action accrues in the state where the plaintiff resides."); *IKB Int'l S.A. v. Bank of Am.*, No. 12-CV-4036, 2014 WL 1377801, at *5 (S.D.N.Y. Mar. 31, 2014) ("Where . . . a claim is based on financial injury, the claim accrues where the plaintiff resides and sustains the economic impact of the loss." (internal quotation marks omitted)).  Therefore, pursuant to N.Y. C.P.L.R. § 202, the Court applies Massachusetts' limitations periods of two and three years to Plaintiff's minimum-wage and overtime-wage claims, respectively, because they are shorter than New York's six-year period for equivalent claims.  *Compare* Mass. Gen. Laws ch. 149, § 150 (three-year limitations period for minimum-wage claims alleged under Mass. Gen. Laws ch. 149, § 148); *id.* ch. 151, § 20A (two-year limitations period for overtime-wage claims alleged under Mass. Gen. Laws ch. 151, § 1A); *Crocker v. Townsend Oil Co.*, 979 N.E.2d 1077, 1081–82 & n.8 (Mass. 2012) (noting that "a cause of action for the nonpayment of overtime [alleged under Mass. Gen. Laws ch. 151, § 1A] must be brought within two years of the date it accrues[,]" but that "an employee claiming to be aggrieved by a violation of [Mass. Gen. Laws ch. 149, § 148]" must bring an action "'within [three] years after the violation'" (quoting Mass. Gen. Laws ch. 149, § 150)), *with* N.Y. Lab. Law § 663(3) (six-year limitation period for wage claims); *Man Wei Shiu v. New Peking Taste Inc.*, No. 11-CV-1175, 2014 WL 652355, at *10 (E.D.N.Y. Feb. 19, 2014) (noting that New York law "establishes a six-year limitations period" for wage claims).  However, the

Court applies New York's two-year limitations period to Plaintiff's retaliatory-discharge claim because it is shorter than Massachusetts' three-year period for equivalent claims. *Compare* Mass. Gen. Laws ch. 149, § 150 (three-year limitations period for retaliatory-discharge claims alleged under Mass. Gen. Laws ch. 149, § 148A); *Crocker*, 979 N.E.2d at 1082 n.8 (same), *with* N.Y. Lab. Law § 215(2)(a) (two-year limitation period for retaliatory-discharge claims); *McKenna on behalf of U.S. v. Senior Life Mgmt., Inc.* 429 F. Supp. 2d 695, 699 (S.D.N.Y. 2006) (same).

Finally, for purposes of calculating the timeliness of Plaintiff's Complaint, the Court notes that Plaintiff's wage claims accrued each time Defendants allegedly failed to pay him at the end of a pay period. *See Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 198 (2d Cir. 2013) ("The cause of action for FLSA . . . claims accrues on the next regular payday following the work period when services are rendered."); *Crocker*, 979 N.E.2d at 1085 (noting that a plaintiff "suffer[s] [a] discrete injur[y] each time [a defendant] fail[s] to pay [him] the wages [he] [was] owed under the Wage Act"); *see also Awuah v. Coverall N. Am., Inc.*, 952 N.E.2d 890, 893 (Mass. 2011) (noting that Mass. Gen. Laws ch. 149, § 148 "requir[es] that employers pay employees within a week of the weekly or biweekly pay period during which wages were earned"). And the Court notes that his retaliatory-discharge claims accrued on the date of his termination. *See Goodman*, 2013 WL 5313427, at *5.

### b.  Application to Plaintiff's Claims

"The lapse of a limitations period is an affirmative defense that a defendant must plead and prove[,]" but "a defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008); *see also Mosdos Chofetz Chaim, Inc. v. RBS Citizens,*

*N.A.*, — F. Supp. 2d —, 2014 WL 1612988, at *12 (S.D.N.Y. Mar. 30, 2014) ("Because the defendants bear the burden of establishing the expiration of the statute of limitations as an affirmative defense, a pre-answer motion to dismiss on this ground may be granted only if it is clear on the face of the complaint that the statute of limitations has run." (alterations and internal quotation marks omitted)).  In the Complaint, Plaintiff alleges that he worked for IBM from March 11, 2008 to March 28, 2008, when he was terminated.  (*See* Compl. ¶¶ 21–23.)  His claims therefore accrued, at the latest, on or around March 28.  Plaintiff filed his Complaint on April 1, 2013—approximately five years later.  (*See* Dkt. No. 1).  Because the longest limitations period applicable to these claims is three years, the claims are untimely.[7]

Plaintiff argues that the Action before this Court is a "continuation of the disputes [that] arose in the litigations [sic] previously filed in the courts in Massachusetts[,]" and that the limitations periods "have been tolled."  (Pl.s' Mem. 7–8.)  Plaintiff is incorrect.  Prior to this Action, Plaintiff filed only two actions—one in Massachusetts state court, and one in federal court in the District of Massachusetts—against Defendants.  (*See* Defs.' Mem. Ex. A (amended complaint in second state-court action, naming Palmisano and Loughridge as defendants); Defs.' Mem. Ex. E (second amended complaint in first federal-court action, naming Palmisano, Loughridge, Schroeter, and MacDonald as defendants).)  In both actions, the courts dismissed all claims alleged against Defendants without prejudice for lack of personal jurisdiction.  (*See* Compl. ¶¶ 43, 45.)  These actions, therefore, did not toll the statute of limitations for Plaintiff's FLSA claims, because, when calculating limitations periods for federal claims, "a suit dismissed

---

[7] Plaintiff alleges that his FLSA overtime-wage claim, but not his other FLSA claims, constituted a willful violation, entitling him to the three-year limitations period instead of the two-year period.  (*See* Compl. ¶ 133.)  However, the Court need not decide which period applies, because the claim is untimely under either period.

14

without prejudice . . . is treated for statute of limitations purposes as if it had never been filed[.]" *In re Palermo*, 739 F.3d 99, 105 (2d Cir. 2014) (internal quotation marks omitted); *see also Johnson v. Nyack Hosp.*, 86 F.3d 8, 11 (2d Cir. 1996) ("[W]here [an] action has been dismissed without prejudice, a plaintiff's subsequent court filing is vulnerable to a time-bar because the dismissal in and of itself does not halt the running of the limitations period, even though designated to be without prejudice.").

With regard to Plaintiff's state-law claims, "New York's 'savings' statute allows a plaintiff to refile claims within six months of a timely prior action's termination for reasons other than the merits or a plaintiff's unwillingness to prosecute the claims in a diligent manner." *Norex Petroleum Ltd. v. Blavatnik*, — N.E.3d —, 2014 WL 2883898, at *1 (N.Y. June 26, 2014) (citation omitted) (citing N.Y. C.P.L.R. § 205(a)); *see also Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, No. 11-CV-1529, 2014 WL 684831, at *4 (S.D.N.Y. Feb. 21, 2014) (same); *Peters v. UBS AG*, No. 13-CV-3098, 2014 WL 148631, at *5 (S.D.N.Y. Jan. 15, 2014) (same). However, the savings statute does not apply to claims that were dismissed for lack of personal jurisdiction. *See* N.Y. C.P.L.R. § 205(a) (applying to "an action [that] is timely commenced and is terminated in any other manner than . . . a failure to obtain personal jurisdiction over [a] defendant"); *see also Harrison v. Lutheran Med. Ctr.*, 468 F. App'x 33, 36 (2d Cir. 2012) (noting that "§ 205(a) does not allow tolling based on a prior suit that was terminated due to a failure to obtain personal jurisdiction over the defendant" (internal quotation marks omitted)); *Midwest Mem'l Grp., L.L.C. v. Int'l Fund Servs. (Ir.) Ltd.*, No. 10-CV-8660, 2011 WL 4916407, at *6 (S.D.N.Y. Oct. 17, 2011) (noting that § 205(a)'s "tolling provisions are not applicable where a prior action against the same defendant ha[d] been terminated for lack of personal jurisdiction"); *Jacquez v. Campouerde*, 766 N.Y.S.2d 89, 89 (App. Div. 2003) (holding that, because a court previously

dismissed an action against the defendant for lack of personal jurisdiction, "the plaintiff was not entitled to invoke the six-month extension contained in [§ 205(a)] to recommence his terminated action"). Accordingly, the savings statute applies neither to Plaintiff's state-court action nor to his federal-court action, because both actions were dismissed for lack of personal jurisdiction. And even if the savings statute did apply, the claims would still be untimely under the savings statute because Plaintiff's Complaint, filed in April 2013, was commenced more than six months after the dismissals of his state-court action in September 2010 and his federal-court action in December 2011.

### c.  Equitable Tolling

In his Memorandum of Law, Plaintiff does not raise an equitable-tolling argument. However, even if he did, the Court would still dismiss these claims. The doctrine of equitable tolling "allows a district court to toll the statute of limitations where, *inter alia*, a plaintiff initially asserted his rights in the wrong forum." *Polanco v. U.S. Drug Enforcement Admin.*, 158 F.3d 647, 655 (2d Cir. 1998) (internal quotation marks omitted); *see also Danecker v. Bd. of Trs. of Serv. Emps. 32BJ N. Pension Fund*, 882 F. Supp. 2d 606, 612 (S.D.N.Y. 2012) (noting that courts apply equitable tolling "as a matter of fairness where a plaintiff . . . has asserted his rights in the wrong forum" (alterations and internal quotation marks omitted)). But "[t]o qualify for equitable tolling" on an FLSA claim, Plaintiff "must establish that extraordinary circumstances prevented [him] from filing [his] claim on time, and that [he] acted with reasonable diligence throughout the period [he] seeks to toll." *Parada*, 2014 WL 1202959, at *6 (internal quotation marks omitted). Here, Plaintiff has not even attempted to demonstrate that an "extraordinary circumstance" prevented him from timely filing this Action or that he has "acted with reasonable diligence." And it would be difficult for him to do so, given that he had notice as early as

September 2010 that he could not obtain personal jurisdiction over Defendants in Massachusetts courts, *see DeGrate v. Broadcast Music, Inc.*, No. 12-CV-1700, 2013 WL 639146, at *3 (S.D.N.Y. Feb. 20, 2013) ("Assuming for the moment that [the] [p]laintiff's filing in the wrong forum were deemed to constitute an extraordinary circumstance, the record is clear that [the] [p]laintiff received notice that he had filed in the wrong court [on the date the court dismissed the case for lack of jurisdiction], at which time equitable tolling would have ceased." (citations omitted)), and given that the Complaint in this Action is substantially similar to complaints he has filed in the previous actions, *see Parada*, 2014 WL 1202959, at *6 (declining to apply equitable tolling where the plaintiff "could have filed her FLSA claim" within the limitations period and "showed that she was capable of taking legal action much earlier" than she did). Furthermore, declining to apply equitable tolling to Plaintiff's claims would not prevent plaintiff from having his day in court, because he has already filed a still-pending action alleging four of these claims against Defendants' employer, IBM, in federal court in Massachusetts, (*see* Defs.' Mem. Ex. H (second federal-court complaint, alleging federal and state overtime-wage and retaliatory-discharge claims)), and he previously brought an action alleging the other two minimum-wage claims against IBM in Massachusetts state court, (*see* Defs.' Mem. Ex. A (second state-court complaint, alleging federal and state minimum-wage claims)).  *See Bridgeway Corp. v. Citibank, N.A.*, 132 F. Supp. 2d 297, 303–04 (S.D.N.Y. 2001) (applying equitable tolling where "enforcement of the statutes of limitations would [have] prevent[ed] [the] plaintiff from having its day in court[,]" and would have "penalize[d] [the] plaintiff by denying [the] plaintiff its opportunity to be heard on the merits of its case against [the] defendant"). Given that "equitable tolling is applicable only in rare and exceptional circumstances," *Phillips v. Generations Family Health Ctr.*, 723 F.3d 144, 150 (2d Cir. 2013) (internal quotation marks

omitted), Plaintiff cannot demonstrate why enforcing statutes of limitations in an action involving these Defendants would be unfair in light of Plaintiff's decision to bring parallel actions against IBM over the course of a half-decade.

Moreover, even if the Court applied equitable tolling to exclude from the limitations period the time during which Plaintiff's state and federal actions in Massachusetts were pending, the Complaint would still be untimely.  As discussed, Plaintiff filed the instant Complaint approximately five years after his claims accrued.  Within that period, approximately 10 months elapsed between Plaintiff's November 25, 2009 filing of his second Massachusetts state-court action (the first one that involved any of these Defendants), and the state court's September 30, 2010 dismissal of all claims involving Defendants on personal-jurisdiction grounds.  (*See* Compl. ¶¶ 42–43.)  Subsequently, another 11 months elapsed between Plaintiff's January 4, 2011 filing of his first Massachusetts federal-court action (in which he named all of these Defendants, some for the first time in any action), and the district court's December 9, 2011 dismissal of all claims involving Defendants on personal-jurisdiction grounds.  (*See id.* ¶¶ 44–45.)  Excluding those 21 total months from the five years, or 60 months, it took Plaintiff to file this Action, the Court would deem the Complaint to have been filed 39 months, or over three years, after accrual. Plaintiff's claims are therefore untimely even if equitable tolling applied.

Thus, in light of the foregoing analysis, the Court dismisses the minimum-wage claims (counts one and two), the overtime-wage claims (counts nine and ten), and the retaliatory-discharge claims (counts three and four) with prejudice.

### 2.  Refusal-To-Hire Claims

In addition to the six aforementioned claims, Plaintiff also alleges four claims involving Defendants' post-discharge refusal to hire Plaintiff.  Two of those claims—one brought under the

FLSA (count five), the other brought under Massachusetts state law (count six)—allege that Defendants refused to hire Plaintiff in retaliation for exercising his rights under those laws.  (*See* Compl. ¶¶ 71–93.)  The other two claims—one brought under the ADEA (count seven), the other brought under Massachusetts state law (count eight)—allege that Defendants refused to hire Plaintiff based on his membership in a protected class of persons over a certain age.  (*See id.* ¶¶ 94–113.)[8]

With respect to all four of these claims, Plaintiff initially alleges that, after he was discharged on March 28, 2008, Plaintiff "repeatedly" "made many job applications" to IBM, and that "[m]any of [the] job applications were . . . directly mailed to the Defendants many times." (*Id.* ¶¶ 30–31.)  Plaintiff also alleges that he "was interviewed by IBM about five times" in connection with these applications, and that he "believed he was well qualified to perform [these jobs" because they involved work that was "similar to that performed by Plaintiff for IBM in March of 2008."  (*Id.* ¶¶ 32–33.)  However, "IBM repeatedly rejected each and every [job] application made by Plaintiff," a practice which Plaintiff alleges "continued for many years." (*Id.* ¶ 34.)

Plaintiff then alleges that, in early 2009, he filed a number of complaints against IBM in various fora, including a January 13, 2009 complaint of age discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), a February 12, 2009 complaint in Massachusetts state court, a March 16, 2009 complaint of employment discrimination with the Massachusetts Commission Against Discrimination ("MCAD"), and a March 16, 2009 complaint of employment retaliation with the Massachusetts Attorney General.  (*See id.* ¶¶ 35–38.)  After

---

[8] Plaintiff alleged that he was 56 years old at the time he filed the Complaint in April 2013, making him at least 50 years old in March 2008.  (*See* Compl. ¶ 12.)

filing these complaints, Plaintiff "continued to seek hundreds of [jobs] for [which] Plaintiff was believed to be qualified[,]" and his "job applications were made to IBM and Defendants . . . many times." (*Id.* ¶¶ 39–40.) However, "IBM rejected each and every work application made by Plaintiff . . . even after the complaints filed in the state courts," a practice which Plaintiff again alleges "continued for many years." (*Id.* ¶ 41.)

### a. Timeliness

Defendants first move to dismiss these claims on timeliness grounds. Plaintiff's retaliation-based claims are subject to a two-year limitations period—both for Plaintiff's FLSA retaliation claim and for Plaintiff's state-law retaliation claim. *See* 29 U.S.C. § 255(a) (two-year limitations period for FLSA claims, unless it is a willful violation, in which case a three-year limitations period applies); N.Y. Lab. Law § 215(2)(a) (two-year limitations period for retaliation claim).[9] Plaintiff's state-law age-discrimination claim is subject to a three-year limitations period under either Massachusetts or New York law. *Compare* Mass. Gen. Laws ch. 151B, § 9 (providing that age-discrimination claims under Mass. Gen. Laws ch. 151B, § 4 must be brought "not later than three years after the alleged unlawful practice occurred"); *Robinson v. City of Boston*, 887 N.E.2d 261, 769 (Mass. App. Ct. 2008) (finding age-discrimination claim filed "less than three years after the alleged discriminatory act" to be timely), *with Hanley v. Chi. Title Ins. Co.*, No. 12-CV-4418, 2013 WL 3192174, at *7 (S.D.N.Y. June 24, 2013) ("Claims for age discrimination under [New York law] are governed by a three-year statute of limitations." (citing N.Y. Exec. Law § 296; N.Y. C.P.L.R. § 214(2))); *Murphy v. Am. Home Prods. Corp.*, 448

_____

[9] As discussed, *supra*, the Court applies New York's shorter two-year limitations period to Plaintiff's retaliation claim brought under Massachusetts law. *See* N.Y. C.P.L.R. § 202. Moreover, although Plaintiff alleges that his FLSA wage claim involved a "willful" violation, (*see* Compl. ¶ 133), he does not allege that his FLSA retaliation claim involved such a violation, and therefore the three-year limitations period does not apply to this claim.

N.E.2d 86, 87 (N.Y. 1983) (noting, in the context of an age-discrimination claim, that "[t]he period of time for commencement of a judicial action for unlawful discrimination in employment is the three-year period of [N.Y. C.P.L.R. § 214(2)]").  However, for claims brought under the ADEA—which requires Plaintiffs to file a complaint with the EEOC before filing a lawsuit, *see* 29 U.S.C. § 626(d)—the limitations period is calculated in relation to the date Plaintiff receives a so-called "right-to-sue letter" from the EEOC.  Specifically, "unless the EEOC first commences an action on a claimant's behalf, ADEA plaintiffs may file suit in court at any time from 60 days after timely filing the EEOC charge until 90 days after the plaintiff receives notice from the EEOC that the EEOC proceedings are terminated."  *Francis v. Elmsford Sch. Dist.*, 442 F.3d 123, 127 (2d Cir. 2006) (alterations, citations, and internal quotation marks omitted).[10]

As noted, the Court may dismiss claims as untimely pursuant to a Rule 12(b)(6) motion only if "the defense appears on the face of the complaint."  *Staehr*, 547 F.3d at 425.  Here, it is unclear from the face of the Complaint whether certain of Plaintiff's refusal-to-hire claims are timely, for two reasons.  First, it is unclear when Plaintiff's job applications were rejected.  In the Complaint, Plaintiff alleges generally that he "repeatedly" submitted job applications to IBM and "directly mailed" applications "to the Defendants many times[,]" and he alleges that Defendants "repeatedly rejected each and every [job] application made by Plaintiff," and that this "continued

----

[10] Defendants are therefore incorrect that "[Plaintiff's] ADEA claim is governed by a three year statute of limitations."  (Defs.' Mem. 16 (citing 29 U.S.C. §§ 626(e), 255(a)).)  The ADEA used to incorporate the FLSA's statute-of-limitations provision—which included a three-year limitations period for willful violations—but Congress replaced that with the current scheme in 1991.  *See E.E.O.C. v. Inc. Vill. of Valley Stream*, 535 F. Supp. 2d 323, 325 (E.D.N.Y. 2008) ("Prior to 1991, private actions and EEOC actions under the ADEA were subject to the time limitations of § 255, which was incorporated by reference into ADEA § 626(e).  However, Congress, in the Civil Rights Act of 1991, amended ADEA § 626(e) by deleting the reference to § 255 and by imposing on private actions a requirement that suit be filed no later than 90 days after receipt of a right-to-sue letter from the EEOC.  As a result, § 255 no longer applies to private actions . . . .").

for many years." (Compl. ¶¶ 30–31, 34, 39–41.)  Defendants argue that "[Plaintiff] was on

notice of his failure-to-hire claims no later than January 2010, when he asserted these claims in

Massachusetts Superior Court." (Defs. Mem. 16.)  To the extent that Plaintiff's claims are based

on acts of retaliation or discrimination that occurred outside of the relevant limitations periods,

Defendants may be correct that Plaintiff's claims are untimely.  However, because, under both

federal and state law, each act of retaliation or discrimination may be a discrete event that

triggers a new claim and therefore a new limitations period, at least some of Plaintiff's claims

might be timely, depending on the dates on which Plaintiff received notice of his rejections for

the "many" applications he submitted over a period of "many years."  *See Cho v. City of New*

*York*, No. 11-CV-1658, 2012 WL 4376047, at *6 (S.D.N.Y. July 25, 2012) (finding, in the

context of an ADEA claim, that a "'refusal to hire' constitutes . . . a discrete act of

discrimination[,]" that "[d]iscrete acts of discrimination or retaliation are deemed to have

occurred on the day that they happened," and that "[i]f a plaintiff alleges multiple discriminatory

acts, each individual act ordinarily triggers a new clock for filing charges alleging that act"

(alterations and internal quotation marks omitted)), *adopted by* 2012 WL 4364492 (S.D.N.Y.

Sept. 25, 2012), *aff'd*, 549 F. App'x 15 (2d Cir. 2013); *Everett v. 357 Corp.*, 904 N.E.2d 733,

751 (Mass. 2009) (finding that a claim for refusal to rehire an employee two years after

termination constituted an independent claim that accrued when the request was denied, and

noting that "the failure to rehire an employee is considered a discrete, separate act that does not

draw other allegedly discriminatory acts into its scope"); *cf. Nat'l R.R. Passenger Corp. v.*

*Morgan*, 536 U.S. 101, 114 (2002) (holding, in the context of a Title VII claim, that "[d]iscrete

acts such as termination . . . or refusal[s] to hire" are separate "retaliatory adverse employment decision[s]" that each "constitutes a separate actionable 'unlawful employment practice'").[11]

Second, it is unclear when the statute of limitations for Plaintiff's ADEA claim began to run.  Although the Complaint does allege that Plaintiff filed a complaint with the EEOC on January 13, 2009, it does not allege when, or whether, Plaintiff received a right-to-sue letter from the EEOC, thereby triggering the 90-day limitations period.  (*See* Compl. ¶ 35.)  As discussed, if Plaintiff never received such a letter, his ADEA claim might be properly filed under 29 U.S.C. § 626(d), which allows a plaintiff to file an ADEA claim at any time beginning "60 days after a charge alleging unlawful discrimination has been filed with the [EEOC.]"  29 U.S.C. § 626(d)(1).  However, if Plaintiff did receive such a letter, his claim might be untimely under 29 U.S.C. § 626(e), which provides that "[a] civil action may be brought . . . within 90 days after the date of the receipt" of the letter.  29 U.S.C. § 626(e).

For these reasons, the Court cannot determine whether these claims are timely from the face of the Complaint.  Therefore, it cannot grant Defendants' Motion To Dismiss these claims on timeliness grounds at this time.

---

[11] In their Memoranda, the Parties do not address whether each refusal-to-hire claim is an independent violation for statute-of-limitations purposes, or whether the Court should consider all of Plaintiff's refusal-to-hire claims to be a single claim that accrued when Plaintiff first received notice of Defendants' refusal to re-hire him.  Defendants briefly address this issue in the context of their collateral-estoppel argument.  (*See* Defs.' Reply 2–3 & n.3.)  However, in arguing that the Court should preclude Plaintiff from alleging refusal-to-hire claims after "repeatedly applying and re-applying for positions with the defendant[,]" Defendants do not address whether such claims would be untimely.  (*Id.* at 3 n.3.)  Because the Court dismisses Plaintiff's refusal-to-hire claims without prejudice and with leave to amend, the Court need not and does not address Defendants' collateral-estoppel argument.  If Plaintiff files an amended complaint, Defendants may raise the collateral-estoppel argument and the statute-of-limitations argument in subsequent motions.

### b. Failure To State a Claim

#### i. ADEA Claim

Although Plaintiff has separately brought claims similar to those in this case against IBM, in this Action, Plaintiff names as Defendants only individuals employed by IBM.  However, courts in this circuit have consistently held that the ADEA does not impose liability on individuals.  *See Palumbo v. Carefusion 2200, Inc.*, No. 12-CV-6282, 2014 WL 3921233, at *6 (W.D.N.Y. Aug. 11, 2014) ("It is well established that there is no individual liability under . . . the ADEA." (internal quotation marks omitted)); *Fitzgerald v. Signature Flight Support Corp.*, No. 13-CV-4026, 2014 WL 3887217, at *3 (S.D.N.Y. Aug. 5, 2014) ("[I]ndividuals are not subject to ADEA liability."); *Almontaser v. N.Y.C. Dep't of Educ.*, No. 13-CV-5621, 2014 WL 3110019, at *3 n.2 (E.D.N.Y. July 8, 2014) (noting that "individuals are not subject to liability under . . . the ADEA"); *Stankovic v. Newman*, No. 12-CV-399, 2013 WL 6842530, at *2 (D. Conn. Dec. 27, 2013) ("There is no individual liability under . . . the ADEA . . . ."); *Thorpe v. Piedmont Airlines, Inc.*, 926 F. Supp. 2d 453, 462 (N.D.N.Y. 2013) ("[T]here is no basis for imposing individual liability on agents of an employer under the ADEA's definition."); *see also Guerra v. Jones*, 421 F. App'x 15, 17 (2d Cir. 2011) (noting that the ADEA does not "subject[] individuals, even those with supervisory liability over [a] plaintiff, to personal liability").  The Court therefore dismisses Plaintiff's ADEA claim.

#### ii. Retaliatory-Refusal-To-Hire Claims

With respect to Plaintiff's FLSA and state-law retaliatory-refusal-to-hire claims, there is no per se bar on individual liability.[12]  Nevertheless, to allege a claim under the FSLA, "a

---

[12] Despite the lack of a per se bar, the Court notes that individual liability for FLSA claims may be imposed only in a limited set of circumstances.  *See Irizarry v. Catsimatidis*, 722 F.3d 99, 111 (2d Cir. 2013) (applying the "economic reality test" to determine whether an

plaintiff must plead facts showing a prima facie case of retaliation, namely: (1) participation in protected activity known to the defendant[s]; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Salazar v. Bowne Realty Assocs., L.L.C.*, 796 F. Supp. 2d 378, 384 (E.D.N.Y. 2011); *see also Tongring v. Bronx Cmty. Coll. of City Univ. of N.Y. Sys.*, No. 12-CV-6854, 2014 WL 463616, at *4 (S.D.N.Y. Feb. 4, 2014) (same).  A plaintiff must allege similar facts to state a claim under Massachusetts state law.  *See* Mass. Gen. Laws ch. 149, § 148A (making liable "[a]ny employer who . . . in any . . . manner discriminates against any employee *because* such employee has" sought his or her rights under the Wage Act (emphasis added)).  And although, as courts have recognized in similar contexts, Plaintiff "is not required to specifically plead every element of a prima facie case to survive a motion to dismiss[,]" he "[s]till . . . must plead facts sufficient to render his or her retaliation claim facially plausible under *Twombly* and *Iqbal*." *Ayazi v. N.Y.C. Dep't of Educ.*, No. 08-CV-2456, 2012 WL 4503257, at *7 (E.D.N.Y. Sept. 28, 2012); *see also Herling v. N.Y.C. Dep't of Educ.*, No. 13-CV-5287, 2014 WL 1621966, at *8 (E.D.N.Y. Apr. 23, 2014) (setting out the elements of a prima facie case for a retaliation claim while noting that "a plaintiff need not plead facts sufficient to establish a prima facie case of retaliation to survive a motion to dismiss[,]" but rather that "the ordinary rules for assessing the sufficiency of a complaint apply" (internal quotation marks omitted)); *Brundidge v. Xerox Corp.*, No. 12-CV-6157, 2014 WL 1323020, at *3 (W.D.N.Y. Mar. 31, 2014) ("Retaliation claims are

---

individual was an "employer under the FLSA," analyzing multiple factors related to an individual's actual and hypothetical power within the company); *Ramirez v. Riverbay Corp.*, — F. Supp. 2d —, 2014 WL 3800489, at *4 (S.D.N.Y. Aug. 1, 2014) (applying the economic-reality test); *Javier v. Beck*, No. 13-CV-2926, 2014 WL 3058456, at *5 (S.D.N.Y. July 3, 2014) (same).  However, it is unclear, at this time, whether Plaintiff's claim is such a circumstance with regard to any or all Defendants.

ultimately analyzed under the [*McDonnell Douglas*] burden-shifting rules . . . .  However, at the

pleading stage . . . the [c]ourt does not specifically apply the *McDonnell Douglas* burden-shifting

test to determine whether [a] [p]laintiff has stated a retaliation claim, but rather generally

assesses the plausibility of [a] [p]laintiff's claim based on the facts alleged in the [c]omplaint.");

*McManamon v. Shinseki*, No. 11-CV-7610, 2013 WL 3466863, at *4 (S.D.N.Y. July 10, 2013)

("To survive a motion to dismiss, a plaintiff need not specifically plead every element of a *prima*

*facie* case.  The elements of a *prima facie* case do, however, provide an outline of what is

necessary to render a plaintiff's employment discrimination claims for relief plausible.  Courts

therefore consider these elements in determining whether there is sufficient factual matter in the

complaint which, if true, gives [the] [d]efendant a fair notice of [the] [p]laintiff's claim and the

grounds on which it rests." (internal quotation marks, citations, and alterations omitted)).

     In this sense, and in the context of the causal-connection element of the prima facie case,

Plaintiff specifically "must allege facts that could establish a causal connection between [his]

protected activity and Defendant[s'] refusal to interview or to hire [him]."  *Ayazi*, 2012 WL

4503257, at *7; *see also McManamon*, 2013 WL 3466863, at *12 ("A plaintiff must allege facts

that could establish a causal connection or link between his or her protected activity and the

adverse action.  At [the motion-to-dismiss] stage, [a plaintiff] is not required to provide evidence

of such a connection, but he must plead facts that indicate an ability to do so." (citations

omitted)); *cf. Patane v. Clark*, 508 F.3d 106, 112 & n.3 (2d Cir. 2007) (per curiam) (noting, in

the context of a gender-discrimination claim, that a plaintiff need not plead a prima facie case

under *McDonnell Douglas*, but affirming a district court's dismissal of the claim because the

complaint "failed to plead any facts that would create an inference that any adverse action taken

by any defendant was based upon [the plaintiff's] gender" (alterations and internal quotation

marks omitted)).  Plaintiff may specifically allege such a connection either "directly, by alleging facts of a retaliatory animus against him[,]" or "indirectly, either by showing a temporal relationship in which the protected activity was followed closely in time by discriminatory treatment, or by other circumstantial evidence." *McManamon*, 2013 WL 3466863, at *12; *see also Herling*, 2014 WL 1621966, at *10 (same); *Brundidge*, 2014 WL 1323020, at *4 (same); *cf. McNair v. N.Y.C. Health & Hosp. Co.*, 160 F. Supp. 2d 601, 604 (S.D.N.Y. 2001) ("In order to establish [a] causal connection, a plaintiff must allege (1) direct proof of retaliatory animus directed against the plaintiff; (2) disparate treatment of similarly situated employees; or (3) that the retaliatory action occurred close in time to the protected activities.").

Turning to the Complaint, Plaintiff alleges the following relevant facts: (1) "[o]n about March 16, 2009, Plaintiff filed a complaint of employment retaliation with the [Massachusetts state] Attorney General['s] office against Defendants[,]" (Compl. ¶ 38), and thereby sought to assert his FLSA rights, (*id.* ¶ 77); (2) "[o]n November 25, 2009, Plaintiff filed a complaint against Defendants . . . in Massachusetts Superior Court[,]" (*id.* ¶ 42), in which he alleged FLSA claims, (*see* Defs.' Mem. Ex. A ¶¶ 96–101); (3) "[a]fter [he] filed his complaint in [the] Massachusetts Attorney General['s] Office and the state courts, [he] continued to seek hundreds of [jobs,]" (Compl. ¶ 72), in that he "repeatedly made applications . . . by submitting his resume many times via CDI" and by "mail[ing] his job applications directly to the Defendants[,]" (*id.* ¶ 73); (4) "[d]espite [Plaintiff's] qualifications, IBM and Defendants rejected each and every [one of his] applications[,]" (*id.* ¶ 74); (5) after filing further complaints in federal court, first on January 4, 2011, (*see id.* ¶ 44), and then on January 9, 2013, (*see* Defs.' Mem. Ex. I),

"Defendant[s] continued their retaliatory actions against Plaintiff[,]" (Compl. ¶ 80).[13]  In addition

to these facts, Plaintiff alleges that the "[m]otives for Defendant[s] to reject Plaintiff's

applications [were] to retaliate [against] Plaintiff for seeking his rights provided by the [FLSA]."

(*Id.* ¶ 78.)

To begin, Plaintiff's allegation regarding Defendants' retaliatory "motives," on its own, is

wholly conclusory and is no more than a "the-defendant-unlawfully-harmed-me accusation" that

the Court need not credit in the context of Defendants' Motion To Dismiss.  *Iqbal*, 556 U.S. at

678; *see also Shah v. N.Y. State Office of Mental Health*, 523 F. App'x 828, 831 (2d Cir. 2013)

(holding that, because a complaint "plead[ed] no facts from which [the court] could plausibly

infer that [the defendant's] refusal to rehire [the plaintiff] result[ed] from any . . . retaliatory

motive," the plaintiff's claim "[did] not meet the pleading standard set forth in [*Twombly*]");

*Jackson v. Cnty. of Rockland*, 450 F. App'x 15, 19 (2d Cir. 2011) (finding that a complaint's

"bald assertions of . . . retaliation, unsupported by any comments, actions, or examples . . . from

which [the court] could infer that the defendants possess[ed] a . . . retaliatory motive, [were]

implausible and insufficient to survive a motion to dismiss"); *Colvin v. State Univ. Coll. at*

*Farmingdale*, No. 13-CV-3595, 2014 WL 2863224, at *20 (E.D.N.Y. June 19, 2014) (noting that

---

[13] The Complaint also alleges that Plaintiff filed an EEOC complaint on January 13, 2009, and a complaint with the Massachusetts Commission Against Discrimination on March 16, 2009.  (*See* Compl. ¶¶ 35, 37.)  However, Plaintiff does not allege that either of these complaints involved activity protected by the FLSA.  To the contrary, he did not mention them in the context of his FLSA retaliatory-refusal-to-hire claim, (*see id.* ¶¶ 72, 80 (mentioning the complaint with the Massachusetts Attorney General's Office and multiple actions brought in Massachusetts courts)), and he specifically alleges that these complaints involved allegations of "discrimination[,]" (*see id.* ¶¶ 35, 37).  Plaintiff also alleges that he filed a state-court action on February 12, 2009, prior to filing the November 25, 2009 action.  (*See id.* ¶ 36.)  However, it is unclear whether Plaintiff asserted FLSA claims in that action.  Moreover, to the extent any of these complaints could be characterized as "protected activity" under the FLSA, the Court would dismiss Plaintiff's claims for the same reason it dismisses his claims in the context of the other protected activity clearly alleged in the Complaint.

"[t]o satisfy the causal connection requirement of the prima facie case" in the context of a motion to dismiss, a plaintiff "may not rely on conclusory assertions of retaliatory motive" (internal quotation marks omitted)); *cf. Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Instead, Plaintiff must "allege facts from which a retaliatory intent on the part of the defendants reasonably may be inferred."  *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 91–92 (2d Cir. 2002) (finding that a proposed amended complaint stated a retaliation claim where the complaint "set[] forth specific facts, which if proven, [could] support a finding of retaliatory motive"); *see also Reardon v. Keating*, 980 F. Supp. 2d 302, 318 (D. Conn. 2013) (dismissing a retaliation claim where the complaint's "references to retaliation [were] conclusory boilerplate, without foundation or support in the [complaint's] factual allegations from which an intent to retaliate could plausibly be inferred"); *Mateo v. Bristow*, No. 12-CV-5052, 2013 WL 3863865, at *6 (S.D.N.Y. July 16, 2013) (denying a motion to dismiss where the complaint pleaded facts supporting "inferences suffic[ient] to establish a plausible retaliatory motive"); *cf. Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

With regard to the remaining factual allegations, none of them, alone or in combination with the others, is sufficient to plead a plausible retaliation claim.  In essence, the Complaint alleges that Plaintiff submitted job applications after he filed complaints involving FLSA claims, but that Defendants rejected all of his applications despite the fact that he was qualified.  Plaintiff therefore alleges only "indirect" evidence of retaliatory animus—and, specifically, evidence based solely on the temporal proximity between his protected activity (filing a complaint) and

the adverse action (Defendants' rejection of his application).  But although a plaintiff "can plead

a causal connection . . . indirectly[] . . . by showing a temporal relationship" between protected

activity and adverse action, such a relationship gives rise to an inference of retaliatory motive

only where "the protected activity was followed closely in time" by the adverse action.

*McManamon*, 2013 WL 3466863, at *12; *see also Herling*, 2014 WL 1621966, at *10

(concluding, "based on [a] lack of temporal proximity[,] that [the plaintiff] [did] not plausibly

allege facts that [gave] rise to an inference of a causal connection between his complaint . . . and

the adverse employment action he suffered"); *Brundidge*, 2014 WL 1323020, at *4 (dismissing a

retaliation claim where "the time period between the protected activity and [the] [p]laintiff's

termination . . . [was] far too distant to create an inference of causation or causal connection");

*cf. Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam) ("The cases that

accept mere temporal proximity between an employer's knowledge of protected activity and an

adverse employment action as sufficient evidence of causality to establish a prima facie case

uniformly hold that the temporal proximity must be very close." (internal quotation marks

omitted)).  Here, although Plaintiff has alleged the dates on which he filed his complaints, he has

not alleged the dates on which Defendants rejected his applications, or even the dates on which

he submitted his applications.  Instead, the Complaint merely alleges that Defendants rejected his

job applications "after" he filed his complaints.  (*See* Compl. ¶ 72.)  The Complaint's vague

allegations therefore fail to give rise to a plausible inference that Defendants rejected him in

retaliation for filing his FLSA claims.  *See Henry v. N.Y.C. Health & Hosp. Corp.*, No. 13-CV-

6909, 2014 WL 957074, at *11 (S.D.N.Y. Mar. 10, 2014) (granting a motion to dismiss where

the complaint alleged that the defendants retaliated against the plaintiff "*when* she complained"

and "*after* she complained," but where it "fail[ed] to state with even a modicum of specificity

when the relevant events occurred[,]" rendering the complaint's "conclusory allegations . . . simply too vague in nature and non-specific as to time to serve as a basis for [the plaintiff's] retaliation claims" (alterations and internal quotation marks omitted)); *Winston v. City of New York*, No. 12-CV-395, 2013 WL 4516097, at *4 (E.D.N.Y. Aug. 23, 2013) (granting a motion to dismiss where the complaint alleged only that the plaintiff was terminated "shortly after" she engaged protected activity), *on reconsideration*, 2014 WL 2957488 (E.D.N.Y. July 1, 2014); *see also Ayazi*, 2012 WL 4503257, at *7 ("Although temporal proximity of events can give rise to an inference of retaliation sufficient to establish causation, the mere filing of such a complaint does not . . . create an automatic presumption that any subsequent employer action adverse to the employee is retaliatory in nature." (citations and internal quotation marks omitted)); *cf. Iqbal*, 556 U.S. at 678 ("The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (citation and internal quotation marks omitted)).  Accordingly, the Court dismisses Plaintiff's FLSA and state-law retaliatory-refusal-to-hire claims.

### iii.  State-law Age-Discrimination Claim

The Court's analysis of Plaintiff's state-law age-discrimination claim is similar to its analysis of his retaliatory-refusal-to-hire claims, in that all of these claims require Plaintiff to plead facts that make plausible his allegation that he was not hired for an illegitimate reason. With respect to Plaintiff's age-discrimination claims, the Massachusetts statute Plaintiff invokes imposes civil liability on a private-sector employer who "refuse[s] to hire or employ . . . [an] individual" "*because* of the age of [that] individual."  Mass. Gen. Laws ch. 151B, § 4(1B) (emphasis added).  Initially, it bears noting that this language is, in all relevant respects, nearly

identical to the ADEA's language making it "unlawful for an employer . . . to fail or refuse to

hire . . . any individual . . . *because* of such individual's age[,]" 29 U.S.C. § 623(a)(1) (emphasis

added), leading some courts to note that the "analyses" under Massachusetts law and the ADEA

"are substantially similar in all relevant respects," *Adamson v. Walgreens Co.*, 750 F.3d 73, 83

(1st Cir. 2014) (internal quotation marks omitted); *see also DaCosta v. Town of Plymouth*,

No. 11-CV-12133, 2014 WL 2998986, at *18 (D. Mass. July 1, 2014) ("The analyses of the

ADEA and chapter 151B age discrimination claims are substantially similar in all relevant

respects . . . ." (internal quotation marks omitted)); *Sullivan v. Liberty Mut. Ins. Co.*, 825 N.E.2d

522, 530 n.11 (Mass. 2005) (noting the court's "practice to apply Federal case law construing the

Federal antidiscrimination statutes in interpreting [Mass. Gen. Laws ch. 151B]" (internal

quotation marks omitted)).  In this context, "[t]o survive a motion to dismiss" Plaintiff's state-

law age-discrimination claim, his complaint "must plausibly plead that the circumstances

surrounding an adverse employment action give rise to an inference of age discrimination."

*Kirkweg v. N.Y.C. Dep't of Educ.*, No. 12-CV-2635, 2013 WL 1651710, at *4 (S.D.N.Y. Apr. 4,

2013) (alterations and internal quotation marks omitted); *see also Caskey v. Cnty. of Ontario*,

560 F. App'x 57, 58 (2d Cir. 2014) ("To plead a claim under the ADEA, a plaintiff must allege

that . . . the adverse employment action occurred under circumstances giving rise to an inference

of discriminatory intent."); *Lawtone-Bowles v . City of New York, Dep't of Sanitation*, — F.

Supp. 2d —, 2014 WL 2429070, at *5 (S.D.N.Y. May 30, 2014) ("To plead a claim of age

discrimination under the ADEA, the plaintiff must allege sufficient facts to support a plausible

inference that she suffered an adverse employment action because of her age."); *Deylii v.

Novartis Pharm. Corp.*, No. 13-CV-6669, 2014 WL 2757470, at *7 (S.D.N.Y. June 16, 2014)

("[A]n ADEA complaint must contain sufficient facts to make plausible the conclusion that but

for his age, Plaintiff would still be employed." (alterations and internal quotation marks omitted)); *cf. Sassine v. Fid. Mgmt. & Research Co.*, No. SUCV2012-04085-E, 2013 WL 7121296, at *3 (Mass. Super. Ct. Oct. 22, 2013) (dismissing a claim under Mass. Gen. Laws ch. 151B, § 4(1B) "for failure to state a claim" because it "fail[ed] to include any facts giving rise to a reasonable inference that age was a factor in [the plaintiff's] termination" and therefore it "[did] not plausibly suggest an entitlement to relief for age discrimination").

Here, like the Complaint's allegations with respect to Plaintiff's retaliatory-refusal-to-hire claims, the Complaint's allegations with respect to Plaintiff's state-law age-discrimination claim are barebones and conclusory.  The Complaint merely alleges that "Plaintiff repeatedly [submitted job] applications" to IBM "many times[,]" (Compl. ¶ 106), that, "[d]espite [Plaintiff's] qualifications, IBM rejected each and every [one of] Plaintiff's applications[,]" (*id.* ¶ 109), that "Plaintiff is 56 year[s] old[,]" (*id.* ¶ 110), and that "[a] determining factor in the rejection of Plaintiff's applications was his age[,]" (*id.* ¶ 111).  However, as with the Complaint's allegation that the "[m]otives for Defendant[s] to reject Plaintiff's applications [were] to retaliate [against] Plaintiff for seeking his rights provided by the [FLSA,]" (*id.* ¶ 78), Plaintiff's conclusory allegation that his age was a "determining factor in the rejection of [his] applications" is insufficient to state a claim, (*id.* ¶ 111).  Thus, the Court concludes that those allegations fail to give rise to an inference of age discrimination in connection with Defendants' refusal to hire Plaintiff.  Indeed, the Complaint essentially pleads only that Plaintiff is 56 years old and that he was not hired despite the fact that he was qualified.[14]  But the Complaint does not allege that

---

[14] Massachusetts's age-discrimination statute applies to any individual over 40 years of age.  *See* Mass. Gen. Laws ch. 151B, § 1(8) ("The term 'age' . . . includes any duration of time since an individual's birth of greater than forty years."); *see also Knight v. Avon Prods., Inc.*, 780 N.E.2d 1255, 1262 n.5 (Mass. 2003) (same).

Defendants told Plaintiff they were rejecting him because of his age, or that they hired a younger individual, or even that Plaintiff applied for an open position. Plaintiff has therefore not stated a plausible claim that Defendants refused to hire him because of his age, and the Court accordingly dismisses his state-law age-discrimination claim. *See McManamon*, 2013 WL 3466863, at *6 (finding that a complaint "sufficiently plead[ed] membership in [a] protected class[,]" "an adverse employment action[,]" and "qualifications for the job," but dismissing the complaint for "fall[ing] far short of plausibly pleading that the [defendant's] failure to hire [the plaintiff] was in any way related to his age" because it "fail[ed] to plead any facts that, if assumed true, connect[ed] the alleged discriminatory conduct to [the plaintiff's] protected characteristic or support[ed] an inference of age discrimination"); *Ndremizara v. Swiss Re Am. Holding Corp.*, No. 12-CV-5769, 2014 WL 941951, at *12 (S.D.N.Y. Mar. 11, 2014) (dismissing an ADEA claim where "there [was] a very real question whether [the] [p]laintiff ha[d] plausibly alleged that [the] [d]efendant filled the . . . position with a person significantly younger and/or less qualified than [the] [p]laintiff"); *Payne v. Malemathew*, No. 09-CV-1634, 2011 WL 3043920, at *2 (S.D.N.Y. July 22, 2011) (dismissing a complaint where the plaintiff "pleaded nothing beyond the fact that he was the oldest employee in his department and was let go[,]" and collecting cases dismissing complaints containing similar barebones allegations); *Adams v. N.Y.C. Educ. Dep't*, 752 F. Supp. 2d 420, 465 (S.D.N.Y. 2010) (finding an age-discrimination claim to be "insufficient as a matter of law" because the complaint "merely allege[d] that [the] plaintiffs [were] over 40 years of age and were replaced by younger [employees]"); *Zucker v. Five Towns Coll.*, No. 09-CV-4884, 2010 WL 3310698, at *2 (E.D.N.Y. Aug. 18, 2010) (holding that "allegations concerning [the plaintiff's] satisfactory work performance, termination, and much younger replacement [did] not—by themselves—suffice to plead an age discrimination

claim"); *Foster v. Humane Soc'y of Rochester and Monroe Cnty., Inc.*, 724 F. Supp. 2d 382, 390

(W.D.N.Y. 2010) (noting that a complaint "virtually devoid of facts indicating that [the]

plaintiff's age had anything to do with her termination, other than the fact that [the] plaintiff was

over forty years of age when she was fired[,]" "could simply be dismissed out of hand").

### III.  Conclusion

In light of the foregoing, the Court grants Defendants' Motion and dismisses Plaintiff's

Complaint.  However, the Second Circuit has recognized that "[a] *pro se* complaint should not be

dismissed without the Court granting leave to amend at least once when a liberal reading of the

complaint gives any indication that a valid claim might be stated."  *Nielsen v. Rabin*, 746 F.3d

58, 62 (2d Cir. 2014) (internal quotation marks omitted); *see also Contreras v. Perimenis*, 562 F.

App'x 50, 51 (2d Cir. 2014) ("In addition to the requirement that *pro se* complaints be liberally

construed, district courts should generally not dismiss them without granting the plaintiff leave to

amend at least once.").  The Court will therefore give Plaintiff 30 days to submit an amended

complaint.

The Clerk of the Court is respectfully requested to terminate the pending Motion. (Dkt.

No. 16.)


SO ORDERED.
Dated:          September 30, 2014
                White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

35