UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHUAN WANG,<br><br>        Plaintiff,<br><br>v.<br><br>SAMUEL J. PALMISANO, MARTIN J. SCHROETER, MARK LOUGHRIDGE, J. RANDALL MacDONALD, and JOHN DOES 1-10 and JANE DOES 1-20,<br><br>        Defendant. | CIVIL ACTION NO.  7:13-cv-02186-KMK |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

I.   Introduction ............................................................................................................... 3

II.   Background ............................................................................................................... 3

   A.  Factual Allegations ............................................................................................ 3

   B.  Administrative Charges ..................................................................................... 5

   C.  Lawsuits ............................................................................................................ 6

      **1.**  Concord District Court Action .................................................................. 6

      **2.**  Middlesex Superior Court Action ............................................................. 7

      **3.**  First District Court of Massachusetts Action ............................................ 8

      **4.**  Second District of Massachusetts Action .................................................. 9

      **5.**  This Action ................................................................................................ 9

III.   Argument ............................................................................................................... 10

   A.  Standard for Motion to Dismiss ..................................................................... 10

   B.  The Wage and Retaliatory Discharge Claims are Time-Banned ................... 12

   C.  The Remaining Counts Fail to State Claims Upon Which Relief May Be Granted .......... 14

      **1.**  The ADEA Claim and State Law Age Discrimination Claims ................ 14

      **2.**  The Retalitory Refusal-to-Hire Claims ................................................... 15

   D.  Wang's Claims are Barred By Claim Preclusion and Issue Preclusion .......... 21

IV.   Conclusion ............................................................................................................ 23

## I.    <u>INTRODUCTION</u>

The Defendants, Samuel J. Palmisano ("Palmisano"), Martin J. Schroeter ("Schroeter"), Mark Loughridge ("Loughridge"), and J. Randall MacDonald ("MacDonald"), respectfully ask this Court to dismiss the Amended Complaint.  (Docket No. 28).[1]  On September 30, 2014, this Court, in a thoughtful and comprehensive Opinion and Order, dismissed the Complaint filed by the Plaintiff, Chuan Wang ("Wang").  The Court determined that Wang's wage claims (counts one, two, nine, and ten) and claims for retaliatory discharge (counts three and four) were time-barred and that his claims for retaliatory failure-to-hire (counts five and six) and age discrimination (counts seven and eight) failed to state claims upon which relief may be granted.  On November 27, 2014, Wang filed an Amended Complaint.  (Document No. 28).  The Amended Complaint has not cured the fatal defects of the original Complaint and should be dismissed for the same reasons.  Moreover, as explained in greater detail below, Wang's claims should be dismissed for the additional reason that they are subject to claim preclusion.

Wang's relentless litigation campaign has gone on long enough.  Wang has pursued his claims in several different courts, has litigated numerous appeals, and has repudiated a settlement agreement --- all resulting in considerable expense and the waste of judicial resources.  Wang has now had several opportunities to press his claims, which have not gotten any better with age or repetition.  The Defendants respectfully ask this Court to dismiss this action.

## II.    <u>BACKGROUND</u>

### A.    **Factual Allegations**

Wang is a 56-year-old Chinese American.  (Amended Complaint, ¶ 12).  In February 22, 2008, Artech Information Systems, LLC ("Artech") arranged for Wang to be interviewed by International Business Machines Corporation ("IBM").  (Amended Complaint, ¶ 15).  Artech

---

[1] A copy of the Amended Complaint is attached hereto as **Exhibit 22**.

informed Wang that he received a job offer from IBM.  (Amended Complaint ¶ 16).  Wang

performed more than 158 hours of work for Artech in February, March, and April of 2008.

(Amended Complaint, ¶ 20).  Wang performed "a full-time service under the direction and

control of IBM, exclusively for IBM."  (Amended Complaint, ¶ 21).  Between March 11, 2008

and March 28, 2008, Wang worked "112 regular hours and 46 overtime hours for IBM."

(Amended Complaint, ¶ 22).  On March 28, 2008, Wang was terminated.  (Amended Complaint,

¶ 23).  Wang was never paid for the work he performed.  (Amended Complaint, ¶ 29).

Wang alleges that from some time after November 25, 2009 until 2012, Wang "made

many job applications for about a hundred works sought by IBM, repeatedly for more than 4

years until 2012."  (Amended Complaint, ¶ 30).  The Amended Complaint identifies only four

specific communications related to employment applications to IBM.

- **January 21, 2009**: Alonna Ferris of CDI Corporation informed Wang via e-mail that

  IBM did not ask her to extend an offer to him.  (Amended Complaint, ¶ 34).

- **July 19, 2011**: Wang wrote a letter directly to Palmisano and MacDonald:

I am writing this letter regarding my application for the work that IBM is seeking.  The attached
is a copy of e-mail communication between me and CDI Corp regarding said IBM work.  As
shown in said e-mail, I have made said application for said IBM work through CDI several
weeks ago.  In case, you are not personally aware of my work application made early, I also
attached my informational documents that were required by IBM and have already submitted to
IBM previously, including my updated resume and a copy of my passport to serve as my formal
application for said work that IBM is seeking.

(Amended Complaint, ¶ 31; July 19, 2011 Letter from Wang to Palmisano and

MacDonald, attached hereto as **Exhibit 1**).[2]

- **November 29, 2011**: Kelli Jordan of IBM responded as follows:

Mr. Wang,

---

[2] Because this letter is incorporated by reference into the Amended Complaint and Wang relies upon the document
in bringing suit, this Court may properly consider it, as well as **Exhibits 2-8** hereto, in ruling on the Defendants'
motion to dismiss.  Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir.2000) (citations omitted).

4

Thank you very much for the letter you sent to Mr. Palmisano with regard to opportunities at IBM.  The best way to get your resume in front of the recruiting team is by visiting IBM's employment website at http://www.ibm.com/employment/.  The website will provide you with the opportunity to view current openings and to apply based on your area of interest and location.  If you are a match, you'll be contacted directly by a recruiter.

Thanks again for your interest in IBM.

(November 29, 2011 E-Mail from Kelli Jordan to Chuan Wang, attached as **Exhibit 2**;

see Amended Complaint, ¶ 31).

- **January 11, 2012**: Wang mailed a letter addressed to Palmisano, MacDonald,

  Schroeter, Loughridge, and Jesse Greene (another IBM corporate officer):

I am writing this letter regarding my job application for the work that IBM is currently seeking.  The attached is a copy of e-mail communication dated December 14, 2011 between me and CDI Corp regarding said IBM work.  Early, I also wrote letters to you regarding my job applications for the works that IBM sought previously.  Thus, I attached copies of the relevant e-mails regarding said IBM works, my resume, and a copy of my passport for your reference.

On November 29, 2011, Kelli Jordan sent me an e-mail under a subject of "Your correspondence to Sam Palmisano at IBM".  Jordan told me that, "the best way to get your resume in front of the recruiting team is by visiting IBM's employment website at http://www.ibm.com/employment/".  However, I did not find said IBM works were listed on IBM's employment website.  A reason that I sent my job application directly to you again because IBM repeatedly rejected each and every of my applications that were submitted to IBM after March 28, 2008 when my work for IBM was terminated by Artech and IBM after I fought with Artech about my right to be paid.

(January 11, 2012 Letter from Wang to Palmisano, MacDonald, Schroeter, Loughridge,

and Greene, **Exhibit 3**; Amended Complaint, ¶ 31).

**B.       Administrative Charges**

According to the Amended Complaint, Wang has filed several charges with various

agencies, alleging wage violations and discriminatory conduct.

On April 14, 2008, Wang filed a wage complaint against Artech with the Massachusetts

Attorney General.  (Amended Complaint, ¶ 72; April 14, 2008 Letter from Wang to

Massachusetts Attorney General, attached as **Exhibit 4**).

5

On August 18, 2008, Wang filed a wage complaint against IBM with the Massachusetts Attorney General.  (Amended Complaint, ¶ 11; August 18, 2008 Letter from Wang to Massachusetts Attorney General, attached as **Exhibit 5**).[3]

On January 13, 2009, Wang filed a charge for age discrimination against IBM with the EEOC.  (Amended Complaint, ¶35; January 13, 2009 EEOC charge, attached as **Exhibit 6**).  Wang alleges that he never received a right-to-sue letter.  (Amended Complaint, ¶ 35).

On March 16, 2009, Wang filed charge for age and national origin discrimination against IBM with the Massachusetts Commission Against Discrimination ("MCAD").  (Amended Complaint, ¶ 37; March 16, 2009 Letter to MCAD, attached hereto as **Exhibit 7**).

Also on March 16, 2009, Wang filed a complaint for retaliatory refusal-to-hire against IBM with the Massachusetts Attorney General.  (Amended Complaint, ¶ 38; March 16 Letter to Massachusetts Attorney General, attached as **Exhibit 8**).

### C.    Lawsuits

#### 1.    Concord District Court Action

On February 12, 2009, Wang filed an action in Concord District Court (Massachusetts) against Artech and IBM.  He filed an Amended Complaint on March 18, 2009, which asserted the following claims against Artech and IBM: a wage claim under Mass. Gen. Laws ch. 149, § 148 (Count I), retaliatory discharge in violation of Mass. Gen. Laws ch. 149, § 148A (Count II), negligence for failure to pay wages (Count III), and negligence for failure to report wages (Count IV).  He also asserted against Artech a claim for intentional interference with business relations (Count V).  (Amended Complaint, Chuan Wang v. Artech, *et. al.*, Concord District Court, Civil Action No. 2009-47-CV-000100, **Exhibit 9**).  That case was dismissed because Mr. Wang's

---

[3] It is not clear from the Amended Complaint, but Wang appears to allege that the wage complaint against IBM that he filed with the Massachusetts Attorney General was filed on September 18, 2008.  (Amended Complaint, ¶ 11).  Based on the complaint form, the month appears to have been August rather than September.

demand exceeded the jurisdictional threshold set forth in Massachusetts General Laws, Chapter 218, § 19A for district court actions.  Wang v. International Business Machines Corp., 924 N.E.2d 334 (Mass. App. Ct. 2010) (unpublished disposition).

        **2.**        Middlesex Superior Court Action

On November 25, 2009, Wang re-filed the action against Artech and IBM in Middlesex Superior Court.  On January 21, 2010, Wang amended his Complaint to include claims against three individual defendants: Ranjini Poddar (President of Artech); Samuel Palmisano (President of IBM); and Mark Loughridge (Chief Financial Officer of IBM).  Wang's claims in the Middlesex Superior Court action fell into four categories: (1) failure to pay (or report) wages (Counts I, IV, V, VIII); (2) retaliatory discharge (Count II); (3) failure to hire because of retaliatory or discriminatory animus (Counts III, VII, IX, X, and XI); and (4) tortious interference (Count VI). (See Amended Complaint in Chuan Wang v. Artech, et. al., Middlesex Superior Court Civil Action No. 09-4616, attached hereto as **Exhibit 10**).

On September 30, 2010, the Massachusetts Superior Court granted the defendants' motion to dismiss the individual defendants, Poddar, Palmisano, and Loughridge, due to lack of personal jurisdiction.  (Chuan Wang v. Artech, et. al., Middlesex Superior Court Civil Action No. 09-4616, Docket Entry No. 28; The docket in the Middlesex Superior Court action is attached hereto as **Exhibit 11**).

On July 28, 2011, the Superior Court granted Artech's and IBM's motions for summary judgment on all eleven counts of the Amended Complaint.  (Memorandum of Order and Decision, Chuan Wang v. Artech, et. al., Middlesex Superior Court Civil Action No. 09-4616, Docket Entry No. 28, attached hereto as **Exhibit 12**).  Wang appealed.  On July 25, 2012, the Massachusetts Appeals Court affirmed summary judgment on nine of the eleven counts, thus affirming the dismissal of Wang's claims for unpaid wage, retaliatory failure to hire, and

discriminatory failure to hire.  (Chuan Wang v. IBM, 971 NE.2d 336, 2012 WL 3019957, at *1 (2012) (unpublished disposition), attached hereto as **Exhibit 13**).  The Appeals Court reversed summary judgment as to Wang's unlawful termination and tortious interference claims.  The Supreme Judicial Court declined to grant further appellate review.  Wang v. IBM, 984 N.E.2d 295 (2013).

In May 2013, the parties agreed to settle and to report the case as settled to the Superior Court in advance of a scheduled status conference.  See Wang v. IBM, 17 N.E.3d 1118, 2014 WL 4851330, at **1-2 (Mass. App. Ct. 2014) (unpublished) (attached hereto as **Exhibit 14**).  On June 4, 2013, the Massachusetts Superior Court entered an order for *nisi* dismissal. On August 2, 2013, the Court denied Wang's motion to vacate the *nisi* dismissal, and entered judgment on August 8, 2013.  (See Docket, Chuan Wang v. Artech, et. al, Middlesex Superior Court Civil Action No. 09-4616, Docket Entry No. 45, 48-49, **Exhibit 11**).  The Appeals Court affirmed the denial of Wang's motion to vacate the *nisi* order and the entry of judgment.  Wang v. IBM, 17 N.E.3d 1118, 2014 WL 4851330, at **1-2 (Mass. App. Ct. 2014) (unpublished), **Exhibit 14**. The Supreme Judicial Court declined to grant further appellate review.

**3.**      First District Court of Massachusetts Action

On January 4, 2011, while the Middlesex Superior Court case was pending, Wang filed an action in the United States District Court for the District of Massachusetts.  (See Second Amended Complaint, Wang v. Schroeter, et. al., 1:11-cv-10009-RWZ, attached as **Exhibit 15**). Wang reasserted his claims from the Middlesex Superior Court action against Palmisano, Loughridge, and Poddar, and named four additional IBM corporate officers, including Schroeter and MacDonald.  (Id.).  He also added several additional counts, including claims alleging failure to withhold state and federal taxes and failure to make workers' compensation contributions. (Id.).

8

On December 9, 2011, the District of Massachusetts granted the defendants' motions to dismiss and denied Wang's motion to amend his complaint to add IBM and Artech as parties. (See Memorandum of Decision and Order in <u>Wang v. Schroeter, et. al.</u>, 1:11-cv-10009-RWZ, attached as **Exhibit 16**).  On December 10, 2012, the United States Court of Appeals for the First Circuit affirmed the order of dismissal and the order denying the motion to amend.  (See Judgment of United States Court of Appeals for the First Circuit, Appeal No. 2012-1080, attached as **Exhibit 17**).

    **4.**    <u>Second District of Massachusetts Action</u>

Wang filed a second action in the District of Massachusetts on January 9, 2013, asserting claims against IBM, Artech, and CDI.  In that action, he claimed that (1) that IBM refused to hire him because it was retaliating against him for attempting to exercise his employment rights; (2) that IBM refused to hire him because of age discrimination; and (3) that IBM and Artech did not pay him the wages he was owed.  (See Complaint in <u>Wang v. IBM, *et. al*</u>, 1:13-cv-10043-WGY, attached as **Exhibit 18**).  The District of Massachusetts granted IBM's and Artech's motion to dismiss.  (See Docket, Entry No. 26, in <u>Wang v. IBM, *et. al.*</u>, 1:13-cv-10043-WGY, attached as **Exhibit 19**).  On May 20, 2014, the First Circuit affirmed the dismissal.  See Judgment, <u>Wang v. IBM</u>, First Circuit Case No. 13-1880, attached as **Exhibit 20**.  The United States Supreme Court denied Wang's petition for writ of certiorari on January 11, 2015.  See Order, <u>Wang v. IBM</u>, __ S.Ct. __, 2015 WL 133497 (2015), attached as **Exhibit 21**.

    **5.**    <u>This Action</u>

On April 1, 2013, Wang filed this action against Palmisano, Schroeter, Loughridge, and MacDonald.  The Complaint asserts the following ten claims: (1) failure to pay Wang a minimum wage, in violation of the Massachusetts Wage Act ("Wage Act"), Mass. Gen. Laws ch. 149, § 148; (2) failure to pay Wang a minimum wage, in violation of the Fair Labor Standards

9

Act ("FLSA"), 29 U.S.C. § 206; (3) unlawful discharge of Wang in retaliation for seeking rights

under the Wage Act, in violation of Mass. Gen. Laws ch. 149, § 148A; (4) unlawful discharge of

Wang in retaliation for seeking rights under the FLSA, in violation of 29 U.S.C. § 215(a)(3); (5)

unlawful refusal to hire Wang in retaliation for seeking rights under the FLSA, in violation of 29

U.S.C. § 215(a)(3); (6) unlawful refusal to hire Wang in retaliation for seeking rights under the

Wage Act, in violation of Mass. Gen. Laws ch. 149, § 148A; (7) unlawful refusal to hire Wang

based on his age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29

U.S.C. § 623(a)(1); (8) unlawful refusal to hire Wang based on his age, in violation of

Massachusetts state law, Mass. Gen. Laws ch. 151B, § 4(1B); (9) failure to pay Wang an

overtime wage, in violation of Mass. Gen. Laws ch. 151, § 1A; and (10) failure to pay Wang an

overtime wage, in violation of the FLSA, 29 U.S.C. § 207.  (See Complaint. Document No. 1).

On September 30, 2014, this Court granted the Defendants' motion to dismiss, but

granted Wang leave to file an Amended Complaint.  (September 30, 2014 Opinion and Order,

Document No. 25).

On November 27, 2014, Wang filed an Amended Complaint.  (Document No. 28),

**Exhibit 22**.  The Amended Complaint asserts the same ten claims as those asserted in the

original Complaint.

## III.   ARGUMENT

### A.   Standard for Motion to Dismiss

A "plaintiff's obligation to provide the 'grounds' of his [or her] 'entitle[ment] to relief'

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (second alteration

in original) (citations omitted).  The "[f]actual allegations must be enough to raise a right to

relief above the speculative level," id., and "once a claim has been stated adequately, it may be

supported by showing any set of facts consistent with the allegations in the complaint[,]" id. at 563. If a "plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." Id.

In evaluating a motion to dismiss, a Court is required to consider as true the factual allegations contained in the Complaint. See Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir.2008) ("We review de novo a district court's dismissal of a complaint pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." (internal quotation marks omitted)); Gonzalez v. Caballero, 572 F.Supp.2d 463, 466 (S.D.N.Y.2008) (same). Moreover, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Leonard F. v. Isr. Disc. Bank of N.Y., 199 F.3d 99, 107 (2d Cir.1999) (internal quotation marks omitted).  The Court may take judicial notice of decisions and submissions filed in prior lawsuits. See Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir.1991) ("[C]ourts routinely take judicial notice of documents filed in other courts, ... not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").

Because the plaintiff is proceeding *pro se*, the Court must construe his pleadings liberally and "interpret them to raise the strongest arguments that they suggest." Maisonet v. Metro. Hosp. & Health Hosp. Corp., 640 F.Supp.2d 345, 347 (S.D.N.Y.2009) (internal quotation marks omitted).  But the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party "from compliance with relevant rules of procedural and substantive law." Id. at 348 (internal quotation marks omitted).

11

**B.      The Wage and Retaliatory Discharge Claims are Time-Banned**

As this Court correctly determined in its Opinion and Order, Wang's wage claims (counts one, two, nine, and ten) and his retaliatory discharge claims (counts three and four) accrued on or around March 28, 2008 and are subject to the following statutes of limitation: the FLSA claims are subject to a two-year statute of limitations, the Massachusetts overtime claim is subject to a three-year statute of limitations, and the Massachusetts minimum wage and retaliatory discharge claims are subject to a two-year statute of limitations  (See Opinion and Order, at pp. 10-16 (citations omitted)).  Because this action was filed on April 1, 2013, more than five years after the wage and retaliatory discharge claims accrued, the Court was correct in ruling that these claims are time-barred.  Equitable tolling is not warranted in this case because Wang cannot establish that extraordinary circumstances prevented him from filing within the applicable limitation periods or that he acted with reasonable diligence throughout the proposed tolling period.

Equitable tolling is "applicable only in rare and exceptional circumstances."  Phillips v. Generations Family Health Center, 723 F.3d 144, 150 (2d Cir. 2013) (quotation omitted).  To qualify for equitable tolling, a plaintiff must establish that "extraordinary circumstances prevented him from filing his [claim] on time," and that he "acted with reasonable diligence throughout the period he seeks to toll."  Doe v. Menefee, 391 F.3d 147, 159 (2d Cir. 2004) (internal quotation marks omitted).  The burden of proving that tolling is appropriate rests with the plaintiff.  Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 512 (2d Cir.2002) (additional citations omitted).  Once a plaintiff is on notice that he has filed in the wrong forum, equitable tolling ceases.  DeGrate v. Broadcast Music, Inc., No. 12-cv-1700, 2013 WL 639146, at *3 (S.D.N.Y. Feb. 20, 2013).

12

In this case, Wang was placed on notice that he could not obtain personal jurisdiction over the Defendants no later than September 30, 2010 --- when the Massachusetts Superior Court dismissed the corporate officer defendants on personal jurisdiction grounds.  (Chuan Wang v. Artech, *et. al.*, Middlesex Superior Court Civil Action No. 09-4616, Docket Entry No. 28, **Exhibit 11**).  At that point, equitable tolling ceased.  DeGrate v. Broadcast Music, Inc., No. 12-cv-1700, 2013 WL 639146, at *3 (S.D.N.Y. Feb. 20, 2013).

Moreover, Wang did not act with "reasonable diligence" thereafter to bring his claims in the correct forum.  Although Wang was on notice that he had filed in the wrong forum, Wang did not attempt to re-file his claims in the correct forum.  Quite the opposite---Wang decided to file a *second* Massachusetts action against IBM corporate officers, this time in the United States District Court for the District of Massachusetts.  (See Second Amended Complaint, Wang v. Schroeter, et. al., 1:11-cv-10009-RWZ, **Exhibit 15**).  On December 11, 2011, a second court in Massachusetts dismissed Wang's claims on personal jurisdiction grounds.  (See Memorandum of Decision and Order in Wang v. Schroeter, et. al., 1:11-cv-10009-RWZ, **Exhibit 16**).  It was not until April 1, 2013, and only after the First Circuit affirmed that dismissal, that Wang finally filed this action --- years after he had been placed on notice that Massachusetts was the wrong forum.

The Amended Complaint spends several paragraphs describing the various procedural and appellate events that took place in the wake of the September 30, 2010 dismissal, (Amended Complaint ¶¶ 43-48), evidently in an effort to establish that Wang acted with reasonable diligence during the period to be tolled.  The effort is misplaced.  Reasonable diligence requires a plaintiff to make efforts to file his claims in the correct forum, not doggedly pursue claims in the wrong forum even after he has been placed on notice that the forum was not proper.  A

limitations period is not equitably tolled because a plaintiff, disappointed by a judicial ruling that

he lacks personal jurisdiction over certain defendants, refuses to accept it.

In any case, even if equitable tolling applied, this Court has correctly determined that the

total tolling period would add up to only 21 months: (a) the period between the November 25,

2009 filing date for his Massachusetts Superior Court action and the September 30, 2010

dismissal of the individual defendants on personal jurisdiction grounds (10 months); plus (b) the

period between the January 4, 2011 filing date of his first District of Massachusetts action and

the December 9, 2011 dismissal for lack of personal jurisdiction (11 months).  (Opinion and

Order, at p. 18).

Because Wang's wage claims (counts one, two, nine, and ten) and his retaliatory

discharge claims (counts three and four) are time-barred, they should be dismissed.

**C.** **The Remaining Counts Fail to State Claims Upon Which Relief May Be Granted**

In its September 30, 2014 Opinion and Order, the Court ruled that Wang's age

discrimination claims (counts seven and eight) and retaliatory failure-to-hire claims (counts five

and six) were subject to dismissal because they failed to state claims upon which relief may be

granted.  (Opinion and Order, at pp. 24-35).  As explained more fully below, these counts in the

Amended Complaint (counts five, six, seven, and eight) still fail to state claims upon which relief

may be granted and should be dismissed.

**1.** <u>The ADEA Claim and State Law Age Discrimination Claims</u>

As explained more fully in the Court's Opinion and Order, Wang's ADEA claim fails

because the ADEA does not impose liability on individuals.  (Opinion and Order, p. 24).

Wang's claim for age discrimination under Mass. Gen. Laws, ch. 151B, § 4(1B) fails for the

same reason.  <u>Welgoss v. Department of Transp.</u>, 31 Mass. L. Rptr. 338, 2013 WL 4007929, 2

(Mass. Super. Ct. 2013) ("Mass.G.L. c. 151B's general prohibition against age and sex discrimination (at § 4(1)) applies to the actions of 'employers,' and makes no provision for individual liability on the part managing agents or employees.") (citing <u>Ruffino v. State Street Bank & Trust Co.</u>, 908 F.Supp. 1019, 1048 (D.Mass.1985)).

Moreover, although the Amended Complaint has augmented Wang's age discrimination claims with the assertion that IBM offered positions to "persons significantly younger and/or significantly less qualified" than Wang, (Amended Complaint, ¶ 101), that assertion is a conclusory statement that cannot ground the Amended Complaint's otherwise insufficient claims of age discrimination. <u>See</u> <u>Ndremizara v. Swiss Re America Holding Company</u>, 12-cv-05769, 2014 WL 941951, at *13 (March 11, 2014) (holding that assertion by plaintiff that he "discovered that many entry level candidates selected or hired by [Defendant] were younger or less qualified than [him]" was "entirely conclusory" (alterations in original)).

### 2. The Retalitory Refusal-to-Hire Claims

The retaliatory refusal-to-hire claims fail to state claims upon which relief may be granted for two reasons. First, there are no well-pleaded factual allegations supporting the imposition of individual liability against these corporate officers under either the FLSA or under Mass. Gen. Laws, ch. 149, §148A. Second, there are no well-pleaded factual allegations plausibly suggesting that Wang suffered an adverse employment action in retaliation for undertaking protected activity under these statutes.

#### a. No well-pleaded facts plausibly suggesting individual liability by these corporate officers.

A plaintiff asserting a retaliation claim under the FLSA must allege facts plausibly suggesting that the defendant is an employer for purposes of the FLSA. <u>See</u> <u>Coley v. Vannguard Urban Improvement Association</u>, No. 12-cv-5565, 2014 WL 4793825, at ** 4-7 (E.D.N.Y. 2014

Sept. 24, 2014) (granting motion to dismiss because Complaint failed to allege facts plausibly suggesting defendant was employer for purposes of the FLSA).

To establish that an individual is an employer for purposes of the FLSA, it is not enough to show that the defendant is an owner or officer of a company.  Irizarry v. Catsimatidis, 722 F.3d 99, 109 (2d. Cir. 2013).  Instead, the plaintiff must show that the individual defendant possessed operational control over the company in a manner that relates to the plaintiff's employment.  Id.  The relationship between the individual's operational function and the plaintiff's employment must be closer in degree than simple but-for causation.  Id. at 110.

The Amended Complaint is bereft of any well-pleaded allegations regarding the operational control these individuals may have exercised, or how this operational control related to Wang's employment with IBM.  Although the Amended Complaint alleges that the Defendants are corporate officers of IBM, an individual's status as a corporate officer is not enough to establish that the individual is an "employer" for purposes of the FLSA.  Irizarry, 722 F.3d at 109

Similarly, Wang's retaliatory failure-to-hire claim under Mass. Gen. Laws ch. 149, §148A fails because § 148A, by its terms, applies only to employers, and --- unlike other Massachusetts employment laws --- §148A does not include, or otherwise incorporate, corporate officers within the definition of "employer." Cf. Commonwealth v. Cintolo, 613 N.E.2d 509, 509 (Mass. 1993) (holding that, in contrast to G.L. c. 149, § 148, corporate officers were not deemed employers for purposes of establishing liability under M.G.L. c. 149, § 150C); see also Nahigian v. Leonard, 233 F.Supp.2d 151, 162-63 (D. Mass. 2002) (remarking that the enforcement provision of the Massachusetts Wage Act, M.G.L. c. 149, § 150, depends on the definitions of "employer" utilized by the various sections it enforces).

16

b.      **No well-pleaded factual allegations plausibly suggesting retaliation.**

In its Opinion and Order, this Court observed that Wang's "allegation regarding Defendants' 'retaliatory motives,' on its own is wholly conclusory and is not more than a 'the-defendant-unlawfully-harmed-me accusation' that the Court need not credit in the context of Defendants' Motion to Dismiss." (Opinion and Order, at p. 28 (citation omitted).  The Court also concluded that none of Wang's remaining allegations, alone or in combination, supported Wang's retaliation claim, which is based on indirect evidence of retaliatory animus.  (Opinion and Order, at p. 29).  Specifically, the Court concluded that the well-pleaded allegations of the Complaint did not establish the requisite temporal proximity between protected activity and an adverse action.  (Opinion and Order, at pp. 29-30).  The Amended Complaint, like Wang's earlier complaint, fails to allege well-pleaded facts that plausibly suggest a causal link between protected activity and an adverse employment action.

Courts, including this Court, have expressed misgivings about failure-to-hire claims where an individual is in litigation with his former employer because allowing such claims "'creates a worrisome opportunity for the manufacture of frivolous claims.  That is, a plaintiff may bootstrap additional and unmeritorious claims to a discrimination lawsuit merely by reapplying to his former job and subsequently being rejected from it.'"  Ndremizara v. Swiss Re America Holding Company, 12-cv-05769, 2014 WL 941951, at *13 (S.D.N.Y. March 11, 2014) (quoting Carr v. Health Ins. Plan of Greater New York, No. 99-cv-3706, 2001 WL 563722, at * 3 (S.D.N.Y. May 24, 2001)).  Allowing such claims creates not only the opportunity for frivolous claims, it also affords plaintiffs opportunities to manufacture temporal proximity by timing job applications so that they are close in time to protected activity.  (Indeed, Wang's "job applications" addressed directly to some of the defendants in this case appears to be a rather

17

poorly veiled attempt to generate an adverse employment action.  (See January 11, 2012 Letter

from Wang to Palmisano, MacDonald, Schroeter, Loughridge, and Greene, **Exhibit 3**; Amended

Complaint, ¶ 31)).

Regardless, although the Amended Complaint now includes specific dates for

employment-related communications, the Amended Complaint, like the original Complaint, fails

to establish temporal proximity between protected activity and an adverse employment action.

Generally, the cases that "accept mere temporal proximity between an employer's knowledge of

protected activity and an adverse employment action as sufficient evidence of causality ...

uniformly hold that the temporal proximity must be very close." Clark Cnty. Sch. Dist. v.

Breeden, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (defining "causal

connection" in context of motion for summary judgment) (internal quotation marks omitted);

Yarde v. Good Samaritan Hosp., 360 F.Supp.2d 552, 562 (S.D.N.Y.2005) ("Six months between

protected activity and discharge is well beyond the time frame for inferring retaliatory

causation."); McManamon v. Shinseki, No. 11-cv-7610, 2013 WL 3466863, at * 13 (S.D.N.Y.

2013) (S.D.N.Y. July 10, 2013) (holding that three and one-half months span between protected

activity and adverse action was not temporally proximate); Barney v. Consol. Edison Co. of

N.Y., No. 99–CV–823, 2009 WL 6551494, at *12 (E.D.N.Y. Oct. 1, 2009) ("[D]istrict courts

within the Second Circuit have consistently held that the passage of two to three months between

the protected activity and the adverse employment action does not allow for an inference of

causation." (internal quotation marks omitted)); Ruhling v. Tribune Co., No. 04–CV–2430, 2007

WL 28283, at *23 (E.D.N.Y. Jan. 3, 2007) (noting that "a passage of two months between the

protected activity and the adverse employment action seems to be the dividing line"); Nicastro v.

Runyon, 60 F.Supp.2d 181, 185 (S.D.N.Y.1999) ( "Claims of retaliation are routinely dismissed

when as few as three months elapse between the protected EEO activity and the alleged act of retaliation.").

The first specific date on which Wang alleges a failure-to-hire was on January 21, 2009, when Alonna Ferris of CDI informed Wang that IBM did not ask CDI to hire him.  (Amended Complaint, ¶ 34).  This action is not temporally proximate to any protected activity under either the FLSA or Mass. Gen. Laws, ch. 149, §148A.  Wang's January 13, 2009 EEOC complaint, alleging age discrimination (Amended Complaint, ¶ 35), is not protected activity under either statute.  His wage complaint against IBM, which he filed with the Massachusetts Attorney General in August 2008, is not temporally proximate to the alleged failure to hire in January 2009.  See, e.g. McManamon v. Shinseki, No. 11-cv-7610, 2013 WL 3466863, at * 13 (S.D.N.Y. July 10, 2013) (three and one-half month period between protected activity and failure-to-hire not temporally proximate).  Even if the failure to extend an offer to Wang was temporally proximate to activity protected by the FLSA or Massachusetts wage laws, however, this occurred in January 2009, and is therefore time-barred.

Wang's next specific employment-related communications are his July 19, 2011 letter to Palmisano and MacDonald and the response by Kelli Jordan of IBM on November 29, 2011, informing Wang that the best way for him to apply to IBM is via IBM's employment website. (Amended Complaint, ¶31; July 19, 2011 Letter from Wang to Palmisano and MacDonald, **Exhibit 1**; November 29, 2011 E-mail from Kelli Jordan to Chuan Wang, **Exhibit 2**).  Jordan's November 29, 2011 e-mail, which sensibly informed Wang that the proper way to apply for a position with IBM is to apply via the employment website (rather than write a letter to its corporate officers) cannot reasonably be interpreted as an adverse employment action.  But even

if the e-mail was an adverse employment action, neither Wang's July 19, 2011 letter, nor Jordan's November 29, 2011 response, are temporally proximate to any protected activity.

Finally, Wang's January 11, 2012 letter to Palmisano, Loughridge, MacDonald, Schroeter, and Greene cannot support a retaliation claim. (January 11, 2012 Letter from Wang to Palmisano, Loughridge, MacDonald, Schroeter, and Green, **Exhibit 3**). First, it is not an application for an open position. Second, even if it was a job application, Wang was already on notice that sending letters to IBM corporate officers was not the proper way to seek employment. Third, there are no allegations regarding whether or how IBM or the Defendants responded to this letter. Fourth, there are no well-pleaded allegations plausibly suggesting that this letter is connected to an adverse employment action that is temporally proximate to protected activity under the FLSA or Mass. Gen. Laws, ch. 149, §148A.

Perhaps recognizing his difficulties in establishing temporal proximity, Wang appears to suggest that because he has been litigating his claims against IBM, Artech, and the Defendants for years, the pending litigation creates a perpetual state of temporal proximity. The suggestion lacks merit. Allowing pending litigation, standing alone, to create temporal proximity would be deeply unwise because it "would subject employers to continuous risk of retaliation suits once litigation commences." Bergbauer v. Mabus, 934 F.Supp. 2d 55, 86 n. 28 (D.D.C. 2013). In any event, the fact that a lawsuit is pending does not suffice to create temporal proximity. See McManamon v. Shinseki, No. 11-cv-7610, 2013 WL 3466863, at * 13 (S.D.N.Y. July 10, 2013) (holding that lawsuit filed on April 4, 2011 and adverse employment action three and a half months later on July 25, 2011 were not temporally proximate).

**D.     Wang's Claims are Barred By Claim Preclusion and Issue Preclusion**

In addition to grounds for dismissal outlined above, the Amended Complaint is subject to dismissal under res judicata because all of Wang's claims were resolved through a final adjudication of Wang's claims against IBM in the Middlesex Superior Court action.

"'Res judicata' is the generic term for various doctrines by which a judgment in one action has a binding effect in another." Heacock v. Heacock, 520 N.E.2d 151, 152 n. 2 (Mass. 1988). It comprises "claim preclusion" (traditionally known as "merger" or "bar") and "issue preclusion" (traditionally known as "collateral estoppel"). Id. Ultimately, "[t]he doctrine is a ramification of the policy considerations that underlie the rule against splitting a cause of action...." Id., at 153. "Claim preclusion makes a valid, final judgment conclusive on the parties and their privies, and prevents relitigation of all matters that were or could have been adjudicated in the action." Kobrin v. Board of Registration in Medicine, 832 N.E.2d 628, 634 (2005) (quoting O'Neill v. City Manager of Cambridge, 700 N.E.2d 530 (1998)). "The invocation of claim preclusion requires three elements: '(1) the identity or privity of the parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on the merits.'" Id. (quoting DaLuz v. Department of Correction, 746 N.E.2d 501 (2001)). All three requirements for claim preclusion have been met in this case.

First, the defendants, corporate officers of IBM, are in privity with IBM for purposes of res judicata. Corporate officers who are sued as a result of official actions or because of their official status as corporate officers, are in privity with their corporations for res judicata purposes. In re Belmont Realty Corp., 11 F.3d 1092, 1097 (1st Cir. 1993); Pedrina v. Chun, 97 F.3d 1296, 1302 (9th Cir. 1996); see also Alaimo v. Gen. Motors Corp., No. 07 Civ. 7624, 2008 WL 4695026, at *5 (S.D.N.Y. Oct. 20, 2008) (holding that plaintiff could not avoid the bar of res judicata by adding a General Motors employee as a new defendant in the current action where

General Motors was a defendant in the prior state action); <u>Tibbetts v. Stempel</u>, 354 F.Supp.2d

137, 148 (D.Conn.2005) ("Generally, an employer-employee or agent-principle relationship will

provide the necessary privity for claim preclusion with respect to matters within the scope of the

relationship, no matter which party is first sued.") (internal quotation marks omitted).

     <u>Second</u>, as the chart below demonstrates, the causes of action asserted in the Middlesex

Superior Court action (<u>see</u> Amended Complaint in <u>Chuan Wang v. Artech, et. al.</u>, Middlesex

Superior Court Civil Action No. 09-4616, **Exhibit 10**) and those asserted in this case (<u>see</u>

Amended Complaint, Docket No. 28, **Exhibit 22**) are essentially the same:

| | | |
|---|---|---|
| This Action – Count V, VI | FLSA; M.G.L. 149, § 148A | Retaliatory Failure to Hire |
| Middlesex Superior Court Action – Count III | M.G.L. 149, § 148A | |
| This Action --- VII, VIII | ADEA; M.G.L. 151B, § 4 | Age Discrimination |
| Middlesex Superior Court Action – Counts IX & X | M.G.L. 151B, § 4; ADEA | |
| This Action --- I, II, IX, X | M.G.L. 149, §§ 148, 150; M.G.L. 151, § 1A; FLSA | Wage Claims |
| Middlesex Superior Court Action --- Counts I & VIII | M.G.L. 149, §§ 148, 148B, 150; FLSA | |
| This Action – III, IV | M.G.L. 149, §148A | Unlawful termination |
| Middlesex Sup. Ct. Action – Count II | | |

     <u>Third</u>, there has been a final adjudication on the merits on all of Wang's claims.  Most of

Wang's claims in the Middlesex Superior Court action were dismissed on summary judgment,

(Memorandum of Order and Decision, <u>Chuan Wang v. Artech, et. al.</u>, Middlesex Superior Court

Civil Action No. 09-4616, Docket Entry No. 28, **Exhibit 12**), which dismissal was affirmed on appeal.  These included the retaliatory failure-to-hire claims, the wage claims, and the discrimination claims.  The dismissal of those claims, affirmed on appeal, constituted a final adjudication for res judicata purposes, Restatement (Second) of Judgments, § 13 (final judgment for res judicata purposes is any adjudication that is "sufficiently firm to be accorded conclusive effect"), later reflected in the formal entry of judgment on June 4, 2013, resolving the entire case. The remaining count relevant to this action, for unlawful termination (along with the tortious interference claim against Artech), was resolved through a settlement agreement, leading to a *nisi* dismissal order, which Wang sought unsuccessfully to vacate.  The Massachusetts Appeals Court affirmed the entry of judgment, ruling that "it was permissible for the [Superior Court] judge to conclude that Wang was suffering from nothing more than morning-after remorse, a malady that would not ordinarily justify setting aside a judgment." Wang v. IBM, 17 N.E.3d 1118, 2014 WL 4851330, at **1-2 (Mass. App. Ct. 2014) (unpublished).  Under Massachusetts Rule of Civil Procedure 41(b)(3), the involuntary dismissal of the unlawful termination claim was a "adjudication on the merits."  A judgment on the merits has thus been entered in favor of IBM, with whom the defendants are in privity, on all of Wang's claims.  They are accordingly barred under the doctrine of claim preclusion.[4]

IV.   **CONCLUSION**

For the foregoing reasons, the Defendants, Samuel J. Palmisano, Martin J. Schroeter, Mark Loughridge, and J. Randall MacDonald, respectfully ask this Court to dismiss the Amended Complaint.

---

[4] For similar reasons, Wang's claims are subject to dismissal under issue preclusion.

Respectfully submitted,

SAMUEL J. PALMISANO, MARTIN J.
SCHROETER, MARK LOUGHRIDGE,
and J. RANDALL MACDONALD

By their attorney,

*/s/ Timothy M. Pomarole*
Timothy M. Pomarole
tpomarole@peabodyarnold.com
PEABODY & ARNOLD LLP
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210-2261
(617) 951-2100

## CERTIFICATE OF SERVICE

I, Timothy M. Pomarole, hereby certify that on this 26th day of January, 2015, I served a copy of the foregoing document by causing a copy thereof to be sent electronically to the registered participants in this case, as identified in the Notice of Electronic Filing (NEF).

I have also sent a copy via first-class mail to the plaintiff, who is proceeding *pro se*, at:

Chuan Wang
2 Kitson Park Drive
Lexington, MA 02421

*/s/ Timothy M. Pomarole*
Timothy M. Pomarole

PABOS2:TPOMARO:836431_1
15455-93755

24