UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHUAN WANG,

                                    Plaintiff,                    Case No. 13-CV-2186 (KMK)

        -v-                                                      OPINION & ORDER

SAMUEL J. PALMISANO, MARTIN
SCHROETER, MARK LOUGHRIDGE, J.
RANDALL MACDONALD, JOHN DOES NO. 1–
20, and JANE DOES NO. 1–20,

                                    Defendants.

Appearances:

Chuan Wang
Lexington, MA
*Pro se Plaintiff*

Timothy M. Pomarole, Esq.
Peabody & Arnold LLP
Boston, MA
*Counsel for Defendants Palmisano, Schroeter, Loughridge,
and MacDonald*

Catherine B. Kelleher, Esq.
Sedgwick LLP
New York, NY
*Counsel for Defendants Palmisano, Schroeter, Loughridge,
and MacDonald*

KENNETH M. KARAS, District Judge:

        On April 1, 2013, pro se Plaintiff Chuan Wang ("Plaintiff") filed a Complaint against

Samuel J. Palmisano ("Palmisano"), Martin Schroeter ("Schroeter"), Mark Loughridge

("Loughridge"), and J. Randall MacDonald ("MacDonald") (collectively "Defendants"), who at

the relevant times were, respectively, the President, Chief Executive Officer, and Chairman; the

Treasurer; the Chief Financial Officer and a Senior Vice President; and another Senior Vice President of International Business Machines Corp. ("IBM").  (*See* Compl. ¶¶ 2–5 (Dkt No. 1); Am. Compl. ¶¶ 2–5 (Dkt. No. 28).)[1]  On September 30, 2014, this Court dismissed Plaintiff's original complaint without prejudice.  (*See* Op. & Order (Dkt. No. 25).)  This Amended Complaint followed, alleging multiple claims under federal and state law relating to Plaintiff's employment, termination, and subsequent reapplication efforts at IBM.  (*See generally* Am. Compl.)[2]  Before the Court is Defendants' Motion to Dismiss all claims.  (*See* Notice of Mot. To Dismiss Am. Compl. (Dkt. No. 33).)  For the following reasons, Defendants' Motion is granted.

## I.  Background

### A.  Factual History

The following facts come from Plaintiff's Amended Complaint and, for purposes of resolving Defendants' Motion, will be accepted as true.  Plaintiff, who is Chinese American, is a 56-year-old American citizen.  (*See* Am. Compl. ¶ 12.)  Plaintiff was educated in China through

---

[1] Plaintiff also names John Does 1–20 and Jane Does 1–20 as defendants.  In the last Opinion in this case, the Court noted that "the Complaint does not otherwise refer to these defendants" and cautioned that "Plaintiff should be prepared to make specific allegations with regard to these defendants in future pleadings, or he may risk dismissal of all claims against them."  (Op. & Order 2 n.1 (Dkt. No. 25).)  *See also Wang v. Palmisano*, 51 F. Supp. 3d 521, 525 n.1 (S.D.N.Y. 2014).  The Amended Complaint contains no allegations relating to these Defendants.  Consequently, any claims against them are dismissed.  *See Claude v. Wells Fargo Home Mortg.*, No. 13-CV-535, 2014 WL 4073215, at *1 n.1 (D. Conn. Aug. 14, 2014) (dismissing complaint against unnamed John Doe 1 and Jane Doe 1 defendants for failure to plead a claim upon which relief may be granted where the plaintiff "ma[d]e[] no allegations against [either] and [did] not attempt to explain the basis for naming them as [d]efendants"); *Almonte v. McGoldrick*, No. 06-CV-15217, 2009 WL 528609, at *4 (S.D.N.Y. Mar. 2, 2009) (noting that "[n]o allegations are made with respect to John Does # 9–# 11" and dismissing claims against them accordingly).

[2] As with his original Complaint, Plaintiff does not name IBM as a Defendant in the caption to the Amended Complaint, but he does list it—along with Artech Information Systems and CDI Corporation—as a party in the body of the Amended Complaint. (*See* Am. Compl. ¶¶ 6–8.)

his undergraduate degree and also holds a PhD degree.  (*Id.* ¶¶ 13, 100.)  In addition, Plaintiff

holds two U.S. patents that are relevant to "storage-area-networked computer storage

technology."  (*Id.* ¶ 100.)

On February 1, 2008, Plaintiff received an email from Vishwadeep Sharma on behalf of

Defendants soliciting Plaintiff for work.  (*See id.* ¶ 14.)  Artech Information Systems ("Artech")

arranged for Plaintiff to be interviewed by a team from IBM, and that interview occurred on

February 22, 2008.  (*See id.* ¶ 15.)  Artech informed Plaintiff that he had the IBM job offer, and,

"as requested [by] the employer," Plaintiff provided a copy of his passport, which shows his

birthdate of March 7, 1956, thereby indicating Plaintiff's age.  (*Id.* ¶¶ 16–17.)  Artech told

Plaintiff that his position would be full time, exclusively for IBM, and would last for at least one

year.  (*See id.* ¶ 18.)  In addition, Artech forwarded Plaintiff a proposed employment agreement,

under which Plaintiff would be required to "surrender his 'rights to civil litigation' and agree [to

a] proposed Arbitration provision [under which] Plaintiff must agree to resolve employment

disputes in New Jersey by the pr[o]visions of New Jersey Permanent Statutes Section 2A:24–1."

(*Id.* ¶¶ 16–17.)  In addition, the employment agreement provided that:

> If employee is terminated by the client for cause or employee departs this
> assignment for any reason prior to the expiration of the probationary trial period
> or end of the project, Employee shall reimburse Artech for the amounts paid to
> employee as a draw during the probationary trial period. In that connection,
> employee acknowledges and understands that Artech will receive no payment for
> services performed hereunder by Employee from the proposed client if the
> proposed client terminates Employee during the probationary trial period.

(*Id.* ¶ 17.)

Plaintiff refused to enter into the agreement, contending that it would violate his rights under

various employment laws, including the Massachusetts Wage Act ("Wage Act") and the Fair

Labor Standards Act ("FLSA").  (*Id.*)  With regard to overtime, Plaintiff was told that any

overtime work would be deemed as voluntary work without pay, unless it were approved in advance by his IBM supervisor.  (*Id.* ¶ 18.)  Artech told Plaintiff that he was an "exempt employee" because his work was "computer related" and that, as a result, he was not entitled to overtime pay for any overtime work performed.  (*Id.* ¶ 19.)

Between February and April 2008, Plaintiff provided more than 158 hours of service to Artech.  (*Id.* ¶ 20.)  From March 11 to March 28, 2008, Plaintiff worked full-time and exclusively for IBM under its direction and control, reviewing and evaluating more than a thousand of Novartis Corp.'s computer storage systems, as requested by IBM managers.  (*Id.* ¶¶ 21–22.)  During that time, Plaintiff spent 112 regular hours and 46 overtime hours to perform his work for IBM.  (*Id.* ¶ 22.)

On March 28, 2008, Plaintiff alleges that his work was terminated by Defendants because he refused to give up his rights under the Wage Act and FLSA.  (*Id.* ¶¶ 23–24.)  On April 4, 2008, Plaintiff submitted an unpaid wages request to Artech via e-mail for the 112 regular-hour services that he performed.  (*Id.* ¶ 23.)  Plaintiff's request did not seek pay for the overtime hours that he worked "[b]ecause he relied on Artech's representations and the fact that his overtime works [sic] were not approved in advance."  (*See id.*).  Plaintiff alleges that Defendants, Artech, and/or IBM repeatedly refused to pay Plaintiff the wages that he earned, despite Plaintiff filing complaints against Defendants with government agencies and writing a demand letter to Defendants for unpaid wages.  (*See id.* ¶¶ 27–29.)

Plaintiff has been unemployed and has received no unemployment compensation since April 2008 because Defendants made no contribution to unemployment insurance for Plaintiff.  (*See id.* ¶¶ 25–26.)  Between sometime thereafter and 2012, Plaintiff submitted applications for

"about a hundred" jobs with IBM.  (*See, e.g.*, *id.* ¶¶ 30, 40.)[3]  Of those job applications, Plaintiff indicates that many were made through CDI Corporation ("CDI") and that many were directly mailed to the Defendants many times.  (*Id.* ¶ 31.)  Plaintiff provides a few examples: On July 19, 2011, Plaintiff sent an e-mail communication to CDI concerning a job that IBM sought to fill and also sent Palmisano and MacDonald a letter with his job application and a copy of his passport. (*Id.*)  Later, on January 11, 2012, Plaintiff sent another e-mail communication to CDI concerning a position with IBM and sent a letter with his job application and a copy of his passport, this time, to Palmisano, Schroeter, Loughridge, and MacDonald.  (*Id.*)

Plaintiff maintains that, of the job applications he submitted, "IBM repeatedly rejected each and every [one] . . . for more than [four] years until 2012."  (*Id.* ¶ 34.)  For instance, on January 21, 2009, Alonna Ferris of CDI told Plaintiff via e-mail that IBM did not ask CDI to extend a job offer to Plaintiff.  (*Id.*)  On another occasion, on November 29, 2011, after receiving Plaintiff's job applications, Kelli Jordan, on behalf of Defendants, sent Plaintiff an e-mail with a subject line that read "[y]our correspondence to Sam Palmisano of IBM" which did not include a job offer and which effectively rejected Plaintiff's applications.  (*Id.* ¶ 31.)  On yet another occasion, Plaintiff—presumably unsuccessfully—interviewed for five separate positions with IBM managers Stephen Wheatley, Gina Koppel, Ramakrishna Talkad, Janet Hamilton, and Linda Foster, all of which had similar job requirements as the work that Plaintiff had performed for IBM in March 2008 and for which Plaintiff consequently believed he was well qualified. (*See id.* ¶¶ 32–33.)  Decisions to reject Plaintiff's work applications were made by IBM, rather than CDI.  (*Id.* ¶ 34.)

---

[3] As will be discussed later, it is not exactly clear when Plaintiff began applying for these hundred-or-so jobs.

B.  Procedural History

Plaintiff has filed a number of claims against Defendants in both state and federal court as well as with various state agencies.  First, on April 14, 2008, Plaintiff filed a wage complaint with the Office of the Massachusetts Attorney General.  (*Id.* ¶¶ 11, 72; Mem. in Supp. of Mot. To Dismiss Am. Compl. ("Defs.' Mem.") 5 (Dkt. No. 34); Defs.' Mem. Ex. 4 (April 14, 2008 Letter to Attorney General).) [4]  Next, on September 18, 2008, Plaintiff filed another wage complaint with the Massachusetts Attorney General.  (*See* Am. Compl. ¶ 11; Defs.' Mem. 6; Defs.' Mem. Ex. 5 (Non-Payment of Wage and Workplace Complaint Form).) [5]  Later, on January 13, 2009, Plaintiff filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC").  (Am. Compl. ¶¶ 11, 35; Defs.' Mem. 6; Defs.' Mem. Ex. 6

---

[4]  The Court will draw upon dockets and filings from Wang's other actions as necessary to bring clarity to the prior proceedings, because they are "documents [Wang] had either in [his] possession or [of which] Wang] had knowledge . . . and upon which [he] relied in bringing suit" and, consequently, are appropriate for the Court to consider in deciding Defendants' Motion.  *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991).  Additionally, the Court is permitted to consider them, albeit not for the truth of the matters they assert, to the extent they are court filings or public records of state administrative proceedings.  *See, e.g.*, *Colvin v. State Univ. Coll. at Farmingdale*, No. 13-CV-3595, 2014 WL 2863224, at *16 (E.D.N.Y. June 19, 2014) ("Furthermore, in adjudicating a Rule 12(b)(6) motion, courts may take judicial notice of documents in the public record, which includes records and reports of administrative bodies . . . ." (alterations and internal quotation marks omitted)), *reconsideration denied*, 2015 WL 2213297 (S.D.N.Y. May 8, 2015); *Guzman v. United States*, No. 11-CV-5834, 2013 WL 543343, at *4 (S.D.N.Y. Feb. 14, 2013) ("While a court may take judicial notice of a prior proceeding's existence, a court may not take judicial notice of that proceeding for the truth of the matters asserted therein." (citations and emphasis omitted)), *reconsideration granted on other grounds*, 2013 WL 5018553 (S.D.N.Y. Sept. 13, 2013); *Evans v. N.Y. Botanical Garden*, No. 02-CV-3591, 2002 WL 31002814, at *4 (S.D.N.Y. Sept. 4, 2002) ("A court may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment.").

[5]  Defendants, for their part, suggest that the complaint was filed with the Massachusetts Attorney General on August 18, 2008.  (*See* Defs.' Mem. 6 n.3; *see also* Defs.' Mem. Ex 5 (Non-Payment of Wage and Workplace Complaint Form).)

(Charge of Discrimination Form).)  Plaintiff never received a right-to-sue letter.  (Am. Compl. ¶ 35; Defs.' Mem. 6.)

Plaintiff brought his first lawsuit in connection with his work for IBM the following month, when, on February 12, 2009, he filed a complaint against IBM and Artech for unpaid wages and retaliatory termination against Defendants in Massachusetts state court.  (*See* Am. Compl. ¶ 36; Defs.' Mem. 6; Defs.' Mem. Ex. 9 (Mar. 18, 2009 State Court Am. Compl.).)[6] That complaint was dismissed on the grounds of improper jurisdiction.  (*See* Am. Compl. ¶ 36; Defs.' Mem. 6–7.)  Later, however, the Massachusetts Appeals Court reversed that decision to dismiss without prejudice instead.  *See Wang v. Int'l Bus. Machs. Corp.*, 924 N.E.2d 334, at *1 (Mass. App. Ct. 2010).

Next, on March 16, 2009, Plaintiff filed a complaint of employment discrimination with the Massachusetts Commission Against Discrimination ("MCAD").  (Am. Compl. ¶ 37; Defs.' Mem. 6; Defs.' Mem. Ex. 7 (Mar. 16, 2009 MCAD Complaint).)  Also, on or around March 16, 2009, Plaintiff filed a complaint of employment retaliation with the Massachusetts Attorney General.  (Am. Compl. ¶ 38; Defs.' Mem. 6; Defs.' Mem. Ex. 8 (Mar. 16, 2009 Letter to Attorney General).)

---

[6] In his Amended Complaint, Plaintiff asserts that "[o]n [or] about February 12, 2009, a complaint for unpaid wages and retaliatory termination was filed against the Defendants in Massachusetts Concord District Court, and was dismissed later on ground [sic] of improper jurisdiction."  (*See* Am. Compl. ¶ 36.)  Defendants attach an exhibit to their Memorandum in support of their Motion to Dismiss which they indicate is the amended complaint from that case. (*See* Defs.' Mem. 6; Defs.' Mem. Ex. 9 (Mar. 18, 2009 State Court Am. Compl.).)  However, as far as the Court can tell from the exhibit, there is no indication that the original complaint from that action was filed on February 12, 2009, or that it was originally brought in Concord District Court.  (*See* Defs.' Mem. Ex. 9 (Mar. 18, 2009 State Court Am. Compl.).)  Moreover, the Court notes that the Defendants in this Action were not actually parties to that case.

On November 25, 2009, Plaintiff returned to the courts to file another complaint, which he amended on January 10, 2010, against IBM, Palmisano, Loughridge, as well as Artech and its president, Ranjini Poddar ("Poddar"), in Massachusetts Superior Court.  (*See* Am. Compl. ¶ 42; Am. Compl. Attach. 2 (State Court Docket); Defs.' Mem. 7; Defs.' Mem. Ex. 10 (Jan. 21, 2010 Am. Compl.) ¶¶ 1–6.)  That complaint alleged 11 causes of action arising out of the same events that form the basis for Plaintiff's current Complaint.  (*See* Defs.' Mem. Ex. 10 (Jan. 21, 2010 Am. Compl.) ¶¶ 50–126.)  On September 30, 2010, the court granted defendants' motion to dismiss for lack of personal jurisdiction with respect to all claims against the individual defendants but denied the motion with respect to IBM and Artech.  (*See* Am. Compl. ¶ 43; Defs.' Mem. 7; Defs.' Mem. Ex. 11 (Superior Court Docket), at unnumbered 7–8 (indicating that the defendants' motion to dismiss was granted as to Palmisano, Loughridge, and Poddar).)  On October 19, 2010, Plaintiff filed a notice of his intent to file a motion to request a separate and final judgment with respect to the individual defendants.  (*See* Am. Compl. ¶ 43; Am. Compl. Attach. 1 (Suppl. to Mem. in Opp'n to Defs.' Mot. To Dismiss Compl. ("Pl.'s Suppl. Mem.")) 5.)[7]  Plaintiff then filed that motion on November 3, 2010, and the court denied it on November 15, 2010.  (*See* Pl.'s Suppl. Mem. 5; Am. Compl. Attach. 2 (State Court Docket).)  On July 28, 2011, the court granted Artech's and IBM's motions for summary judgment with respect to all 11 counts.  (*See* Defs.' Mem. 7; Defs.' Mem. Ex. 12 (Superior Court Opinion), at unnumbered 12–13.)[8]  On August 11, 2011, Plaintiff appealed the court's decisions, and, on July 25, 2012, the

---

[7]  Attached to Plaintiff's amended complaint is an additional document entitled "Supplement to Memorandum in Opposition to Defendants' Motion to Dismiss Complaint," which appears to present additional arguments against the Defendant's already-granted motion to dismiss.  (*See* Am. Compl. Attach. 1.)  To the extent that this document raises arguments relevant to the instant Motion as well, the Court will consider them here.

[8]  Plaintiff's Amended Complaint indicates instead that summary judgment was granted on August 4, 2011, apparently because that is the date upon which the assistant clerk of court

Massachusetts Appeals Court affirmed the grant of summary judgment as to nine of the 11 claims but reversed the lower court's decision concerning the other two counts.  (*See* Am. Compl. ¶ 43; Defs.' Mem. 7–8; Defs.' Mem. Ex. 13 (July 25, 2012 Appeals Court Opinion), at 3.)[9]  In addition, the Appeals Court modified the superior court's dismissal of the individual defendants on personal jurisdiction grounds to be without prejudice.  (Defs.' Mem. Ex. 13 (July 25, 2012 Appeals Court Opinion), at 3.)  Massachusetts' Supreme Judicial Court declined further appellate review on February 28, 2013.  (Am. Compl. ¶ 48.)  *See also Wang v. Int'l Bus. Machs. Corp.*, 984 N.E.2d 295 (Mass. 2013).  According to the superior court's docket, on March 7, 2013, the rescript was received from the appeals court, remanding the case to the superior court.  (*See* Mem. in Opp'n to Defs.' 1/26/2015 Mot. To Dismiss Compl. ("Pl.'s Mem.") Ex. A (State Court Docket), at 10 (Dkt. No. 35).)[10]  On August 8, 2012, Plaintiff unsuccessfully sought rehearing with respect to the appeals court's decision.  (*See* Am. Compl. ¶ 43.)  On August 14, 2012, Plaintiff sought—again, unsuccessfully—further appellate review from Massachusetts' Supreme Judicial Court.  (*See id.* ¶¶ 43–44.)

After the remand, the defendants proposed a settlement of $17,500 to Plaintiff, in exchange for which Plaintiff would dismiss the action with prejudice.  (*See* Defs.' Mem. Ex. 14

---

signed the notice of dismissal.  (*See* Am. Compl. ¶ 43; Defs.' Mem. Ex. 12 (Middlesex Superior Court Opinion) at unnumbered 13.)

[9]  Exhibit 13 can also be found at *Wang v. Int'l Bus. Machs. Corp.*, 971 N.E.2d 336 (Mass. App. Ct. 2012).

[10]  "'Rescript' is the term used for the appellate court's order directing the lower court's further conduct of the case."  Massachusetts Court System, *Appeals Court Decisions*, http://www.mass.gov/courts/court-info/appealscourt/appeals-court-help-center/appeals-court-decisions.html (last visited Jan. 2, 2016).

(Oct. 1, 2014 Appeals Court Decision), at 2.)[11]  A nisi dismissal was entered, but, two weeks

later, Plaintiff moved to set it aside, claiming that the parties had not settled and that he was

"framed" and "caught [in] a trap."  (*See id.* (internal quotation marks omitted).)  Both the trial

court and the Massachusetts Appeals Court refused to vacate the dismissal.  (*See id.* (internal

quotation marks omitted).)

On January 4, 2011, after the Massachusetts state court dismissed Plaintiff's claims

against Palmisano, Loughridge, and Poddar, but before it granted summary judgment to IBM and

Artech, Plaintiff filed yet another lawsuit—this one, in the United States District Court for the

District of Massachusetts—asserting 19 causes of action arising out of his employment

relationship with IBM, Artech, and CDI.  (*See* Am. Compl. ¶ 44; Defs.' Mem. 8; Defs.' Mem.

Ex. 15 (Pl.'s District of Massachusetts Second Am. Compl.) ¶¶ 45–193.)  In addition to

Palmisano, Loughridge, and Poddar, Plaintiff's amended complaint in the District of

Massachusetts action named Schroeter, MacDonald, Robert C. Weber, Jesse J. Greene, Jr., and

CDI as defendants.  (*See* Defs.' Mem. Ex. 15 (Pl.'s District of Massachusetts Second Am.

Compl.) ¶¶ 2–9.)  On December 9, 2011, the District Court dismissed all claims against the

defendants and denied Plaintiff's motion to file a fourth amended complaint naming IBM and

Artech as defendants.  (*See* Defs.' Mem. 9; Defs.' Mem. Ex. 16 (Dec. 9, 2011 D. Mass. Order),

at 4, 13.)  Plaintiff appealed, and, on December 10, 2012, the United States Court of Appeals for

the First Circuit affirmed.  (*See* Am. Compl. ¶ 46; Defs.' Mem. 9; Defs.' Mem. Ex. 17 (Judgment

of First Circuit).)

---

[11] Exhibit 14 can also be found at *Wang v. Int'l Bus. Machs. Corp.*, 17 N.E.3d 1118
(Mass. App. Ct. 2014), *review denied*, 23 N.E.3d 105 (Mass.), *cert. denied*, 136 S. Ct. 301
(2015).

Next, on January 9, 2013, Plaintiff filed a second complaint in the District of Massachusetts, this time, against IBM, Artech, and CDI.  (Defs.' Mem. 9; *see also* Defs.' Mem. Ex. 18 (Plaintiff's second District of Massachusetts complaint).)  Plaintiff brought seven causes of action, all relating to Plaintiff's relationship with IBM, Artech, and CDI.  (*See* Defs.' Mem. Ex. 18 (Plaintiff's second District of Massachusetts complaint) ¶¶ 46–115.)  The District Court granted IBM's and Artech's motion to dismiss.  (Defs.' Mem. 9; *see also* Defs.' Mem. Ex. 19 (Docket from Second District of Massachusetts action) at no. 26).  The First Circuit affirmed, and the United States Supreme Court denied Plaintiff's petition for a writ of certiorari.  (Defs.' Mem. 9; *see also* Defs.' Mem. Exs. 20–21.)

Finally, on April 1, 2013, Plaintiff filed his 10-count Complaint against Defendants in this Court.  (*See* Compl. (Dkt. No. 1).)  On September 30, 2014, this Court granted Defendants' Motion to Dismiss.  (*See* Order & Opinion (Dkt. No. 25).)  However, this Court also allowed Plaintiff to submit an amended complaint.  (*See id.* at 35.)  Plaintiff did so on November 27, 2014.  (*See* Dkt. No. 28.)  In his Amended Complaint, Plaintiff asserts 10 causes of action against Palmisano, Schroeter, Loughridge, and MacDonald for (1) failure to pay Plaintiff a wages in accordance with Massachusetts Wage Act, Mass. Gen. Laws ch. 149, §§ 148, 150; (2) failure to pay Plaintiff wages in accordance with the Fair Labor Standards Act; (3) unlawful discharge of Plaintiff in retaliation for seeking to enforce his rights under the Wage Act, in violation of Mass. Gen. Laws ch. 149, § 148A; (4) unlawful discharge of Plaintiff in retaliation for seeking rights under the FLSA; (5) unlawful refusal to hire Plaintiff in retaliation for seeking rights under the FLSA; (6) unlawful refusal to hire Plaintiff in retaliation for seeking to enforce his rights under the Wage Act, in violation of Mass. Gen. Laws ch. 149, § 148A; (7) unlawful refusal to hire Plaintiff based on his age, in violation of the Age Discrimination in Employment

Act ("ADEA"); (8) unlawful refusal to hire Plaintiff based on his age, in violation of

Massachusetts state law, Mass. Gen. Laws ch. 151B, § 4; (9) failure to pay Plaintiff an overtime

wage, in violation of Mass. Gen. Laws ch. 149, § 148, ch. 151, § 1A; and (10) failure to pay

Plaintiff an overtime wage, in violation of the FLSA.  (*See generally* Am. Compl.)  On January

26, 2015, Defendants filed their Motion to Dismiss Plaintiff's Amended Complaint, along with

an accompanying Memorandum of Law.  (*See* Dkt. No. 33–34.)  On February 26, 2015, Plaintiff

filed his Opposition to Defendant's Motion.  (*See* Dkt. No. 35.)  On March 10, 2015, Defendants

filed their Reply to Plaintiff's Opposition to their Motion to Dismiss.  (*See* Dkt. No. 36.)

## II.  Discussion

### A.  Standard of Review

Defendants move to dismiss Plaintiff's Amended Complaint under Rule 12(b)(6) of the

Federal Rules of Civil Procedure.  "While a complaint attacked by a Rule 12(b)(6) motion to

dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds

of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (alterations, citations, and internal quotation marks omitted).  Indeed, Rule 8 of the

Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-

harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint

suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alterations and

internal quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough

to raise a right to relief above the speculative level . . . ."  *Twombly*, 550 U.S. at 555. Although

"once a claim has been stated adequately, it may be supported by showing any set of facts

consistent with the allegations in the complaint," *id.* at 563, and, although a plaintiff need only

allege "enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff

has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must

be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a

plausible claim for relief will . . . be a context-specific task that requires the reviewing court to

draw on its judicial experience and common sense.  But where the well-pleaded facts do not

permit the court to infer more than the mere possibility of misconduct, the complaint has

alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in

original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a

notable and generous departure from the hyper-technical, code-pleading regime of a prior era,

but it does not unlock the doors of discovery for a plaintiff armed with nothing more than

conclusions.").

 "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the

factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see

also Graham v. Macy's Inc.*, No. 14-CV-3192, 2015 WL 1413643, at *1 n.1 (S.D.N.Y. Mar. 23,

2015) ("For the purpose of resolving the motion to dismiss, the [c]ourt assumes all well-pled

facts to be true . . . .").  Further, "[f]or the purpose of resolving [a] motion to dismiss, the

[c]ourt . . . draw[s] all reasonable inferences in favor of the plaintiff."  *Daniel v. T&M Prot. Res.,

Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d

141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court

must confine its consideration to facts stated on the face of the complaint, in documents

appended to the complaint or incorporated in the complaint by reference, and to matters of which

judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir.

1999) (internal quotation marks omitted); *see also Hendrix v. City of N.Y.*, No. 12-CV-5011, 2013 WL 6835168, at *2 (E.D.N.Y. Dec. 20, 2013) (same).

Lastly, because Plaintiff is proceeding pro se, the Court must construe his pleadings liberally and "interpret them to raise the strongest arguments that they suggest." *Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 347 (S.D.N.Y. 2009) (internal quotation marks omitted); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006). However, the liberal treatment afforded to pro se litigants does not excuse a pro se party "from compliance with relevant rules of procedural and substantive law." *Maisonet*, 640 F. Supp. 2d at 348 (internal quotation marks omitted).

B.  Analysis

As with its predecessor, Defendants move to dismiss Plaintiff's Amended Complaint on several grounds, including that some of Plaintiff's claims are time barred and that the remaining causes of action fail to state claims upon which relief can be granted.  (*See* Defs.' Mem. 12–20.) Defendants also argue that Plaintiff's claims are barred by the doctrines of claim and issue preclusion.  (*See id.* at 21–23.)

1.  Claims That Accrued in March 2008

As with Plaintiff's original Complaint, most of the claims in the Amended Complaint relate to the work that Plaintiff performed for IBM and his subsequent termination, all of which occurred in or before March 2008.  (*See* Amended Compl. ¶¶ 20–23.)[12]  These claims either relate to Defendants' alleged failure to pay wages owed to Plaintiff or to Plaintiff's allegedly

---

[12]  In one place, Plaintiff does say that "[i]n February, March, and April of 2008, Plaintiff provided services of more than 158 hours for Artech."  (Am. Comp. ¶ 20.)  It does not appear, however, that Plaintiff alleges that he actually did additional work in April, after he was terminated.

retaliatory discharge.  As before, both of these classes of claims arise under the FLSA or an

analogous Massachusetts state-law provision.

a.  Applicable Limitations Periods and Accrual Dates

Plaintiff's claims brought under the FLSA are subject to, at most, a three-year statute of

limitations.  *See Parada v. Banco Indus. De Venez., C.A.*, 753 F.3d 62, 70 (2d Cir. 2014) ("The

FLSA provides a two-year statute of limitations on actions to enforce its provisions, 'except that

a cause of action arising out of a willful violation may be commenced within three years after the

cause of action accrued.'" (quoting 29 U.S.C. § 255(a))).  This two-year—or, in the case of

willful violations, three-year—statute of limitations applies to Plaintiff's FLSA wage-payment

claim, *see D'Arpa v. Runway Towing Corp.*, No. 12-CV-1120, 2013 WL 3010810, at *3–4

(E.D.N.Y. June 18, 2013), his FLSA overtime-wage claim, *see Kuebel v. Black & Decker Inc.*,

643 F.3d 352, 366 (2d Cir. 2011), and his FLSA retaliatory-discharge claim, *see Goodman v.

Port Auth.*, No. 10-CV-8352, 2013 WL 5313427, at *5 (S.D.N.Y. Sept. 20, 2013); *Gonzalez v. El

Acajutla Rest., Inc.*, No. 04-CV-1513, 2007 WL 869583, at *4 (E.D.N.Y. Mar. 20, 2007).

For the reasons that follow, as before, a three-year statute of limitations applies to

Plaintiff's state-law wage-payment and retaliatory-discharge claims and a two-year statute of

limitations to Plaintiff's state overtime-wage claims.  Where, as here, a federal court exercises

diversity jurisdiction over a claim, that court "applies the forum state's statute of limitations

provisions, as well as any provisions that govern the tolling of the statute of limitations."  *See

Vincent v. Money Store*, 915 F. Supp. 2d 553, 562 (S.D.N.Y. 2013); *see also Schermerhorn v.

Metro. Transp. Auth.*, 156 F.3d 351, 354 (2d Cir. 1998) ("[The plaintiffs'] claim . . . is governed

by state law.  We therefore look to state-law tolling rules to determine whether the statute of

limitations was tolled . . . .").  Under New York law, "when a nonresident plaintiff sues upon a

15

cause of action that arose outside of New York, the court must apply the shorter limitations

period, including all relevant tolling provisions, of either: (1) New York; or (2) the state where

the cause of action accrued."  *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 627 (2d Cir. 1998)

(citing N.Y. C.P.L.R. 202); *see also Muto v. CBS Corp.*, 668 F.3d 53, 57 (2d Cir. 2012) (same);

*Landow v. Wachovia Sec., LLC*, 966 F. Supp. 2d 106, 125 (E.D.N.Y. 2013) (same); *In re

Coudert Bros. LLP*, 673 F.3d 180, 190 (2d Cir. 2012) ("To mitigate against abusive statute-of-

limitations shopping, some states have created mechanisms—binding on the local federal courts

via [*Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487 (1941)]—that discriminate

against claims accruing out of state.  New York's borrowing statute . . . guards against forum

shopping by out-of-state plaintiffs by mandating use of the shortest statute of limitations

available." (emphasis omitted)).  Therefore, under New York's borrowing statute, the Court will

apply the shorter of New York's statute of limitations and that of the state where Plaintiff's claim

accrued.

     As in its last Opinion and Order, the Court finds that, under New York law, Plaintiff's

claim accrued in Massachusetts because Massachusetts was where Plaintiff resided at the time

his injuries, which were economic, occurred.  *See Landesbank Baden-Württemberg v. RBS

Holdings USA Inc.*, 14 F. Supp. 3d 488, 501 (S.D.N.Y. 2014) ("New York law dictates that 'a

cause of action accrues at the time and in the place of the injury.  When an alleged injury is

purely economic, the place of injury usually is where the plaintiff resides and sustains the

economic impact of the loss.'" (citation omitted) (quoting *Global Fin. Corp. v. Triarc Corp.*, 715

N.E.2d 482, 485 (N.Y. 1999))); *see also IKB Int'l S.A. v. Bank of Am.*, No. 12-CV-4036, 2014

WL 1377801, at *5 (S.D.N.Y. Mar. 31, 2014) ("Where . . . a claim is based on financial injury,

the claim accrues where the plaintiff resides and sustains the economic impact of the loss."

(internal quotation marks omitted)), *aff'd*, 584 F. App'x 26 (2d Cir. 2014). Therefore, pursuant to

N.Y. C.P.L.R. 202, the Court applies Massachusetts' limitations periods of three and two years

to Plaintiff's wage-payment and overtime-wage claims, respectively, because they are shorter

than New York's six-year period for equivalent claims.   *Compare, e.g.*, *Crocker v. Townsend Oil*

*Co.*, 979 N.E.2d 1077, 1081–82, 1082 & n. 8 (Mass. 2012) (noting that "a cause of action for the

nonpayment of overtime [under Mass. Gen. Laws ch. 151, § 1A] must be brought within two

years of the date it accrues[,]" but that "an employee claiming to be aggrieved by a violation of

[Mass. Gen. Laws ch. 149, § 148]" must bring an action "within [three] years after the violation"

(internal quotation marks omitted) (citing Mass. Gen. Laws ch. 149, § 150; *id.* at ch. 151,

§ 20A)), *with* N.Y. Lab. Law § 663(3) (six-year limitation period for wage claims), *and Man Wei*

*Shiu v. New Peking Taste Inc.*, No. 11-CV-1175, 2014 WL 652355, at *10 (E.D.N.Y. Feb. 19,

2014) (noting that New York law "establishes a six-year limitations period" for wage claims).[13]

---

[13] It is bears mentioning that, in 2014, Massachusetts amended its statute of limitations
(i) to incorporate a provision into ch. 149, § 150 under which a plaintiff's claims for wage-
payment violations under ch. 149, § 148 or for retaliatory discharge under ch. 149, § 148A are
tolled from the date upon which the plaintiff files a complaint with the attorney general until the
date upon which the plaintiff receives written authorization from the attorney general that the
plaintiff may sue, and (ii) to increase the statute of limitations under ch. 151, § 20A for overtime
claims under ch. 151, § 1A from two to three years.   *See* 2014 Mass. Legis. Serv. Ch. 292.  These
changes in the law cannot save Plaintiff's claims, however, because the statutes of limitations
had already lapsed when Plaintiff brought his Complaint in 2013, and this Court will not assume
that the legislature intended to revive Plaintiff's already time-barred claims.   *See In re Enter.*
*Mortg. Acceptance Co., LLC, Sec. Litig.*, 391 F.3d 401, 410 (2d Cir. 2005) ("In our view, the
resurrection of previously time-barred claims has an impermissible retroactive effect."); *In re*
*WorldCom, Inc. Sec. Litig.*, No. 02-CV-3288, 2004 WL 1435356, at *6 (S.D.N.Y. June 28, 2004)
("With respect to statutes that lengthen a statute of limitations, circuit courts have consistently
held that applying the longer statute of limitations to revive previously time-barred claims is
impermissible unless the legislature clearly expresses the intent to revive already time-barred
actions."); *see also* 54 C.J.S. Limitations of Actions § 15 ("[O]nce a statute of limitations has
run, the party relying on the statute has a vested property right in the statute of limitations
defense, and changes to the period of limitations cannot be applied retroactively to extinguish
that right.").

In this case, however, the Court applies New York's two-year limitations period to Plaintiff's retaliatory-discharge claim because it is shorter than Massachusetts' three-year period for equivalent claims. *Compare Crocker*, 979 N.E.2d at 1082 n.8 (noting three-year statute of limitations for claims brought under Ch. 149, § 148A) *with* N.Y. Lab. Law § 215(2)(a) (two-year limitation period for retaliatory-discharge claims), *and United States ex rel. McKenna v. Senior Life Mgmt., Inc.*, 429 F. Supp. 2d 695, 699 (S.D.N.Y. 2006) (same).

Finally, for purposes of calculating the timeliness of Plaintiff's Complaint, the Court notes that Plaintiff's wage claims accrued each time Defendants allegedly failed to pay him at the end of a pay period. *See Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 198 (2d Cir. 2013) ("The cause of action for FLSA . . . claims accrues on the next regular payday following the work period when services are rendered."); *Crocker*, 979 N.E.2d at 1085 (noting that a plaintiff "suffer[s] [a] discrete injur[y] each time [a defendant] fail[s] to pay [him] the wages [he] [was] owed under the Wage Act"); *cf. Awuah v. Coverall N. Am., Inc.*, 952 N.E.2d 890, 896 (Mass. 2011) ("The Wage Act requires an employer to pay the wages earned to an employee within a fixed period of days after the end of a pay period." (internal quotation marks omitted) (citing Mass. Gen. Laws ch. 149, § 148). And the Court notes that his retaliatory-discharge claims accrued on the date of his termination. *See Goodman*, 2013 WL 5313427, at *5.

### b. Equitable Tolling

"The lapse of a limitations period is an affirmative defense that a defendant must plead and prove," but "a defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008); *see also Mosdos Chofetz Chaim, Inc. v. RBS Citizens,*

*N.A.*, 14 F. Supp. 3d 191, 209 (S.D.N.Y. 2014) ("Because the defendants bear the burden of establishing the expiration of the statute of limitations as an affirmative defense, a pre-answer motion to dismiss on this ground may be granted only if it is clear on the face of the complaint that the statute of limitations has run." (alterations and internal quotation marks omitted)).  In his Amended Complaint, Plaintiff alleges that he worked for IBM from March 11, 2008 to March 28, 2008.  (*See* Am. Compl. ¶ 21.)  His claims, thus, accrued on approximately March 28, 2008, and, because Plaintiff filed the Complaint on April 1, 2013, his claims are untimely, unless the statute of limitations has, for some reason, been tolled.

Plaintiff argues that his claim is, in fact, tolled under the doctrine of equitable tolling.  (*See* Pl.'s Mem. 3–5; Pl.'s Suppl. Mem. 3–8.)  Equitable tolling "allows a district court to toll the statute of limitations where, inter alia, a plaintiff initially asserted his rights in the wrong forum." *Polanco v. U.S. Drug Enf't Admin.*, 158 F.3d 647, 655 (2d Cir. 1998) (internal quotation marks and italics omitted); *see also Danecker v. Bd. of Trs. of Serv. Emps. 32BJ N. Pension Fund*, 882 F. Supp. 2d 606, 612 (S.D.N.Y. 2012) (noting that courts apply equitable tolling "as a matter of fairness where a plaintiff . . . has asserted his rights in the wrong forum" (alteration and internal quotation marks omitted)).  It is, however, an "exceedingly narrow" exception to the FLSA's limitations regime.  *See Barrett v. Forest Labs., Inc.*, No. 12-CV-5224, 2015 WL 4111827, at *2 (S.D.N.Y. July 8, 2015).  Indeed, "[t]o qualify for equitable tolling" on an FLSA claim, Plaintiff "must establish that extraordinary circumstances prevented [him] from filing [his] claim on time, and that [he] acted with reasonable diligence throughout the period [he] seeks to toll." *Parada*, 753 F.3d at 71 (internal quotation marks omitted).  Establishing both of these requirements is a "high burden" for a plaintiff.  *See Barrett*, 2015 WL 4111827, at *3; *see also Asp v. Milardo Photography, Inc.*, 573 F. Supp. 2d 677, 697 (D. Conn. 2008) (noting that "[a]n extraordinary

circumstance might exist if the employee shows that it would have been impossible for a reasonably prudent person to learn of the cause of action or if the defendant concealed from the plaintiff the existence of the cause of action . . . ." (citation omitted)); *Patraker v. Council on Env't*, No. 02-CV-7382, 2003 WL 22703522, at *2 (S.D.N.Y. Nov. 17, 2003) (declining to apply doctrine of equitable tolling while noting that "[the] plaintiff [did] not allege[], either in the amended complaint or in his declaration, any affirmative deception by the defendants," but rather "complain[ed] only that the defendants never told him that he was entitled to overtime pay," and that "[t]here is nothing extraordinary about that").

Here, Plaintiff asserts a number of supposedly extraordinary circumstances that allegedly prevented him from asserting his complaint in the correct forum.  To begin, Plaintiff stresses that he is a "pro se" plaintiff with "no legal training [or] relevant knowledge."  (*See* Pl.'s Mem. 4; Pl.'s Suppl. Mem. 4 ("[A]s a pro se [p]laintiff, [Plaintiff] has no legal knowledge and training in laws.").)  Additionally, Plaintiff argues that "Defendants intentionally and purposefully opposed Plaintiff's Motion for Separate and Final Judgment as to dismiss the Defendants on ground of lack of personal jurisdiction that prevented him from filing his appeal on time."  (*See* Pl.'s Mem. 4 (brackets and internal quotation marks omitted).)  Next, Plaintiff argues that the fact that "Plaintiff asserted his rights in the 'wrong' forums was an 'extraordinary circumstance' . . . ." (*See* Pl.'s Suppl. Mem. 3.)  Plaintiff also argues that he had to "to commence his complaint with the Massachusetts Attorney General office, rather [than] the court," and that he "had to file his complaint 90 days after the filing of a complaint with the attorney general."  (*See id.* (internal quotation marks omitted).)  In addition, Plaintiff argues that the costs of asserting his claims in New York were "unaffordable" and that his limited financial resources constitute an extraordinary circumstance.  (*See id.* at 4.)  Relatedly, Plaintiff argues that Defendants took

advantage of their greater financial resources to delay the proceedings in court as long as possible, for instance, by forcing Plaintiff to serve them twice in the Massachusetts state court proceedings. (*See id.*) Finally, Plaintiff argues that he could not assert his rights in a New York court given that "Plaintiff's home is over 200 miles away from the New York" and that "[t]here is no direct public transportation from his home to the court." (*See id.*)

Although Plaintiff identifies a number of obstacles which may well render pursuing his claim in New York more challenging than in Massachusetts, none is sufficiently "extraordinary" to justify invoking the doctrine of equitable tolling. First, by itself, a plaintiff's "pro se status . . . does not merit equitable tolling." *See Smith v. McGinnis*, 208 F.3d 13, 18 (2d Cir. 2000) (italics omitted). Second, even if Defendants' dilatory tactics prevented Plaintiff from filing a prompt appeal in the Massachusetts state court proceedings (which is far from obvious), it is not clear how this actually prevented Plaintiff from timely filing his claims in a court with personal jurisdiction over Defendants. *Cf. Hizbullahankhamon v. Walker*, 255 F.3d 65, 76 (2d Cir. 2001) (remarking in the context of habeas action that, "even assuming that the alleged deprivation of access to [the petitioner's] legal materials and the law library constituted an 'extraordinary circumstance' warranting equitable tolling, petitioner cannot show that this extraordinary circumstance *prevented* him from filing a timely habeas petition"). Indeed, Plaintiff filed his Motion for Separate and Final Judgment nearly a month after the superior court granted the defendants' motion to dismiss for lack of personal jurisdiction. (*See* Am. Compl. ¶ 43.) If anything, Defendants' approach to the Massachusetts state court litigation underscored rather than obscured the need for Plaintiff to bring his claims in a forum outside of Massachusetts. *Cf. Patraker*, 2003 WL 22703522, at *2 (finding "nothing extraordinary" about the defendants' failure to alert the plaintiff to the fact that he was entitled to overtime pay).

Next, Plaintiff's suggestion that asserting claims in the wrong forum can, itself, amount to sufficiently extraordinary circumstances to warrant equitable tolling fails; otherwise, equitable tolling would be a "cure-all for an entirely common state of affairs" rather than "a rare remedy to be applied in unusual circumstances." *See Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459, 479 (S.D.N.Y. 2008) (internal quotation marks omitted) (quoting *Wallace v. Kato*, 549 U.S. 384, 396 (2007)). By that same logic, Plaintiff's claims about his limited financial resources and the distance between Massachusetts and New York also fail. The case law makes clear that "a plaintiff[']s limited financial means and inability to afford a lawyer are not 'extraordinary circumstances' that support equitably tolling the limitations period." *See Wen Liu v. Mount Sinai Sch. of Med.*, No. 09-CV-9663, 2012 WL 4561003, at *5 (S.D.N.Y. Sept. 24, 2012), *aff'd sub nom. Wen Liu v. Mount Sinai Sch. of Med. & Agents*, 559 F. App'x 106 (2d Cir. 2014); *see also Apionishev v. Columbia Univ.*, No. 09-CV-6471, 2011 WL 1197637, at *6 (S.D.N.Y. Mar. 25, 2011) ("Homelessness and depression or illness alone are not sufficient to justify equitable tolling . . . ."). Similarly, if equitable tolling were appropriate whenever distance impeded a plaintiff's ability to bring claims in a forum with personal jurisdiction over the defendants, the "exceedingly narrow," *see Barrett*, 2015 WL 4111827, at *2, equitable tolling doctrine would essentially swallow the statute of limitations rule. Finally, Plaintiff's protestations that he had to assert his claims under the Wage Act with the Massachusetts attorney general and file his complaint 90 days afterwards are likewise insufficient because neither requirement prevented Plaintiff from timely filing his Complaint in a forum capable of exercising jurisdiction over Defendants. *See Parada*, 753 F.3d at 71 (noting that equitable tolling did not apply where the plaintiff submitted a claim with the Department of Labor because

22

the Plaintiff still could have filed her FLSA claim, which has no administrative exhaustion

requirement).

Even if Plaintiff could establish that extraordinary circumstances militate in favor of

equitable tolling, Plaintiff still did not "pass with reasonable diligence through the period [he]

seeks to have tolled." *See Patraker*, 2003 WL 22703522, at *2 (internal quotation marks

omitted). Plaintiff argues that the "Massachusetts Superior Court's Dismissal Order on ground

of lack of personal jurisdiction [was] subject to appeal" and that the "Massachusetts Appeals

Court affirmed the dismissal on 3/7/2013," meaning that "Plaintiff was placed on notice that he

could not obtain personal jurisdiction over the Defendants on 3/7/2013, [and] not September 30,

2010." (Pl.'s Mem. 4.) Similarly, Plaintiff discusses his various court filings in an effort to

demonstrate that he acted with reasonable diligence. (*See* Pl.'s Suppl. Mem. 4–5.)

Plaintiff's argument misses the mark on both factual and legal grounds. First, Plaintiff

had notice that he filed his claims in the wrong court when the superior court dismissed his

claims for lack of personal jurisdiction on September 30, 2010. *See DeGrate v. Broad. Music,

Inc.*, No. 12-CV-1700, 2013 WL 639146, at *1, *3 (S.D.N.Y. Feb. 20, 2013) (noting "that

Plaintiff received notice that he had filed in the wrong court on [the date when the court rejected

the plaintiff's petition for lack of jurisdiction], at which time equitable tolling would have

ceased"). Even if Plaintiff felt that he need not file a complaint in a different court because the

Massachusetts Appeals Court had not ruled on his appeal, equitable tolling is still not warranted

because the operative question is what a reasonable plaintiff would have done, not what Plaintiff

subjectively felt justified in doing. *See Johnson v. Nyack Hosp.*, 86 F.3d 8, 12–13 (2d Cir. 1996)

(declining to apply equitable tolling noting that the plaintiffs' delay in bringing their claims

before the New York Public Health Council and in returning to federal court "was excessive and

occasioned by plaintiffs' lack of diligence," and noting that "[a] reasonable plaintiff would have returned to federal court sooner" even though the "plaintiffs contend that their fifteen-month delay in filing with the PHC was justified"); *cf. Pecoraro v. Diocese of Rapid City*, 435 F.3d 870, 872, 874–75 (8th Cir. 2006) (finding under South Dakota law that, "[a]lthough [the plaintiff's] initial act of suing the [defendant] in [the wrong district] may have been reasonable and in good faith based on his belief the [defendant] was subject to personal jurisdiction [there], [the plaintiff's] subsequent failure to take heed of numerous warnings regarding personal jurisdiction was unreasonable."); *Smithrud v. City of Minneapolis*, No. 10-CV-4451, 2012 WL 4128958, at *5 (D. Minn. Sept. 18, 2012) (concluding that "[h]ad [the plaintiff] filed his federal complaint soon after his state complaint was dismissed, or when the appellate court affirmed the dismissal, or even when the Minnesota Supreme Court denied review, he would have been well within the two year limitations period," but that "[h]is failure to do so demonstrates a lack of diligence, for which equitable tolling is not warranted"), *aff'd sub nom. Smithrud v. City of St. Paul*, 746 F.3d 391 (8th Cir. 2014); *Williams v. Tutu Park Ltd.*, 06-CV-40, 2009 WL 971398, at *5 (D.V.I. Apr. 3, 2009) (finding diligent prosecution of claim under Virgin Island law pursuant to test announced by Third Circuit where plaintiff filed federal case six days after superior court dismissed for lack of personal jurisdiction, but roughly two years after the defendant first moved for dismissal on grounds of lack of personal jurisdiction).  Second, even if Plaintiff did not have notice that he filed his claims in the wrong forum until the appeals court affirmed the dismissal of defendants for lack of personal jurisdiction, (*see* Pl.'s Mem. 4–5), that date was July 25, 2012, not March 7, 2013 (*see* Defs.' Mem. Ex. 13 (July 25, 2012 Appeals Court Opinion), at 3 ("The determination that the individual defendants should be dismissed for lack of personal jurisdiction

was not error.")).[14]  That would still leave a gap of over eight months between when the appeals

court affirmed the dismissal and when Plaintiff filed the instant Complaint, exhibiting a lack of

diligence.  (*See* Dkt. No. 1; Defs.' Mem. Ex. 13 (July 25, 2012 Appeals Court Opinion), at 3.)

*See Barrett v. United States*, 961 F. Supp. 2d 403, 409 (D. Conn. 2013) ("[The petitioner's]

inordinate delay in filing his petition—nearly seven months after his attorney explicitly informed

him of his right to do so—precludes any finding of reasonable diligence.").

    Moreover, even if the Court applied equitable tolling to exclude from the limitations

period the time during which Plaintiff's state and federal actions in Massachusetts were pending,

the Complaint would still be untimely.  As discussed, Plaintiff filed the instant Complaint

approximately five years after his claims accrued.  Within that period, approximately 10 months

elapsed between Plaintiff's November 25, 2009 filing of his second Massachusetts state-court

action (the first one that involved any of these Defendants), and the state court's September 30,

2010 dismissal of all claims involving Defendants on personal-jurisdiction grounds.  (*See* Am.

Compl. ¶¶ 42–43.)  Subsequently, another 11 months elapsed between Plaintiff's January 4, 2011

filing of his first Massachusetts federal-court action (in which he named each Defendant, some

for the first time in any action), and the district court's December 9, 2011 dismissal of all claims

involving Defendants on personal-jurisdiction grounds. (*See id.* ¶¶ 44–45.)[15]  Excluding those 21

---

    [14] It appears that the March 7, 2013 date to which Plaintiff refers is, in fact, the date the
superior court received the appeals court's rescript remanding the case to the superior court.  (*See*
Pl.'s Mem. 4 (citing "Exhibit A, Docket Entry 44"); Pl.'s Mem. Ex. A, at 12 (reflecting that
Paper No. 44 is the "[r]escript received from Appeals Court").)

    [15] Even if equitable tolling applied because of these other filings, the Court finds that it
would not run through Plaintiff's appeals to the Massachusetts Appeals Court and the First
Circuit.  "Equitable tolling requires a party to pass with reasonable diligence through the period it
seeks to have tolled." *Johnson*, 86 F.3d at 12.  Rather than exercising reasonable diligence in
searching for a court that could exercise personal jurisdiction over Defendants, Plaintiff opted
instead to await vindication in the appellate courts.  Accordingly, even if equitable tolling were
to apply to Plaintiff's claims, it would end when the trial courts rendered their decisions, rather

months from the 60 months it took Plaintiff to file this Action, the Court would deem the Complaint to have been filed 39 months, or over three years, after accrual. Plaintiff's claims are therefore untimely even if equitable tolling applied.

Plaintiff, for his part, submits a few alternative calculations which purport to show that his claims would be timely if equitable tolling did apply to this case. (*See* Pl.'s Suppl. Mem. 7–8.)[16] Plaintiff does not, however, demonstrate that he "pass[ed] with reasonable diligence through [those] period[s] [he] seeks to have tolled" under either of these alternative scenarios. *See Johnson*, 86 F.3d at 12. Plaintiff has thus not established that he is entitled to equitable tolling for those periods either, which is fatal to his untimely claims, given that "[t]he plaintiff bears the burden of persuasion to show that tolling is justified." *Rodriguez v. Barnhart*, No. 01-CV-3411, 2002 WL 31875406, at *3 (S.D.N.Y. Dec. 24, 2002).

### c. Other Tolling Arguments

In addition to his argument that he is entitled to equitable tolling, Plaintiff seems to suggest his Complaint is timely because he filed suit earlier in Massachusetts' state and federal courts. (*See* Pl.'s Mem. 3–4 (arguing that Defendants' argument that Plaintiff's claims are time

---

than the appellate courts. *See Pecoraro*, 435 F.3d at 872, 875 (finding under South Dakota law that, "failure to take heed of numerous warnings regarding personal jurisdiction was unreasonable").

[16] Plaintiff's calculations are not entirely clear to the Court; however, it appears that Plaintiff offers the following two scenarios: First, Plaintiff argues that, "[i]f the equitable tolling applies [to] this case, the total elapsed time would be less than 9 months . . . ," including (1) a period of "less than 1 month from 28 March 2008 when the Defendants discharged Plaintiff to 14 April 2008 when Plaintiff filed his complaint in Massachusetts Attorney General Office," plus (2) a period of less than seven months between April 14, 2008 and November 25, 2009, when Plaintiff filed suit in Massachusetts state court, less (3) "90 days required by the Massachusetts Wage Act, Massachusetts General Laws Chapter 149 §148." (*See* Pl.'s Suppl. Mem. 7.) Alternatively, Plaintiff argues that, "[e]ven only considering the Massachusetts Superior Court case that began on November 25, 2009 and ended on February 28, 2013 when the Massachusetts Supreme Judicial Court denied Plaintiff's petition for Further Appellate Review . . . , the total elapsed time would be less than 21 months . . . ." (*See id.*)

barred "has no merit" and that "the complaint against the Defendants has essentially not stopped

in the 'wrong' forum until this case was filed on April 1, 2013").)  To the extent Plaintiff intends

to argue that the Massachusetts proceedings toll the statute of limitations for some other reason,

that argument also fails.  Although Plaintiff has brought no shortage of lawsuits related to his

short tenure with Artech and IBM, he has filed just two actions—Plaintiff's second state-court

lawsuit and his first suit in the District of Massachusetts—in which at least some Defendants

from this case were named.  (*See* Defs.' Mem. Ex. 10 (Jan. 21, 2010 Am. Compl.), Defs.' Mem.

Ex. 16 (Dec. 9, 2011 D. Mass. Order).)  With respect to the state court case, Plaintiff's claims

against the individual defendants were dismissed without prejudice.  (*See* Defs.' Mem. Ex. 13

(July 25, 2012 Appeals Court Opinion), at 3.)  That action, therefore, did not toll the statute of

limitations for Plaintiff's FLSA claims because, when calculating limitations periods for federal

claims, "a suit dismissed without prejudice . . . is treated for statute of limitations purposes as if it

had never been filed."  *In re Palermo*, 739 F.3d 99, 105 (2d Cir. 2014) (internal quotation marks

omitted); *see also Johnson*, 86 F.3d at 11 ("[W]here [an] action has been dismissed without

prejudice, a plaintiff's subsequent court filing is vulnerable to a time-bar because the dismissal in

and of itself does not halt the running of the limitations period, even though designated to be

without prejudice.").  With respect to Plaintiff's first District of Massachusetts action, Plaintiff

filed his complaint in that case on January 4, 2011, (*see* Am. Compl. ¶ 44; Defs.' Mem. 8.), and

its dismissal was affirmed by the First Circuit on December 10, 2012, (*see* Am. Compl. ¶ 46;

Defs.' Mem. 9).  Even if, for some reason, that lawsuit were to toll Plaintiff's claims, it would do

so for less than two years, which, given that Plaintiff's FLSA claims, as discussed, are subject to

no longer than a three-year statute of limitations, means that tolling would not save them, as over

five years elapsed between Plaintiff's March 28, 2008 discharge, (*see, e.g.*, Am. Compl. ¶ 23), and April 1, 2013, the date upon which Plaintiff filed his complaint, (*see* Dkt. No. 1).

With regard to Plaintiff's state-law claims, "New York's 'savings' statute allows a plaintiff to refile claims within six months of a timely prior action's termination for reasons other than the merits or a plaintiff's unwillingness to prosecute the claims in a diligent manner." *Norex Petroleum Ltd. v. Blavatnik*, 16 N.E.3d 561, 563 (N.Y. 2014) (citation omitted) (citing N.Y. C.P.L.R. 205(a)); *see also Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, No. 11-CV-1529, 2014 WL 684831, at *4 (S.D.N.Y. Feb. 21, 2014) (same), *reconsideration denied*, 2014 WL 5364102 (S.D.N.Y. Oct. 22, 2014); *Peters v. UBS AG*, No. 13-CV-3098, 2014 WL 148631, at *5 (S.D.N.Y. Jan. 15, 2014) (same), *aff'd*, 588 F. App'x 57 (2d Cir. 2014).  However, the savings statute does not apply to claims that were dismissed for lack of personal jurisdiction.  *See* N.Y. C.P.L.R. 205(a) (providing that this section applies to "an action [that] is timely commenced and is terminated in any other manner than . . . a failure to obtain personal jurisdiction over [a] defendant"); *Midwest Mem'l Grp., LLC v. Int'l Fund Servs. (Ir.) Ltd.*, No. 10-CV-8660, 2011 WL 4916407, at *6 (S.D.N.Y. Oct. 17, 2011) (noting that § 205(a)'s "tolling provisions are not applicable where a prior action against the same defendant ha[d] been terminated for lack of personal jurisdiction"); *Jacquez v. Campouerde*, 766 N.Y.S.2d 89, 89 (App. Div. 2003) (holding that, because a court previously dismissed an action against the defendant for lack of personal jurisdiction, "the plaintiff was not entitled to invoke the six-month extension contained in [205(a)] to recommence his terminated action").  Accordingly, the savings statute applies neither to Plaintiff's state-court action nor to his federal-court action, because both actions were dismissed for lack of personal jurisdiction.

### 2. Retaliatory Refusal-To-Hire Claims

In addition to the six previously discussed counts, Plaintiff brings two claims—one under FLSA (Count Five), the other under Massachusetts' Wage Act (Count Six)—alleging that Defendants refused to hire Plaintiff in retaliation for exercising his rights under those laws. (*See* Am. Compl. ¶¶ 71–93.) Defendants argue that these counts fail to state claims upon which relief can be granted for two reasons: First, because they are not Plaintiff's "employer" within the meaning of the relevant statutes; and, second, because no well-pleaded factual allegations plausibly suggest retaliation. (*See* Defs.' Mem. 15–20.) Because the Court agrees with the latter proposition, there is no need to reach the question of whether Defendants are Plaintiff's employer.

Under the FLSA's anti-retaliation provision, "it [is] unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]." *See* 29 U.S.C. § 215(a)(3). Similarly, Massachusetts' Wage Act provides that "[n]o employee shall be penalized by an employer in any way as a result of any action on the part of an employee to seek his or her rights under [the Wage Act]." *See* Mass. Gen. Laws ch. 149, § 148A. To allege a claim under the FLSA, "a plaintiff must plead facts showing a prima facie case of retaliation, namely: (1) participation in protected activity known to the defendant[s]; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Salazar v. Bowne Realty Assocs., L.L.C.*, 796 F. Supp. 2d 378, 384 (E.D.N.Y. 2011); *see also Tongring v. Bronx Cmty. Coll. of City Univ. of N.Y. Sys.*, No. 12-CV-6854, 2014 WL 463616, at *4 (S.D.N.Y. Feb. 4, 2014) (same). A plaintiff must allege similar facts to state a claim under Massachusetts state law. *See* Mass. Gen.

Laws ch. 149, § 148A (making liable "[a]ny employer who . . . in any . . . manner discriminates against any employee *because* such employee has" sought to vindicate his or her rights under the Wage Act (emphasis added)); *Mole v. Univ. of Mass.*, 814 N.E.2d 329, 338–39 (Mass. 2004) ("To make out his prima facie case [of retaliation], [the plaintiff] had to show that he engaged in protected conduct, that he suffered some adverse action, and that a causal connection existed between the protected conduct and the adverse action." (footnotes and internal quotation marks omitted)); *Karatihy v. Commonwealth Flats Dev. Corp.*, 995 N.E.2d 819, 821–22 (Mass. App. Ct. 2013) (noting in context of summary judgment that "[t]he elements [the plaintiff] must establish to prove a retaliation claim are that: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) the adverse employment action was causally related to the protected activity"); *see also Joyce v. Upper Crust, LLC.*, No. 10-CV-12204, 2015 WL 4480751, at *6 (D. Mass. July 21, 2015) (noting in context of motion for summary judgment on § 148A claim that "[the plaintiff] [bore] the burden of showing that [the defendant's] justification for the adverse action is pretextual and that there [was] a causal connection between [the plaintiff's] action and [the defendant's] adverse action" (internal quotation marks omitted)); *Belghiti v. Select Rests., Inc.*, No. 10-CV-12049, 2014 WL 1281476, at *4 (D. Mass. Mar. 31, 2014) (noting in considering motion for summary judgment on § 148A claim that "[t]he plaintiff has the burden to show the employer's justification was pretext" and that "there must be a causal connection between [the] [p]laintiff's action and [the] [d]efendant's adverse action"), *reconsideration denied*, 2014 WL 5846303 (D. Mass. Nov. 12, 2014).

With respect to the causal connection requirement, Plaintiff may specifically allege such a connection either "directly, by alleging facts of a retaliatory animus against him," or "indirectly, either by showing a temporal relationship in which the protected activity was

followed closely in time by discriminatory treatment, or by other circumstantial evidence."
*McManamon v. Shinseki*, No. 11-CV-7610, 2013 WL 3466863, at *12 (S.D.N.Y. July 10, 2013);
*see also Herling v. N.Y.C. Dep't of Educ.*, No. 13-CV-5287, 2014 WL 1621966, at *10 (Apr. 23,
2014) (same); *McNair v. N.Y.C. Health & Hosp. Co.*, 160 F. Supp. 2d 601, 604 (S.D.N.Y. 2001)
("In order to establish [a] causal connection, a plaintiff must allege (1) direct proof of retaliatory
animus directed against the plaintiff; (2) disparate treatment of similarly situated employees; or
(3) that the retaliatory action occurred close in time to the protected activities.").  "At the prima
facie stage, a plaintiff can rely solely on temporal proximity to establish the requisite causal
connection between her protected activity and the materially adverse action that she allegedly
suffered in retaliation for engaging in that activity,"  *Risco v. McHugh*, 868 F. Supp. 2d 75, 114
(S.D.N.Y. 2012) (italics omitted); however, "[t]he cases that accept mere temporal
proximity . . . as sufficient evidence of causality to establish a prima facie case uniformly hold
that the temporal proximity must be very close," *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268
(2001) (internal quotation marks omitted); *see also Abrams v. Dep't of Pub. Safety*, 764 F.3d
244, 254 (2d Cir. 2014) (noting that "temporal proximity must be very close" for purposes of
retaliation claim (internal quotation marks omitted)).  "[T]here is no 'bright line to define the
outer limits beyond which a temporal relationship is too attenuated to establish a causal
relationship between the exercise of a federal constitutional right and an allegedly retaliatory
action' . . . ."  *Abrams*, 764 F.3d at 254 (quoting *Gorman–Bakos v. Cornell Coop. Extension of
Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir. 2001)).  Consistent with this logic, the courts have
found that where even very close temporal proximity exists, the requisite causal connection will
falter if the employer's complained-of conduct began before the employee's corresponding
protected activity.  *See Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001)

("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."); *Dabney v. Christmas Tree Shops*, 958 F. Supp. 2d 439, 456 (S.D.N.Y. 2013) ("Although temporal proximity can sometimes demonstrate a causal nexus, where . . . the termination was ultimately the product of an extensive period of progressive discipline that began when [the] [p]laintiff received her first written warning . . . months before [employer learned of the allegedly protected activity], a claim for retaliation cannot be maintained." (internal quotation marks omitted)), *aff'd sub nom. Dabney v. Bed Bath & Beyond*, 588 F. App'x 15 (2d Cir. 2014); *White v. Eastman Kodak*, No. 06-CV-6493, 2009 WL 1514659, at *10 (W.D.N.Y. May 29, 2009) ("[W]here . . . discipline was already underway prior to the protected activity . . . , the Second Circuit has held that temporal proximity alone is insufficient to make out a prima facie case."), *aff'd*, 368 F. App'x 200 (2d Cir. 2010).  By extension, in the context of a failure-to-hire claim, a decision not to hire—if initially made before the relevant protected activity occurred—will not give rise to an inference of retaliation when the prospective employer persists in refusing to hire the prospective employee after the protected activity.  *See Ayazi v. N.Y.C. Dep't of Educ.*, No. 08-CV-2456, 2012 WL 4503257, at *8 (E.D.N.Y. Sept. 28, 2012) (concluding that the defendant's refusal to interview the plaintiff in February 2007, despite its temporal proximity to the plaintiff's EEOC charge, "[was] a mere continuation of an adverse employment condition initiated long before the protected activity in question and does not, without more, logically support an inference that the protected activity prompted retaliation" (alteration and internal quotation marks omitted)), *reconsideration denied*, 2013 WL 310394 (S.D.N.Y. Jan. 25, 2013), *aff'd*, 586 F. App'x 600 (2d Cir. 2014); *see also Jones v. Performance Serv. Integrity*, 492 F. Supp. 2d 590, 596 (N.D. Tex. 2007) ("[The defendant] could not have

retaliated against [the plaintiff] for filing an EEOC charge by not hiring her when its decision to not hire her occurred nearly three weeks before she filed the EEOC charge."). And, even where the protected activity occurs before the adverse employment action, "[c]ourts in this Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation." *Straebler v. NBC Universal, Inc.*, No. 11-CV-4131, 2013 WL 541524, at *8 (S.D.N.Y. Feb. 11, 2013); *see also Beachum v. AWISCO N.Y.*, 785 F. Supp. 2d 84, 98 (S.D.N.Y. 2011) (same), *aff'd*, 459 F. App'x 58 (2d Cir. 2012); *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) (same).

"FLSA retaliation claims are subject to the three-step burden-shifting framework established by [*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)]." *Mullins v. City of N.Y.*, 626 F.3d 47, 53 (2d Cir. 2010). Under that framework, "[o]nce [a plaintiff] makes a prima facie case of . . . retaliation, the burden shifts to the employer to give a legitimate . . . reason for its actions," and, "[i]f the employer does so, the burden then shifts back to the plaintiff to show that the employer's explanation is a pretext for . . . retaliation." *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014). At this stage in the litigation, as courts have recognized in similar contexts, Plaintiff "is not required to specifically plead every element of a prima facie case to survive a motion to dismiss;" however, he "[s]till . . . must plead facts sufficient to render his . . . retaliation claim facially plausible under *Twombly* and *Iqbal*." *Ayazi*, 2012 WL 4503257, at *7; *see also Herling*, 2014 WL 1621966, at *8 (setting out the elements of a prima facie case for a retaliation claim while noting that "a plaintiff need not plead facts sufficient to establish a prima facie case of retaliation to survive a motion to dismiss[,]" but rather that "the ordinary rules for assessing the sufficiency of a complaint apply" (internal quotation marks omitted));

*Brundidge v. Xerox Corp.*, No. 12-CV-6157, 2014 WL 1323020, at *3 (W.D.N.Y. Mar. 31, 2014) ("Retaliation claims are ultimately analyzed under the [*McDonnell Douglas*] burden-shifting rules . . . . However, at the pleading stage . . . the [c]ourt does not specifically apply the *McDonnell Douglas* burden-shifting test to determine whether [a] [p]laintiff has stated a retaliation claim, but rather generally assesses the plausibility of [a] [p]laintiff's claim based on the facts alleged in the [c]omplaint."); *McManamon*, , 2013 WL 3466863, at *4 (noting that, while a plaintiff "need not specifically plead every element of a prima facie case" to survive a motion to dismiss, "[t]he elements . . . do . . . provide an outline of what is necessary to render . . . [the] claim[] . . . plausible." (internal quotation marks and italics omitted)).

In this sense, and in the context of the causation element of the prima facie case, Plaintiff specifically "must allege facts that could establish a causal connection between [his] protected activity and Defendant[s'] refusal to interview or to hire [him]." *Ayazi*, 2012 WL 4503257, at *7; *see also McManamon*, 2013 WL 3466863, at *12 ("A plaintiff must allege facts that could establish a causal connection or link between his or her protected activity and the adverse action. At [the motion-to-dismiss] stage, [a plaintiff] is not required to provide evidence of such a connection, but he must plead facts that indicate an ability to do so." (citations omitted)); *cf. Patane v. Clark*, 508 F.3d 106, 112 & n.3 (2d Cir. 2007) (per curiam) (noting, in the context of a gender-discrimination claim, that a plaintiff need not plead a prima facie case under *McDonnell Douglas*, but affirming a district court's dismissal of the claim because the complaint "failed to plead any facts that would create an inference that any adverse action taken by any defendant was based upon [the plaintiff's] gender" (alterations and internal quotation marks omitted)).

Here, it appears that Plaintiff rests his entire argument concerning causal connection on the basis of temporal proximity.  (Pl.'s Mem. 6–8 (arguing that, because "Plaintiff's job

applications were made continuously without . . . stop between 2008 and 2011" but "were rejected each and every [time] by . . . Defendants," "'protected activity' and 'adverse actions' quali[f]y [as] 'temporally proximate' as to causal connection"); Pl.'s Suppl. Mem. 11 (arguing that Defendants' rejections of his job applications "show, at least indirectly, a temporal relationship between . . . Defendants['] refus[al] to hire Plaintiff and . . . Plaintiff['s] complain[ts] [that] his rights were violated under the Massachusetts Wage Act and the FLSA in the state courts").  Such an argument, if made at the summary judgment stage, might prove unavailing.  *See, e.g.*, *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 932–33 (2d Cir. 2010) (per curiam) (noting that the plaintiff "arguably" established a prima facie Title VII retaliation claim by demonstrating temporal proximity but concluding that such temporal proximity—without more—was insufficient to show that the defendant's proffered reason for discharging the plaintiff was pretextual); *see also Padob v. Entex Info. Serv.*, 960 F. Supp. 806, 814 (S.D.N.Y. 1997) (granting summary judgment for the defendant on the plaintiff's retaliatory discharge claim where, "other than temporal proximity, [the] [p]laintiff herself offer[ed] no other evidence of such a causal connection," instead hinging her retaliatory discharge claim on the grounds that she was at the company for nine years); *Philippeaux v. Fashion Institute of Tech.*, No. 93-CV-4438, 1996 WL 164462, at *9 (S.D.N.Y. Apr. 9, 1996) ("[T]emporal proximity alone is not necessarily dispositive of a causal connection evidencing a retaliatory motive."), *aff'd*, 104 F.3d 356 (2d Cir. 1996).  Although the question is, of course, much closer at the motion to dismiss stage, where temporal proximity alone may be enough, *see, e.g.*, *Purdie v. City Univ. of N.Y.*, No. 13-CV-6423, 2015 WL 129552, at *11 (S.D.N.Y. Jan. 8, 2015), in this case, the Court nonetheless finds that Plaintiff has failed to plausibly plead the requisite causal connection.

Rather than specifying which protected activities are supposed to be temporally proximate to which adverse employment actions, Plaintiff instead reasons that, because (1) his "protected activities . . . were continued without stop since 2008" and (2) his "job applications were made continuously without a stop between 2008 and 2011," his protected activities and Defendants' adverse actions therefore must be temporally proximate.  (*See* Pl.'s Mem. 8 (internal quotation marks omitted).)  The timing here is important, however, because, if Defendants declined to hire Plaintiff *before* he undertook his protected actions, then Plaintiff's subsequent job applications cannot supply the requisite causal connection to support a retaliation claim.  *See Slattery*, 248 F.3d at 95; *Ayazi*, 2012 WL 4503257, at *8.[17]

---

[17] It warrants stressing that this is a particularly logical outcome in the context of a failure-to-hire case, where, as courts have noted, the timing of when the defendant undertakes the relevant adverse action is very often a function of the plaintiff's choice of when to apply.  *See Kelley v. Goodyear Tire & Rubber Co.*, 220 F.3d 1174, 1179 (10th Cir. 2000) (noting that "[t]he decision not to hire an individual almost always occurs shortly after a job application has been received or an interview has been conducted," and that "[a] close temporal proximity will almost always occur in failure-to-hire cases because employers naturally make hiring decisions soon after receiving applications and conducting interviews"); *Alvarado v. Manhattan Worker Career Ctr.*, No. 01-CV-9288, 2002 WL 31760208, at *14–15 (S.D.N.Y. Dec. 10, 2002) (concluding temporal proximity was not enough to support causal connection at summary judgment stage for "[a] close temporal proximity will almost always occur in failure-to-hire cases" (quoting *Kelley*, 220 F.3d at 1179)); *see also Nelson v. DeVry, Inc.*, No. 07-CV-4436, 2009 WL 1213640, at *10 (E.D. Pa. Apr. 23, 2009) ("[I]t was [the plaintiff's] own actions that created the temporal proximity between the [protected activity] and [the plaintiff's] termination.  Accordingly, [the plaintiff] ha[s] not established a prima facie case for retaliation sufficient to survive summary judgment." (italics omitted)); *Parker v. Trs. of the Univ. of Pa.*, No. 05-CV-4874, 2008 WL 60190, at *1, *6 (E.D. Pa. Jan. 3, 2008) (granting motion for summary judgment and concluding record did not support causal connection because "[the] [p]laintiff created the temporal proximity at issue" where he (1) had earlier filed a separate lawsuit alleging discriminatory failure to hire, in which he (2) learned that he was not hired because he failed to apply to a specific position, (3) then applied the next month for 90–100 specific positions before bringing instant retaliatory failure-to-hire claim); *cf. Bevill v. Home Depot U.S.A., Inc.*, 753 F. Supp. 2d 816, 835 (S.D. Iowa 2009) (concluding no causal connection existed for the defendant's refusal to promote the plaintiff three times after his protected activity when it had already declined to promote him fifty times before the protected activity).

Although not currently the law of the Second Circuit and not necessary to resolve the instant Motion, there is much to recommend a rule of law providing that causation inferred from

Unfortunately, it is not particularly clear when Plaintiff set out on his multi-year quest to supposedly secure a job with IBM.  Apparently, however, he began at least as early as May 2008.  (*See* Am. Compl. ¶ 34 ("IBM repeatedly rejected each and every work application made by [P]laintiff . . . for more than 4 years until 2012."); *id.* ¶ 40 ("Plaintiff made many job applications to IBM and Defendants for about a hundred works sought by IBM, repeatedly for more than 4 years until 2012."); Pl.'s Suppl. Mem. 11 ("A few examples of the dates of said job applications are 5/6/2008, 7/31/2008 . . . ."); Pl.'s Mem. 7 (same).)[18]  This is significant because Plaintiff appears to have engaged in two instances of at least potentially protected activity in 2008: First, on April 14, 2008, Plaintiff filed a wage complaint with the Office of the Massachusetts Attorney General, (Am. Compl. ¶ 72; Defs.' Mem. 5; Defs.' Mem. Ex. 4 (April 14, 2008 Letter to Attorney General), and, second, on September 18, 2008, Plaintiff filed another complaint with the Massachusetts Attorney General.  (*See* Am. Compl. ¶ 11; Defs.' Mem. 6; Defs.' Mem. Ex. 5 (Non-Payment of Wage and Workplace Complaint Form).)  Consequently,

---

temporal proximity alone is insufficient to render a claim of retaliatory failure-to-hire plausible at the motion-to-dismiss stage.  *See Riddle v. Citigroup*, No. 13-CV-6833, 2014 WL 2767180, at *4 (S.D.N.Y. May 29, 2014) (noting that "the notion that temporal proximity alone will raise an inference of retaliation in failure to hire cases" would make it "easy to manufacture discrimination law suits by applying to an employer whom the job applicant sued"); *Carr v. Health Ins. Plan of Greater N.Y., Inc.*, No. 99–CV–3706, 2001 WL 563722, at *3 (S.D.N.Y. May 24, 2001) (noting that a rule "extending the scope of an adverse employment action to include a failure to rehire an individual in litigation with his former employer" "creates a worrisome opportunity for the manufacture of frivolous claims," because the "plaintiff may bootstrap additional and unmeritorious claims to a discrimination lawsuit merely by reapplying for his former job, and subsequently being rejected from it" (internal quotation marks omitted)).

[18] Plaintiff does say, in one place, that "after a complaint against the Defendants [was] filed in Massachusetts Superior Court on 11/25/2009, [he] made many job applications for about a hundred works [sic] sought by IBM, repeatedly for more than 4 years until 2012."  (*See* Am. Compl. ¶ 30.)  However, in light of this sentence's self-contradictory language and the other references in the Amended Complaint and elsewhere to Plaintiff having applied for over four years concluding at some point in 2012 (which would compel a start date in 2008 at the latest), it is fair to conclude that Plaintiff did not actually intend to suggest he waited until after November 25, 2009 to apply.

Plaintiff cannot establish the requisite temporal proximity if either (1) he was rejected for positions before April 14, 2008 or (2) the April 14 complaint was not an adequate predicate for Plaintiff's retaliation claim.  *See Slattery*, 248 F.3d at 95; *Ayazi*, 2012 WL 4503257, at *8.

    With regard to the first proposition, there is a strong case to be made that Plaintiff has, in essence, claimed to have applied for jobs earlier than April 14.  First, Plaintiff says that he applied to "over a dozen [jobs] a year[] from 2008 to 2012."  (Pl.'s Suppl. Mem. 11.)  Among the examples of job applications he submitted, Plaintiff lists just one for 2012, which he says he submitted on January 11, 2012.  (Pl.'s Suppl. Mem. 11; Pl.'s Mem. 7.)  Assuming, therefore, as seems implicit in Plaintiff's statements, that he concluded his job search in early 2012, and crediting his assertion that he applied for jobs "repeatedly for more than 4 years until 2012," it is reasonable to infer that Plaintiff began his job search promptly after his March 28, 2008 termination.  (*See* Am. Compl. ¶ 30.)

    But even if Plaintiff's very first re-application were his May 6, 2008 submission, the April 14 complaint still could not adequately ground Plaintiff's retaliatory failure-to-hire claims. That is so because Plaintiff must establish "participation in protected activity *known* to the defendant[s]," *Salazar*, 796 F. Supp. 2d at 384 (emphasis added), in order to make out a prima facie case of retaliation, *see Belizaire v. RAV Investigative & Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 355 (S.D.N.Y. 2014) (concluding that the plaintiff failed to "establish[] that he engaged in a protected activity known to the defendant as required to state a retaliatory discharge claim under the FLSA," because he did not "allege[] that [the] [d]efendant had any knowledge of this complaint, nor has he pleaded facts from which this [c]ourt could infer such knowledge" (citations, emphasis, and internal quotation marks omitted)); *Doria v. Cramer Rosenthal McGlynn, Inc.*, 942 F. Supp. 937, 944 (S.D.N.Y. 1996) ("The case law makes clear that the

employer's knowledge of the protected activity is necessary to establish a prima facie retaliation claim" (italics omitted)); *see also McManamon*, 2013 WL 3466863, at *10 ("A complaint that makes only general statements that the defendant retaliated against the plaintiff but does not supply factual detail describing . . . which employees were aware of any protected activity or were actually involved in retaliatory conduct[] is insufficient to withstand a motion to dismiss."); *Saidin v. N.Y.C. Dep't of Educ.*, 498 F. Supp. 2d 683, 688 (S.D.N.Y. 2007) (dismissing retaliatory failure-to-hire claim where the pro se plaintiff, among other things, failed to specify "which . . . official had knowledge of his EEOC charge and who actually engaged in the claimed retaliation"), *reconsideration denied*, 245 F.R.D. 175 (S.D.N.Y. 2007).  Here, the Amended Complaint offers a few stray allusions to Defendants being involved in Plaintiff's litigation in the state courts; however, it does not specifically allege that they knew of the April 14, 2008 complaint *at the time* they allegedly began refusing to hire Plaintiff for various positions.  (*See* Am. Compl. ¶ 11 (alleging that Plaintiff "filed complaints against the Defendants . . . with . . . [the] Massachusetts Attorney General office on April 14, 2008"); *id.* ¶ 83 (also referring to April 14, 2008 action as being brought against Defendants); *id.* ¶¶ 72, 83 ("During the case pending in the state courts, the Defendants [were] actively involved in the defense and were well aware of Plaintiff's allegation against them for the unpaid wages and the retaliatory termination under the Massachusetts Wage Act and the FLSA."); *id.* ¶¶ 95, 105 ("The Defendants . . . [were] actively involved in the defense during the litigation pending in the court between April 14, 2008 and January 23, 2013 . . . ."); Pl.'s Suppl. Mem. 11 ("During the period between November 25, 2009 and February 28, 2013, the Defendants actively involved the

defense the complaint against them.").)[19]  It is, of course, perhaps not surprising that the CEO,

treasurer, and two senior vice presidents of IBM would not be alerted to the submission of a new

---

[19]  It is likely that some references to Defendants in the Amended Complaint were not meant to refer to the Defendants named in this case but Artech or others.  (*Compare* Am. Compl. ¶ 11 (claiming Plaintiff "filed complaints against the Defendants . . . with . . . [the] Massachusetts Attorney General office on April 14, 2008") *and id.* ¶ 83 (also referring to April 14, 2008 action as being brought against Defendants) *with* Defs.' Mem. Ex. 4 (copy of letter that Plaintiff apparently sent to the Office of the Attorney General but not specifically referring to any of the Defendants named in this case).)  In fact, in his letter to the Office of the Massachusetts Attorney General, Plaintiff stated that he was not lodging a complaint against IBM (because of a fear of retaliation).  *See* Defs.' Mem. Ex. 4. (April 14, 2008 Letter to Attorney General), at 2.  But because the Court is mindful of its obligation to "interpret the[] [pleadings] to raise the strongest arguments that they suggest,"  *Maisonet*, 640 F. Supp. 2d at 347 (internal quotation marks omitted), it does not dismiss outright the possibility that Plaintiff, perhaps, does mean—literally and consistently—to refer to the Defendants in this Matter when referring to "Defendants."

Additionally, Plaintiff's assertions that Defendants became "involved" in or "aware" of, (*see, e.g.*, Am. Compl. ¶¶ 72, 83, 95, 105), litigation growing out of his April 14, 2008 complaint cannot substitute for facts alleging that Plaintiff's complaint was "known" to them at the time that he filed it, *cf. Turley v. ISG Lackawanna, Inc.*, 803 F. Supp. 2d 217, 253 (W.D.N.Y. 2011) (noting there was no question that the "[d]efendants were aware of [the plaintiff's] complaints *at the time of* the alleged instances of retaliation" (emphasis added)); *Fosen v. N.Y. Times*, No. 03-CV-3785, 2006 WL 2927611, at *10 (S.D.N.Y. Oct. 11, 2006) (noting "no evidence that would permit a rational trier of fact to conclude that [the] [p]laintiff's claimed protected activity was known to [the] [d]efendant *at the time of* . . . [the] [p]laintiff's termination or transfer" (emphasis added)).  As is hopefully clear, the Court truly endeavors to liberally construe Plaintiff's Amended Complaint to raise the strongest arguments that it suggests, *Maisonet*, 640 F. Supp. 2d at 347; however, there still exists a line between liberal construction and gratuitous revision.  Here, saying that Defendants were involved in litigation beginning on April 14, 2008 is simply not enough to allege contemporary knowledge when Plaintiff offers absolutely no explanation as to how or why four very senior executives of a company that in 2014 had over 379,000 employees—a number that exceeds the entire population of Iceland—would have learned about Plaintiff's April 14, 2008 letter less than a month after it was filed when it did not refer to even one of them by name and when it explicitly said that Plaintiff "decide[d] not to file a complaint against IBM at this time."  (*See* Defs.' Mem. Ex. 4 (April 14, 2008 Letter to Attorney General).)  *See also* Int'l Bus. Machs. Corp. & Subsidiaries Cos., Annual Report (Form 10-K) (Feb. 24, 2015); Central Intelligence Agency, *The World Factbook-Iceland*, https://www.cia.gov/library/publications/the-world-factbook/geos/ic.html (last visited Jan. 13, 2016).  In any event, had Plaintiff made the bare assertion without further factual enhancement that these executives did know about his April 14, 2008 letter, there still would be little to distinguish it from Javaid Iqbal's claim that Attorney General John Ashcroft, among other things, "knew of . . . [his] harsh conditions of confinement," which the Supreme Court rejected

complaint to the Attorney General of Massachusetts.[20]  Consequently, the April 14, 2008

complaint cannot serve as a predicate for a retaliation claim.  *See Belizaire*, 61 F. Supp. 3d at

355.  Because the next potentially protected activity did not occur until at least August 18, 2008,

(*see* Am. Compl. ¶ 11; Defs.' Mem. 6; Defs.' Mem. Ex. 5 (Non-Payment of Wage and

Workplace Complaint Form)), it occurred after Plaintiff began applying for jobs with IBM, (*see*

Pl.'s Mem. 7), and, logically, after IBM's failure to hire Plaintiff began.  Therefore, Plaintiff's

allegations do not establish the requisite temporal proximity.  *See Slattery*, 248 F.3d at 95; *Ayazi*,

2012 WL 4503257, at *8.[21]

---

as "disentitle[d] . . . to the presumption of truth," not because it was "extravagantly fanciful," but rather on account of its conclusory nature.  *See Iqbal*, 556 U.S. at 680–81.

[20] Of course, there is case law that indicates that general corporate knowledge is all that is required to satisfy the knowledge requirement.  *See Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000) ("Neither this nor any other circuit has ever held that, to satisfy the knowledge requirement, anything more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity.").  Considering this rule in the context of the causal connection requirement of the *McDonnell Douglas* framework, the Second Circuit has explained that "[a] causal connection is sufficiently demonstrated if the agent who decides to impose the adverse action but is ignorant of the plaintiff's protected activity acts pursuant to encouragement by a superior (who has knowledge) to disfavor the plaintiff."  *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 148 (2d Cir. 2010) (emphasis omitted); *see also Summa v. Hofstra Univ.*, 708 F.3d 115, 127 (2d Cir. 2013) (same).  Here, there is no allegation—nor, perhaps, could there plausibly be one—that the four very senior officers named as Defendants were "act[ing] pursuant to encouragement by a superior" in allegedly failing to hire Plaintiff.  *See id.* (italics omitted); *see also Vuona v. Merrill Lynch & Co.*, 919 F. Supp. 2d 359, 383 (S.D.N.Y. 2013) (concluding that the supervisor who participated in reduction-in-force process did not have knowledge by virtue of general corporate knowledge because no such general corporate knowledge existed where branch manager not involved in reduction-in-force process left company before it occurred); *Cooper v. Conn. Dep't of Corr.*, No. 09-CV-691, 2010 WL 4345715, at *8 (D. Conn. Oct. 19, 2010) (distinguishing *Henry* and *Gordon* on the grounds that "[i]n those cases, the Second Circuit indicated that a principal's knowledge could be attributed down to agents acting under that principal's explicit or implicit orders or directions," but observing that, in the case at hand, "the evidence shows only that lower-level employees knew about [the plaintiff's] activities").  Therefore, the Court finds that the knowledge prong is not established.

[21] As an aside, some language in Plaintiff's filings could be taken to suggest that he engaged in other protected activities beyond those specifically discussed in the Amended

Ironically, the question of Defendants' knowledge may be of little practical consequence because, even if the Court were to accept that it was sufficient to render Plaintiff's assertions plausible, Plaintiff's claim would then founder by reason of the issue preclusion doctrine. "When 'determin[ing] the effect of a state court judgment, federal courts, including those sitting in diversity, are required to apply the preclusion law of the rendering state.'" *Giannone v. York Tape & Label, Inc.*, 548 F.3d 191, 192–93 (2d Cir. 2008) (alteration in original) (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 87 (2d Cir. 2000)); *see also Martinez v. BAC Home Loans Servicing, L.P.*, No. 13-CV-2867, 2014 WL 2653275, at *2 (S.D.N.Y. June 13, 2014) (same). Under Massachusetts law, the doctrine of "issue preclusion 'prevents relitigation of an issue determined in an earlier action where the same issue arises in a later action, based on a different claim, between the same parties or their privies.'" *Kobrin v. Bd. of Registration in Med.*, 832 N.E.2d 628, 634 (Mass. 2005) (quoting *Heacock v. Heacock*, 520 N.E.2d 151, 152 n.2 (Mass. 1988)).[22] Before applying issue preclusion,

---

Complaint. (*See* Pl.'s Mem. 8 ("Plaintiff's complaints, as 'protected activities' at least under Section 148A, were continued without stop since 2008.").) Without details as to what those protected activities were, to whom they were directed, and when they occurred, they are simply too conclusory to factor in to the analysis. *See supra* note 19. By the same logic, Plaintiff's stray assertion that he "wrote a demand letter to Defendants for the unpaid wage," (Am. Compl. ¶ 28), is not enough.

Also, although Plaintiff indicates that his second complaint with the Office of the Massachusetts Attorney General was filed on September 18, 2008, (*see* Am. Compl. ¶ 11,) Defendants suggest that he actually filed on August 18, 2008, (*see* Defs.' Mem. 6 n.3; *see also* Defs.' Mem. Ex 5 (Non-Payment of Wage and Workplace Complaint Form).) Nevertheless, the discrepancy does not make a difference.

[22] Massachusetts law also has a claim preclusion doctrine, which "makes a valid, final judgment conclusive on the parties and their privies, and prevents relitigation of all matters that were or could have been adjudicated in the action." *Kobrin*, 832 N.E.2d at 634 (internal quotation marks omitted). Because, as will be discussed, Plaintiff's retaliatory-failure-to-hire claims were predicated on job applications some of which were submitted after he brought his state-court proceedings, the Court will analyze the issue under the doctrine of issue preclusion, rather than claim preclusion. *See Larson v. Larson*, 569 N.E.2d 406, 412 (Mass. App. Ct. 1991)

> a court must determine that (1) there was a final judgment on the merits in the prior
> adjudication; (2) the party against whom preclusion is asserted was a party (or in
> privity with a party) to the prior adjudication; and (3) the issue in the prior
> adjudication was identical to the issue in the current adjudication.

*Id.* (internal quotation marks omitted) (quoting *Tuper v. N. Adams Ambulance Serv., Inc.,* 697

N.E.2d 983, 985 (Mass. 1998)); *see also Comm'r of Dep't of Emp't & Training v. Dugan*, 697

N.E.2d 533, 536 (Mass. 1998) (same).[23]   The Court will take up each of these issues in turn.

To begin, there was a final judgment on the merits in the earlier action.  A brief refresher

as to the procedural posture of that action is helpful here.  First, on January 21, 2010, Plaintiff

brought suit against IBM, Palmisano, Loughridge, Poddar, and Artech in Middlesex,

Massachusetts Superior Court asserting 11 causes of action, the third of which alleged retaliatory

refusal to hire under the Massachusetts Wage Act.  (*See generally* Defs.' Mem. Ex. 10 (Jan. 21,

2010 Am. Compl.).)  Although Palmisano, Loughridge, and Poddar were dismissed for want of

personal jurisdiction on September 30, 2010, (*see* Defs.' Mem. Ex. 11 (Superior Court Docket),

at unnumbered 7), the superior court rejected Plaintiff's third count on the merits, (*see* Defs.'

Mem. Ex. 12 (Middlesex Superior Court Opinion), at 6, 10 (discussing Plaintiff's retaliatory-

---

(concluding that "[e]ach violation of [ex-husband's] continuing monthly payment obligation
under the divorce judgment constituted a new claim for preclusion purposes," therefore barring
claim preclusion but going on to analyze issue preclusion).

[23]   Additionally, case law makes clear that "the issue decided in the prior adjudication
must have been essential to the earlier judgment," *Kobrin*, 832 N.E.2d at 634 (internal quotation
marks omitted) (quoting *Tuper*, 697 N.E.2d at 985), and that the issues to be precluded were
"actually litigated in the prior action," *id.* (citing *Fidelity Mgmt. & Research Co. v. Ostrander*,
662 N.E.2d 699, 703 (Mass. App. Ct. 1996)).  Neither of these wrinkles is a barrier to the use of
issue preclusion because Plaintiff pressed his unmeritorious Wage Act retaliatory failure-to-hire
claims before the trial court on summary judgment and the appellate courts.  Thus, the decisions
of both courts were essential to the judgment and actually litigated.  *Cf. Fon v. Amica Mut. Ins.
Co.*, No. 06-0607, 2008 WL 1932074, at *3 (Mass. Super. Ct. Apr. 30, 2008) (applying the
doctrine of issue preclusion where an arbitrator issued a written decision based on evidence
presented and the arbitrator's decision was subsequently confirmed by Massachusetts superior
court).

refusal-to-hire claims and concluding that "[P]laintiff . . . has produced no testimony, documents[,] or other evidence to provide any specific factual support" for his allegations and granting summary judgment on count three)). Although the Appeals Court subsequently reversed summary judgment on two counts and modified the dismissal of individual defendants to be without prejudice, it affirmed the summary judgment on count three. (*See* Defs.' Mem. Ex. 13 (July 25, 2012 Appeals Court Opinion), at 3.) Afterwards, the defendants proposed a settlement of $17,500 to Plaintiff, in exchange for which Plaintiff would dismiss the action with prejudice. (*See* Defs.' Mem. Ex. 14 (Oct. 1, 2014 Appeals Court Decision), at 2.) A nisi dismissal was entered, but, two weeks later, Plaintiff moved to set it aside, claiming the parties had not settled, that he was "framed" and "caught [in] a trap." (*See id.* at 2 (internal quotation marks omitted).) Plaintiff's efforts were rebuffed by both the trial court and the Massachusetts Appeals Court. (*See id.* at 2 (internal quotation marks omitted).)

With all that in mind, the Court must ask whether "there was a final judgment on the merits in the prior adjudication," *Kobrin*, 832 N.E.2d at 634 (internal quotation marks omitted), despite Plaintiff's subsequent appeals and the eventual settlement. In general, as is unsurprising, "disposition by summary judgment constitutes a final judgment on the merits" for issue preclusion purposes. *Boyle v. Barnstable Police Dep't*, No. 09-CV-11435, 2012 WL 2126868, at *10 (D. Mass. June 11, 2012). Although Plaintiff does not press the point, the Court notes that the Massachusetts Supreme Judicial Court has stated that "determinations made on a partial summary judgment in an earlier action between the parties are not entitled to collateral estoppel or issue preclusion effect." *Tausevich v. Bd. of Appeals of Stoughton*, 521 N.E.2d 385, 386 (Mass. 1988). However, the Court nevertheless believes Massachusetts law calls for such effect in this case. First, it is essential to note that the Supreme Judicial Court stressed that "[in] the

earlier action [at issue in *Tausevich*], . . . an apparently substantial issue remained undecided [and] was terminated by a stipulation of dismissal without prejudice," such that "the partial summary judgment never was expressed in an appealable judgment or order." *Id.* In stark contrast, here, Plaintiff not only could appeal the decision; he did. (*See* Defs.' Mem. Ex. 13 (July 25, 2012 Appeals Court Opinion).) This distinction matters. Indeed, the pertinent question is not whether there was a final judgment in the traditional sense. *See Tausevich*, 521 N.E.2d at 387 ("[A] final judgment in the traditional sense is not essential to the applicability of issue preclusion."); *Jarosz v. Palmer*, 766 N.E.2d 482, 489 (Mass. 2002) ("[F]or the purposes of issue preclusion, [the doctrine] does not require a final judgment in the strict sense."). Rather, Massachusetts courts take a more pragmatic view, noting that "[f]actors supporting the conclusion that a decision is final for the purpose of preclusion are that the parties were fully heard, the judge's decision is supported by a reasoned opinion, and the earlier opinion was subject to review or was in fact reviewed." *Tausevich*, 521 N.E.2d at 387. Considering these factors, the Court concludes that the state court judgment was a "final judgment on the merits." *See Kobrin*, 832 N.E.2d at 634 (internal quotation marks omitted).

Turning to the issue of privity, Massachusetts law provides some support for the idea that privity between a company and an officer could arise in a closely-held corporation. *See Eight Arlington St., LLC v. Arlington Land Acquisition-99, LLC*, No. 061928BLS1, 2007 WL 2367753, at *5 (Mass. Super. Ct. Aug. 3, 2007) (noting that some cases "may have held that a closely-held corporation is in privity with its shareholders and officers"); *Fromm v. Bos. Redevelopment Auth.*, No. 032951F, 2005 WL 1812498, at *10 (Mass. Super. Ct. May 13, 2005) (citing *In re Belmont Realty Corp.*, 11 F.3d 1092, 1097 (1st Cir. 1993), for the proposition that, "in a res judicata action, privity existed between a closely-held corporation and its

officer/shareholder who participated extensively in the prior action proceedings"). This, of course, at least obliquely supports the eminently logical conclusion that a high-level officer of a large, publicly-traded corporation is not in privity with that company. However, Massachusetts law also is clear that there is privity between parties if the party in the second matter exercised "substantial control" over the party in the first. *See O'Connell v. White*, 28 N.E.3d 12, at *3 (Mass. App. Ct. 2015) (unpublished table opinion); *Bourque v. Cape Southport Assocs., LLC*, 800 N.E.2d 1077, 1081 (Mass. App. Ct. 2004) (citing Restatement (Second) of Judgments § 39 (Am. Law Inst. 1982))); *see also* Restatement (Second) of Judgments § 39 (Am. Law Inst. 1982) ("A person who is not a party to an action but who controls or substantially participates in the control of the presentation on behalf of a party is bound by the determination of issues decided as though he were a party."). Thus, if Plaintiff had plausibly pled that Defendants really did control IBM in its past litigation and personnel decisions, his victory would be pyrrhic at best and would lead the Court to believe that a finding of privity would be appropriate under Massachusetts law. *See Bourque*, 800 N.E.2d at 1081.[24]

---

[24] It merits passing mention that Palmisano and Loughridge were parties to this Action; however, they were dismissed by the trial court for want of personal jurisdiction, a decision the Appeals Court upheld but modified to be without prejudice. (*See* Defs.' Mem. Ex. 13, at 3 (July 25, 2012 Appeals Court Opinion).) Although "the question of what effect [an] earlier finding of lack of [personal] jurisdiction [over individual defendants] has on the application of res judicata" when those individual defendants seek to avail themselves of res judicata is, perhaps, "not . . . easy," *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, No. 95-CV-12320, 1997 WL 263732, at *20 (D. Mass. May 8, 1997), *aff'd*, 142 F.3d 26 (1st Cir. 1998), there does not seem to be a reason to conclude here that personal jurisdiction, which concerns the relationship between a court and a defendant, must change the answer to the question surrounding privity, which relates to the relationship between the defendants themselves. *Cf. Pricaspian Dev. Corp. (Tex.) v. Royal Dutch Shell, plc*, No. 08-CV-9726, 2009 WL 1564110, at *10 (S.D.N.Y. June 3, 2009) (noting, when applying Colorado law, "[t]he tests for exercising personal jurisdiction over a parent based on its subsidiary's activities in a state and for establishing privity for claim preclusion purposes may weigh many of the same factors, but they are different tests."), *aff'd*, 382 F. App'x 100 (2d Cir. 2010).

Lastly, with respect to the issue of the identity of the issues, intuition perhaps supplies the answer, but case law confirms it.  To be sure, "the reach of collateral estoppel must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding."  *Meagher v. Andover Sch. Comm.*, No. 13-CV-11307, 2014 WL 2547550, at *5 (D. Mass. June 4, 2014) (internal quotation marks omitted) (quoting *Faigin v. Kelly*, 184 F.3d 67, 78 (1st Cir. 1999)).  However, such is the situation here.  Indeed, the only even arguable differences between the issue the Massachusetts Court of Appeals faced and this issue here are that (1) Plaintiff's instant lawsuit arguably seeks relief for job applications submitted late enough to not be considered by the trial court, (*see* Pl.'s Mem. 11 ("After filed the complaints in Massachusetts Courts, Wang made job applications for about a hundred works [sic] that were sought by Defendants.")), and (2) Plaintiff now sues under both FLSA and the Wage Act, as opposed to just the Wage Act.

With respect to the former, it simply defies logic that, if a court determined one failure to hire was not retaliatory, a subsequent failure to reverse course and hire the former plaintiff would be retaliatory, not just in spite of but indeed *because of* the court's decision, which did not—and, of course, could not—adjudicate future personnel decisions.  The bar for finding identical issues may be high, but it is not impossibly so.  *Cf. Dugan*, 697 N.E.2d at 537 (finding preclusive effect given to issue of the defendant's state of mind where the issue was determined, although it need not have been, in an earlier action); *Tuper*, 697 N.E.2d at 986 (finding issues not identical where corresponding issues in two cases differed because one involved subjective inquiry and the other an objective inquiry).

Turning to the second point, the fact that Plaintiff now sues under a second statute does not make the issue different.  Indeed, Massachusetts case law suggests that this distinction does

not compel the conclusion even that *claims* are different, much less that the issues are different. *See McDonough v. City of Quincy*, 452 F.3d 8, 16 (1st Cir. 2006) ("Causes of action are identical if they 'derive from the same transaction or series of connected transactions.'" (alteration omitted) (quoting *TLT Constr. Corp. v. A. Anthony Tappe & Assocs., Inc.*, 716 N.E.2d 1044, 1051 (Mass. App. Ct. 1999))); *Isaac v. Schwartz*, 706 F.2d 15, 17 (1st Cir. 1983) ("A 'statement of a different form of liability' cannot overcome res judicata's bar if 'it grows out of the same transaction, act, or agreement, and seeks redress for the same wrong.'" (quoting *Mackintosh v. Chambers,* 190 N.E. 38, 39 (Mass. 1934))); *Heacock*, 520 N.E.2d at 152–53 (noting that "[t]he doctrine of claim preclusion makes a valid, final judgment conclusive on the parties and their privies, and bars further litigation of all matters that were or should have been adjudicated in the action," and that "[t]his is so even though the claimant is prepared in a second action to present different evidence or legal theories to support his claim, or seeks different remedies").

All of this, however, is perhaps a detour, although one, which, hopefully, assures a pro se plaintiff that his claims have been thoroughly heard and considered, even if ultimately found legally lacking. However, at its core, the fundamental problem with Plaintiff's retaliatory failure-to-hire claim is that, as pled, it simply is not plausible. To be sure, at this stage, Plaintiff's claim need not establish the full elements of a prima facie claim. *See McManamon*, 2013 WL 3466863, at *4. And, perhaps, it may not even be entirely "beyond doubt that the plaintiff can prove no set of facts," *Conley v. Gibson*, 355 U.S. 41, 45 (1957), *overruled by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), under which four of IBM's senior officers, knowing about Plaintiff's April 14, 2008 letter, blacklisted him from the company's employ. But because

the relevant legal standard is "facial[] plausib[ility] under *Twombly* and *Iqbal*," *Ayazi*, 2012 WL

4503257, at *7, and because Plaintiff has not met that standard, his claim is dismissed.[25]

### 3. Age Discrimination Claims

In addition to the foregoing claims, Plaintiff brings two claims for age discrimination—

one under the ADEA and one under Massachusetts state law.  With regard to the former, as

discussed in the last Opinion, courts in the Second Circuit have consistently held that the ADEA

does not impose liability on individuals.  *See Palumbo v. Carefusion 2200, Inc.*, No. 12-CV-

6282, 2014 WL 3921233, at *6 (W.D.N.Y. Aug. 11, 2014) ("It is well-established that there is no

individual liability under . . . the ADEA." (internal quotation marks omitted)); *Fitzgerald v.*

*Signature Flight Support Corp.*, No. 13-CV-4026, 2014 WL 3887217, at *3 (S.D.N.Y. Aug. 5,

2014) ("[I]ndividuals are not subject to ADEA liability."); *Almontaser v. N.Y.C. Dep't of Educ.*,

---

[25]  For that same reason, to the extent that Plaintiff also intends to support his retaliatory failure-to-hire claims with conclusions concerning Defendants' intentions or motivations, (*see* Am. Compl. ¶¶ 78–80; 90–92), the Court similarly finds them insufficient for the reasons stated in the last Opinion in this case.  Indeed, as then, the Amended Complaint's allegations concerning Defendants' retaliatory motives are exactly the sort of conclusory, "the-defendant-unlawfully-harmed-me accusation" that the Court need not accept when evaluating the Defendants' Motion to Dismiss.  See *Iqbal*, 556 U.S. at 678; *see also Colvin*, 2014 WL 2863224, at *20 (noting that "[t]o satisfy the causal connection requirement of the prima facie case" in the context of a motion to dismiss, a plaintiff "may not rely on conclusory assertions of retaliatory motive" (internal quotation marks omitted)); *cf. Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Because, Plaintiff has not "allege[d] facts from which a retaliatory intent on the part of the defendants reasonably may be inferred," *Colvin*, 2014 WL 2863224, at *20 (internal quotation marks omitted), he cannot undergird his retaliatory failure-to-hire claim with his own suspicions concerning Defendants' motivations, *see Reardon v. Keating*, 980 F. Supp. 2d 302, 318 (D. Conn. 2013) (dismissing a retaliation claim where the complaint's "references to retaliation [were] conclusory boilerplate, without foundation or support in the [complaint's] factual allegations from which an intent to retaliate could plausibly be inferred"); *Mateo v. Bristow*, No. 12-CV-5052, 2013 WL 3863865, at *6 (S.D.N.Y. July 16, 2013) (denying a motion to dismiss where the complaint pleaded facts supporting "inferences suffic[ient] to establish a plausible retaliatory motive").

No. 13-CV-5621, 2014 WL 3110019, at *3 n.2 (E.D.N.Y. July 8, 2014) (noting that "individuals are not subject to liability under . . . the ADEA"); *Stankovic v. Newman*, No. 12-CV-399, 2013 WL 6842530, at *2 (D. Conn. Dec. 27, 2013) ("There is no individual liability under . . . the ADEA . . . ."); *Thorpe v. Piedmont Airlines, Inc.*, 926 F. Supp. 2d 453, 462 (N.D.N.Y. 2013) ("[T]here is no basis for imposing individual liability on agents of an employer under the ADEA's definition."). The Court therefore dismisses Plaintiff's ADEA claim.

With respect to Plaintiff's state age-discrimination claims, the Massachusetts statute Plaintiff invokes imposes civil liability on a private-sector employer who "refuse[s] to hire or employ . . . [an] individual" "because of the age of [that] individual." Mass. Gen. Laws ch. 151B, § 4(1B). This language is, in all relevant respects, nearly identical to the ADEA's language making it "unlawful for an employer . . . to fail or refuse to hire . . . any individual . . . because of such individual's age," 29 U.S.C. § 623(a)(1), leading some courts to note that the "analyses" under Massachusetts law and the ADEA "are substantially similar in all relevant respects," *Adamson v. Walgreens Co.*, 750 F.3d 73, 83 (1st Cir. 2014) (internal quotation marks omitted); *see also DaCosta v. Town of Plymouth*, No. 11-CV-12133, 2014 WL 2998986, at *18 (D. Mass. July 1, 2014) ("The analyses of the ADEA and chapter 151B age discrimination claims are substantially similar in all relevant respects . . . ." (internal quotation marks omitted)); *Sullivan v. Liberty Mut. Ins. Co.*, 825 N.E.2d 522, 530 n.11 (Mass. 2005) (noting the court's "practice to apply Federal case law construing the Federal antidiscrimination statutes in interpreting [Mass. Gen. Laws ch. 151B]" (internal quotation marks omitted)).[26]

---

[26] Defendants argue that, like the ADEA, the anti-age discrimination provisions of Mass. Gen. Laws, ch. 151B, § 4(1B) do not impose liability on individuals. (*See* Defs.' Mem. 14 (citing *Welgoss v. Dep't of Transp.*, Civil Action No. 2012–1549–C, 2013 WL 4007929, at *2 (Mass. Super. Ct. June 21, 2013) ("Mass.G.L. c. 151B's general prohibition against age and sex discrimination (at § 4(1)) applies to the actions of 'employers,' and makes no provision for

In this context, "[t]o survive a motion to dismiss" Plaintiff "must plausibly plead that the circumstances surrounding an adverse employment action give rise to an inference of age discrimination." *Kirkweg v. N.Y.C. Dep't of Educ.*, No. 12-CV-2635, 2013 WL 1651710, at *4 (S.D.N.Y. Apr. 4, 2013) (alteration and internal quotation marks omitted); *see also Deylii v. Novartis Pharm. Corp.*, No. 13-CV-6669, 2014 WL 2757470, at *7 (S.D.N.Y. June 16, 2014) ("[A]n ADEA complaint must contain sufficient facts to make plausible the conclusion that but for his age, Plaintiff would still be employed." (alterations and internal quotation marks omitted)); *Lawtone-Bowles v. City of N.Y., Dep't of Sanitation*, 22 F. Supp. 3d 341, 350 (S.D.N.Y. 2014) ("To plead a claim of age discrimination under the ADEA, the plaintiff must allege sufficient facts to support a plausible inference that she suffered an adverse employment action because of her age."); *cf. Sassine v. Fid. Mgmt. & Research Co.*, No. SUCV2012-04085-E, 2013 WL 7121296, at *3 (Mass. Super. Ct. Oct. 22, 2013) (dismissing a claim under Mass. Gen. Laws ch. 151B, § 4(1B) "for failure to state a claim" because it "fail[ed] to include any facts giving rise to a reasonable inference that age was a factor in [the plaintiff's] termination," and therefore it "[did] not plausibly suggest an entitlement to relief for age discrimination").

As with Plaintiff's original complaint, the Amended Complaint offers only barebones and conclusory allegations. The Amended Complaint merely alleges that Plaintiff submitted

---

individual liability on the part [of] managing agents or employees.")).) However, there is also authority to the contrary. *See, e.g.*, *Martin v. Irwin Indus. Tool Co.*, 862 F. Supp. 2d 37, 38 (D. Mass. 2012) ("[The defendant] does not dispute that, unlike its federal counterpart, chapter 151B allows for individual liability"); *Bray v. Cmty. Newspaper Co.*, 851 N.E.2d 1087, 1089 (Mass. App. Ct. 2006) (reversing summary judgment for defendants in age discrimination claim brought against company and individual defendants under § 4(1B)); *Beaupre v. Cliff Smith & Assocs.*, 738 N.E.2d 753, 764 (Mass. App. Ct. 2000) ("The MCAD, whose interpretations of G.L. c. 151B we are to accord deference has long recognized and imposed individual liability under the statute . . . ." (citation omitted)). The issue, however, makes no difference in the instant case because Plaintiff's claims fail either way.

"applications for . . . more than a hundred [jobs]" with IBM.  (*See* Am. Compl. ¶ 109.)  Despite

Plaintiff's qualifications, "IBM and Defendants rejected each and every [one of] Plaintiff's

applications . . . ."  (*Id.*)  The Amended Complaint posits that "Defendants have been well aware

of the fact that Plaintiff is 56 [years old] and a member of protected group" and that "[a]

determining factor in the rejection of Plaintiff for each and every of more than a hundred jobs

sought by IBM was his age."  (*See id.* ¶¶ 110–11; *see also* Pl.'s Suppl. Mem. 9 (same).)  IBM

offered these positions to "persons significantly younger and/or significantly less qualified tha[n]

Plaintiff."  (*See* Am. Compl. ¶ 111; *see also* Pl.'s Suppl. Mem. 9.)

      With regard to Plaintiff's assertion that "[a] determining factor in the rejection of Plaintiff

for each and every of more than a hundred jobs sought by IBM was his age," (Am. Compl.

¶¶ 101, 111), this assertion is essentially the same as his assertion in the original complaint that

"[a] determining factor in the rejection of Plaintiff's applications was his age," (*see* Compl.

¶ 111), which this Court found was insufficient, *see Wang v. Palmisano*, 51 F. Supp. 3d 521, 542

(S.D.N.Y. 2014).  For the same reason, this conclusory allegation also fails to give rise to a

plausible inference of age discrimination in connection with Defendants' refusal to hire Plaintiff.

*See Wang*, 51 F. Supp. 3d at 542.

      With respect to Plaintiff's claim that IBM offered these positions to "persons

significantly younger and/or significantly less qualified tha[n] Plaintiff," (*see* Am. Compl.

¶¶ 101, 111), the Court notes that Plaintiff's claim is utterly conclusory, "naked," and "devoid of

further factual enhancement."  *See Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

Such conclusory assertions "without supporting factual allegations, . . . are not entitled to a

presumption of truth."  *Thayil v. Fox Corp.*, No. 11-CV-4791, 2012 WL 364034, at *5 (S.D.N.Y.

Feb. 2, 2012).  Indeed, Plaintiff provides no details about these putative hires, such as their hire

dates, ages, qualifications, work experience, or whether Defendants knew their age.  These

general and unsubstantiated assertions thus require dismissal.  *See Ndremizara v. Swiss Re Am.*

*Holding Corp.*, 93 F. Supp. 3d 301, 316 (S.D.N.Y. 2015) (granting the defendant's motion to

dismiss on age discrimination claim where "[the] [p]laintiff provide[d] no details about . . . [the

defendant's] supposed [younger, less experienced] employees, including when they were hired,

by which office they were hired . . . , what their experience, age, or qualifications were, or

whether [the] [d]efendant knew their ages." (alterations and internal quotation marks omitted));

*Payne v. Malemathew*, No. 09–CV–1634, 2011 WL 3043920, at *2 & n.3 (S.D.N.Y. July 22,

2011) (finding pro se plaintiff failed to plausibly plead ADEA claim where plaintiff merely

alleged that he was replaced by two younger employees); *Nance v. City of N.Y.*, No. 09–CV–

2786, 2011 WL 2837491, at *4 (E.D.N.Y. July 14, 2011) ("[A]n allegation that [the] plaintiff

was replaced by a younger employee is not sufficient, without more, to survive a motion to

dismiss."); *Maysonet v. Citi Group, Inc.*, No. 10-CV-4616, 2011 WL 476610, at *5 (S.D.N.Y.

Feb. 9, 2011) (dismissing ADEA claim where the plaintiff merely alleged that she was in her

mid-40s and that the defendant hired others in their mid-20s, without alleging any facts about the

employee who replaced plaintiff); *Adams v. N.Y. State Educ. Dep't*, 752 F. Supp. 2d 420, 465

(S.D.N.Y. 2010) (dismissing ADEA claim where the plaintiffs "merely allege[d] that [they were]

over 40 years of age and were replaced by younger teachers," and noting that the complaint

"does not allege any ageist remarks by" the defendants and that the plaintiffs "do not state who

the teachers are that replaced them or their age"), *aff'd sub nom. Ebewo v. Fairman*, 460 F.

App'x 67 (2d Cir. 2012); *Zucker v. Five Towns Coll.*, No. 09-CV-4884, 2010 WL 3310698, at *2

(E.D.N.Y. Aug. 18, 2010) (holding that "allegations concerning [the plaintiff's] satisfactory

work performance, termination, and much younger replacement [did] not—by themselves—suffice to plead an age discrimination claim").

### III. Conclusion

For the above reasons, the Court grants Defendant's Motion To Dismiss.  This dismissal is with prejudice.  While "[a] pro se complaint should not be dismissed without the Court granting leave to amend at least once," here the Court has already granted Plaintiff leave to amend.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (italics omitted).  With regard to Plaintiff's claims that accrued in March of 2008, "dismissal without prejudice would not produce a more just result as [Plaintiff] would be time-barred from re-filing . . . ."  *See Maersk Line v. Phoenix Agro-Indus. Corp.*, No. 07-CV-3169, 2009 WL 1505281, at *5 (E.D.N.Y. May 27, 2009); *see also Dluhos v. Floating & Abandoned Vessel, Known as New York*, 162 F.3d 63, 69 (2d Cir. 1998) ("Nonetheless, a motion to amend should be denied if there is an apparent or declared reason—such as . . . futility of amendment" (internal quotation marks omitted)).  With respect to Plaintiff's claims dismissed for failure to state a claim, Plaintiff has had ample opportunity to press his claims against Defendants, IBM, Artech, CDI, and others before this and other courts.  At this point, dismissing Plaintiff's claim with prejudice is appropriate.  *See Morale v. Yates*, No. 07-CV-1460, 2008 WL 5220995, at *1 (E.D. Cal. Dec. 15, 2008) (noting that "[t]he court found that the original complaint did not state a claim," that "the court gave [the p]laintiff notice of the complaint's pleading deficiencies and an opportunity to amend," and that "[the p]laintiff failed to comply with the court's order to file an amended complaint," and therefore dismissing the pro se plaintiff's complaint with prejudice); *Slangal v. Getzin*, 148 F.R.D. 691, 700 & n.14 (D. Neb. 1993) (dismissing a pro se plaintiff's complaint with prejudice pursuant to Rule 12(b)(6) because the "plaintiff ha[d] received full notice of the insufficiency of

his original complaint and received a meaningful opportunity to respond through an invitation to file an amended complaint in order to remedy the noted failings" and the amended complaint failed to remedy the identified deficiencies). For these reasons, Defendants' Motion to Dismiss is granted with prejudice. The Clerk of the Court is respectfully directed to terminate the pending Motion, (*see* Dkt. No. 33) and to close the case.

SO ORDERED.

Dated:     January 26 2016
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE